# **<u>Exhibit 3</u>**

```
                                                          Page 1

 1            IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                   MIDLAND/ODESSA DIVISION
 3      INTELLECTUAL VENTURES I
        LLC and INTELLECTUAL
 4      VENTURES II LLC,
 5           Plaintiffs,                CIVIL ACTION
 6      vs.                             FILE NO.
 7      SOUTHWEST AIRLINES CO.,         7:24-CV-00277-ADA
 8           Defendant.
        ~~~~~~~~~~~~~~~~~~~~~~~~~
 9
10
11
12
13      VIDEOTAPED 30(b)(6) DEPOSITION OF SOUTHWEST AIRLINES
                              CO.
14                     (through CHRIS MUHICH)
15                        May 13, 2025
                       10:00 a.m. Central time
16
17
18          (All attendees appeared remotely via
          videoconferencing and/or teleconferencing.)
19
20
21
22
23
24
25      Reporter:  Debra M. Druzisky, CCR-B-1848
```

Page 2

```
 1                    APPEARANCES OF COUNSEL
 2      On behalf of the Plaintiffs:
 3          JECEACA AN, Esq.
            Kasowitz Benson Torres
 4          1633 Broadway
            New York, New York  10019
 5          (212) 506-1808
            jan@kasowitz.com
 6
            -and-
 7
            PAUL G. WILLIAMS, Esq.
 8          1230 Peachtree Street, Suite 2445
            Atlanta, Georgia  30309
 9          (404) 260-6102
            pwilliams@kasowitz.com
10
            -and-
11
            JOHN W. DOWNING, Esq.
12          333 Twin Dolphin Drive, Suite 200
            Redwood City, California  94065
13          (650) 453-5426
            jdowning@kasowitz.com
14
15      On behalf of the Defendant:
16          WALLACE DUNWOODY, Esq.
            LUKE DUMBROSKI, Esq.
17          Munch Wilson Mandala
            2000 McKinney Avenue
18          Dallas, Texas  75201
            (972) 880-5678
19          wdunwoody@munckwilson.com
20
        Also Present:
21
            Krishan Patel, videographer
22          Philip Tarpley, Esq. (Southwest Airlines)
23                         --oOo--
24
25
```

Case 3:25-cv-02885-L-BN   Document 46-4   Filed 06/12/25   Page 4 of 13   PageID 1300
30(b)(6) Chris Muhich                                      May 13, 2025
Intellectual Ventures, LLC, et al. v. Southwest Ai

Page 33

```
 1    over.
 2        Q.   What do you mean by "far back" or
 3    "relevant"?  What time period were you checking for
 4    your declaration?
 5             MR. DUNWOODY:  Objection.  Form.
 6             Just to be clear, make sure you
 7        understand the question that she's asking
 8        you.
 9    BY MS. AN:
10        Q.   I can just ask the one question.  What
11    time period did you look into for your declaration?
12        A.   Yeah, 20 -- until -- back until 2018, the
13    end of 2018.
14        Q.   Okay.  But Southwest was still using
15    Panasonic technologies in 2018 and 2019; right?
16        A.   Yes.
17        Q.   So you should -- you could have included
18    Panasonic as a vendor, a manufacturer-vendor of an
19    I.F.C. system; right?
20             MR. DUNWOODY:  Objection.  Form.
21        It's argumentative.
22             THE WITNESS:  If we had known about
23        it at the time, yes, it could have been
24        included.
25    BY MS. AN:
```

1    Q.   What do you mean "at the time"?
2    A.   Well, your question as I understood was
3    why wasn't -- it could have been included in the
4    initial declaration.  So I guess I meant at the
5    time the initial declaration was drafted.
6    Q.   Okay.  Outside of Panasonic, Viasat or
7    Anuvu, and I'm talking about this time frame of
8    2018 to present, are there any other vendors that
9    provided Southwest with an I.F.C. system?
10   A.   Not that I'm aware.
11   Q.   Are you familiar with an in-flight
12   Internet provider named Gogo?
13   A.   Yes.
14   Q.   Has Southwest ever used Gogo?
15   A.   Southwest has not.
16   Q.   Are you familiar with an airline called
17   AirTran ways -- Airways?
18   A.   Yes.
19   Q.   Are you aware that there was a merger?
20   A.   I am.
21   Q.   Did Southwest use AirTran Airways with an
22   in-flight Internet provider named Gogo at all?
23   A.   My understanding is that AirTran used Gogo
24   for in-flight connectivity.
25   Q.   Do you know when?

Page 36

```
 1              Sorry.  Go ahead.
 2       A.     I don't know.
 3       Q.     Who would know?
 4       A.     I would assume our fleet transactions
 5   organization.
 6       Q.     Do you know if they were leased to Delta?
 7       A.     I do not know.
 8       Q.     Who's in charge of the fleet transactions
 9   organization?
10       A.     The director is Ed Kuyon.
11       Q.     Would you mind spelling the last name, if
12   you -- if you know?
13       A.     K-U-Y-O-N.
14       Q.     Okay.  I wouldn't have guessed that, but
15   thank you.
16              Okay.  So you don't know if Southwest --
17   well, sorry, let me scratch that.
18              So you mentioned that Southwest, like,
19   changed all the AirTran planes to a Southwest
20   configuration; right?
21       A.     Yes.
22       Q.     Do you know what kind of Internet system
23   it was converted to?
24       A.     Anuvu.
25       Q.     Anuvu.  And at what time frame was that?
```

Page 44

1    and Panasonic?
2         A.    Yes.
3         Q.    Okay.  And who selects the components?
4         A.    The WiFi vendors.
5         Q.    And who installs -- who does the
6    installation?
7         A.    In general, Southwest or one of our -- one
8    of our maintenance vendors would do the physical
9    installation.
10        Q.    Are you familiar with the term "channel
11   bonding"?
12        A.    I am not.
13        Q.    Do you know what component performs
14   channel bonding?
15        A.    I couldn't say, because I'm not sure what
16   channel bonding is.
17        Q.    In preparing for your deposition, did you
18   review any patents?
19              MR. DUNWOODY:  Any what?  I'm sorry?
20              MS. AN:  Patents.
21              MR. DUNWOODY:  Patents.
22              THE WITNESS:  Yeah.  I was provided I
23        think the relevant patents, copies of
24        them, which I gave a cursory review to.
25   BY MS. AN:

```
 1        Q.   Who can I speak to about channel bonding
 2   at Southwest?
 3        A.   I'm not aware of anybody at Southwest that
 4   would be familiar with channel bonding.
 5        Q.   Do you know whether Southwest has in its
 6   possession, custody and control the source code for
 7   providing an Internet hot spot connected to a
 8   satellite, router and subscriber access unit?
 9        A.   We don't have access to any of Viasat or
10   Anuvu's source code.
11        Q.   Okay.  I want to go back and just talk
12   about the vendors that we discussed during this
13   deposition.
14             During the deposition we discussed four
15   different entities that provided or provide
16   Southwest with in-flight WiFi systems; is that
17   correct?
18             MR. DUNWOODY:  Object to form.
19             THE WITNESS:  You asked if we talked
20      about four?
21   BY MS. AN:
22        Q.   Yes.
23        A.   Being Anuvu, Viasat, I know you asked
24   about Gogo, and Panasonic?  Is that the four you're
25   referring to?
```

```
 1        Q.   Yes.  Correct.
 2        A.   Okay.  Then yes, I concur, we did talk
 3   about those four.
 4        Q.   Okay.  Are you aware of any
 5   indemnification obligations owed to any of these
 6   four providers?
 7            MR. DUNWOODY:  Object to form.
 8            It's outside the scope, but answer to
 9       the extent you can.
10            THE WITNESS:  Yeah, I'm aware there's
11       some indemnification language in the
12       contracts, but I'm not greatly familiar
13       with it in my role as in engineering.
14   BY MS. AN:
15        Q.   So does Southwest have any indemnification
16   obligations with Viasat?
17            MR. DUNWOODY:  Object to form.
18       Outside the scope.
19            Answer if you know.
20            THE WITNESS:  I -- I don't know.
21   BY MS. AN:
22        Q.   Do you know if the indemnification was
23   accepted at all?
24        A.   I don't know.
25        Q.   Do you know the scope of indemnification
```

Case 3:25-cv-02885-L-BN   Document 46-4   Filed 06/12/25   Page 10 of 13   PageID 1306
30(b)(6) Chris Muhich                                      May 13, 2025
Intellectual Ventures, LLC, et al. v. Southwest Ai

Page 62

1     at all?
2         A.   I do not.
3         Q.   And you mentioned that there are
4     documents.  They would be the agreements?
5         A.   What I was referring to would be the
6     master service agreements, yes.
7         Q.   So the agreement with Viasat has an
8     indemnification clause?
9         A.   I believe there was language regarding
10    indemnification, but I'd have to go, like,
11    double-check with the document.
12        Q.   Okay.  Does Southwest have any
13    indemnification obligations with Anuvu?
14             MR. DUNWOODY:  Same objections.
15             And same instruction.  To the extent
16        you know, you can go ahead and answer, but
17        it's outside the scope.
18             THE WITNESS:  I don't know.
19    BY MS. AN:
20        Q.   Do you know if Anuvu agreed to indemnify
21    Southwest?
22        A.   I don't know.
23        Q.   Who would know?
24        A.   I assume our legal department.
25        Q.   Did Viasat agree to indemnify Southwest at

Page 63

1    all?
2       A.   I don't know.
3       Q.   Did Panasonic agree to indemnify Southwest
4    at all?
5       A.   I don't know.
6       Q.   Did Gogo AirTran agree to indemnify
7    Southwest at all?
8       A.   Just to be clear, Gogo and AirTran,
9    different companies.
10       Q.   Okay. Did Gogo agree to indemnify
11   Southwest at all?
12       A.   I don't know.
13       Q.   Did AirTran agree to indemnify Southwest
14   at all?
15       A.   I don't know.
16       Q.   Did Intelsat agree to indemnify Southwest
17   at all?
18       A.   I don't know.
19       Q.   I believe we may be coming up on an hour,
20   so we can take a break.
21       A.   Okay.
22       MR. DUNWOODY: Sure.
23       THE VIDEOGRAPHER: Okay. The time is
24   11:38 a.m. We're off the record.
25       (Whereupon, a discussion ensued

Case 3:25-cv-02885-L-BN   Document 46-4   Filed 06/12/25   Page 12 of 13   PageID 1308
30(b)(6) Chris Muhich
May 13, 2025
Intellectual Ventures, LLC, et al. v. Southwest Ai

Page 66

1  A. Generally team to team.
2  Q. And same question for Anuvu, you
3  previously testified that you weren't sure or aware
4  of whether Anuvu indemnifies Southwest; correct?
5  A. Yes.
6  Q. Who at Anuvu could I speak to if I wanted
7  to ask about this?
8  A. I'm not sure who the best person at Anuvu
9  would be to speak about indemnification.
10 Q. Do you have a point of contact at Anuvu?
11 A. Yeah. My main point of contact would be
12 Nancy Walker.
13 Q. Nancy Walker. And what is Nancy Walker's
14 title?
15 A. She is senior vice president of
16 commercial.
17 Q. Commercial. And do you speak with
18 Ms. Walker regularly as well?
19 A. Yes.
20 Q. And what do you meet about?
21 A. Similar to our regular Viasat engagements,
22 how their system's performing, any product
23 improvements that they're considering for the
24 future.
25 Q. Same for Panasonic, you testified earlier

```
 1            R E P O R T E R   D I S C L O S U R E
 2    DISTRICT COURT              )    DEPOSITION OF
      WESTERN DISTRICT            )    CHRIS MUHICH
 3    MIDLAND/ODESSA DIVISION     )
 4
               Pursuant to Article 10.B of the Rules and
 5    Regulations of the Board of Court Reporting of the
      Judicial Council of Georgia, I make the following
 6    disclosure:
               I am a Georgia Certified Court Reporter.
 7    I am here as a representative of Veritext Legal
      Solutions.
 8             Veritext Legal Solutions was contacted by
      the offices of Kasowitz Benson Torres to provide
 9    court reporting services for this deposition.
      Veritext Legal Solutions will not be taking this
10    deposition under any contract that is prohibited by
      O.C.G.A. 9-11-28 (c).
11             Veritext Legal Solutions has no contract
      or agreement to provide court reporting services
12    with any party to the case, or any reporter or
      reporting agency from whom a referral might have
13    been made to cover the deposition.
               Veritext Legal Solutions will charge its
14    usual and customary rates to all parties in the
      case, and a financial discount will not be given to
15    any party in this litigation.
16
17
18                        [signature: Debra M. Druzisky]
19
                          Debra M. Druzisky
20                        Georgia CCR-B-1848
21
22
23
24
25
```