# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § § § | |
| Plaintiffs, | § § | Civil Action No. 7:24-cv-00277-ADA |
| v. | § § | JURY TRIAL DEMANDED |
| SOUTHWEST AIRLINES CO., | § § | |
| Defendant. | § | |

---

**DEFENDANT SOUTHWEST AIRLINES CO.'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES CONCERNING**
**DEFENDANT'S MOTION TO SEVER AND STAY CLAIMS AGAINST**
**IN-FLIGHT CONNECTIVITY SYSTEMS BASED ON THE CUSTOMER-SUIT EXCEPTION**

---

<u>**ANSWERS TO INTERROGATORIES**</u>

**INTERROGATORY NO. 1:**  Identify specifically, the hardware and software that is responsible for the Accused Functionality or reasonably similar functionality during the applicable damage time period. A complete response will identify all providers of in-flight Wi-Fi during the damage time period, and the specific components and software relevant to the Accused Functionality.

**RESPONSE:** Defendant Southwest Airlines Co. ("Defendant" or "Southwest") objects to

Plaintiffs Intellectual Ventures I LLC's and Intellectual Ventures II LLC's (collectively, "IV" or

"Plaintiffs") definition of "Accused Functionality" as vague and overbroad, and to the extent it

seeks to expand or modify the scope of Plaintiffs' infringement contentions in this case because,

as the term is defined, this Interrogatory seeks information about any "hardware and software that

is responsible for" "*any and all technology described in the claims of the Patents-in-Suit,*

*including, but not limited to, in-flight Wi-Fi features . . . and reasonably similar technology.*" This

Interrogatory could be interpreted as requiring Southwest to identify and provide information

about any and all hardware and software, including those that have no relationship and zero relevance whatsoever to the '326 and '469 Patents. This Interrogatory thus seeks hardware and software information that is untethered to any specific Southwest systems or services accused of infringing the '326 Patent or '469 Patent, concerning functionalities of Southwest's systems or services other than those that Plaintiffs specifically accuse—namely, in-flight Wi-Fi systems supplied by Viasat, Inc. ("Viasat") and Anuvu Corporations LLC ("Anuvu")—or entirely unrelated to permissible discovery in connection with the pending Motion to Sever and Stay (the "Motion"), Dkt#17. Such information is irrelevant to any claim, defense, or the Motion and is not proportional to the needs of this case or the limited discovery permitted in connection with the Motion.

Southwest objects to the phrase "reasonably similar functionality" as undefined, overly broad, vague, and ambiguous and is broad enough, either standing alone or in combination with the term "Accused Functionality," to seek irrelevant information not proportional to the needs of this case or the limited discovery permitted, including technology that Plaintiffs do not specifically accuse of infringing the '326 Patent or '469 Patent. For example, the Interrogatory does not provide any specificity regarding its scope, nor does it specify what constitute "reasonably similarly functionality" in this context, particularly considering this Interrogatory seeks information beyond the '326 and '469 Patents. Southwest will interpret the phrase "Accused Functionality or reasonably similar functionality" to refer to in-flight Wi-Fi systems used on Southwest aircraft.

Southwest objects to the term "responsible for" as vague, ambiguous, subject to varying interpretations, and broad enough to seek irrelevant information not proportional to the needs of this case or the limited permissible discovery. Southwest also objects to the term "responsible for" because it requires a legal conclusion or prematurely seeks information that will be the subject of expert testimony in this case. Any response to this Interrogatory is *not* an admission of liability or

that Plaintiffs are entitled to relief whatsoever. Southwest does not admit and expressly denies any claims of infringement of the asserted patents, including the '326 and '469 Patents, by Plaintiffs.

Southwest objects to the phrase "damage time period" as vague, ambiguous, and undefined. Absent clarity and reasonable precision as to the time period for which damages, if any, are allegedly owed, Southwest is left to guess what limitation Plaintiffs intended to place on the scope of their request or what timeframe Plaintiffs felt constituted the "damages time period," thereby rendering this Interrogatory unduly burdensome and not proportional to the needs of the limited permissible discovery.

Southwest objects to this Interrogatory because it is comprised of discrete subparts constituting more than one interrogatory that impermissibly exceed the numerical limit imposed by the Court when counted together with the remaining interrogatories and are unduly burdensome and not proportional to the needs of the limited discovery allowed. This Interrogatory seeks several discrete pieces of information related to the "Accused Functionality," including identification of: (i) "the hardware and software that is responsible for the Accused Functionality or reasonably similar functionality during the applicable damage time period"; (ii) "all providers of in-flight Wi-Fi during the damage time period"; and (iii) "the specific components and software relevant to the Accused Functionality." This Interrogatory thus requires Southwest to respond to at least *three* separate distinct requests in a single interrogatory is improper and unduly burdensome.

Southwest further objects to each of Plaintiffs' Definitions (such as the term "identify") and Instructions to the extent they expand, contradict, or are inconsistent with the requirements of the Federal Rules of Civil Procedure 26 and 33, the Local Rules, and Court Orders, or agreement of the parties. Such Definitions and Instructions impose an undue burden on Southwest by

requiring information that is disproportionate to the needs of the case or the limited permissible discovery.

Subject to and without waiving these objections, Southwest states that during the 6-year period leading up to the filing of the Complaint in November 2024, Southwest used two suppliers of in-flight connectivity (IFC) systems: Anuvu and Viasat. Anuvu was previously called Global Eagle Entertainment but rebranded after going through a bankruptcy restructuring in 2020-2021. Before that, the company was called Row 44, which was purchased by GEE in 2013, before the start of the damages period. In any event, those two vendors—Anuvu and Viasat—are the entities that supply Southwest's IFC systems, which typically include hardware installed on the airplanes that include wireless access points (WAPs), routers, and long-range communication antennas, as well as software supplied by the vendors, including the portal used by passengers for in-flight entertainment, texting, and internet access during flights. Southwest is unable to "identify specifically" the "hardware and software that is responsible" for these systems, because that information is in the possession, custody and control of Viasat and Anuvu.  Although not required to answer this interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), Southwest has provided the information that it does know about the component parts of the IFC systems as set forth in documents produced in this lawsuit at SWA000001-SWA001136.

**INTERROGATORY NO. 2:**  Identify what entity has possession, custody, and control of documents that show the operation of the alleged Accused Functionality and reasonably similar functionality as alleged in Plaintiff's Infringement Contentions.

**RESPONSE:** Southwest objects to the definition of "Accused Functionality" as vague and overbroad, and to the extent it seeks to expand or modify the scope of Plaintiffs' infringement contentions in this case because, as the term is defined, this Interrogatory seeks information about "what entity has possession, custody, and control of documents that show the operation of" "*any*

*and all technology described in the claims of the Patents-in-Suit, including, but not limited to, in-flight Wi-Fi features . . . and reasonably similar technology.*" This Interrogatory could be interpreted as requiring Southwest to identify and provide information about entities, including those that have no relationship and zero relevance whatsoever to the '326 and '469 Patents. This Interrogatory thus seeks entity information that is untethered to any specific Southwest systems or services accused of infringing the '326 Patent or '469 Patent, in connection with functionalities of Southwest's systems or services other than those that Plaintiffs specifically accuse—namely, in-flight Wi-Fi systems supplied by Viasat and Anuvu—or entirely unrelated to permissible discovery in connection with the pending Motion, Dkt#17. Such information is irrelevant to any claim, defense, or the Motion and is not proportional to the needs of this case or the limited discovery permitted in connection with the Motion.

Southwest objects to the phrase "reasonably similar functionality" as undefined, overly broad, vague, and ambiguous and is broad enough, either standing alone or in combination with the term "Accused Functionality," to seek irrelevant information not proportional to the needs of this case or the limited discovery permitted, including technology that Plaintiffs do not specifically accuse of infringing the '326 Patent or '469 Patent. For example, the Interrogatory does not provide any specificity regarding its scope, nor does it specify what constitute "reasonably similarly functionality" in this context, particularly considering this Interrogatory seeks information beyond the '326 and '469 Patents. Southwest will interpret the phrase "Accused Functionality or reasonably similar functionality" to refer to in-flight Wi-Fi systems used on Southwest aircraft.

Subject to and without waiving these objections, Southwest states that documents "show[ing] the operation of the alleged Accused Functionality" are in the possession, custody and control of Viasat and Anuvu. Although not required to answer this interrogatory, pursuant to

Federal Rule of Civil Procedure 33(d), Southwest has provided the information that it does know about "the operation of the alleged Accused Functionality" in documents produced in this lawsuit at SWA000001-SWA001136.

**INTERROGATORY NO. 3:**  Identify any hardware or software that Southwest provides with regards to the Accused Functionality or reasonably similar functionality alleged in Plaintiff's Infringement Contentions.

**RESPONSE:** Southwest objects to the definition of "Accused Functionality" as vague and overbroad, and to the extent it seeks to expand or modify the scope of Plaintiffs' infringement contentions in this case because, as the term is defined, this Interrogatory seeks information about "any hardware or software that Southwest provides with regards to" "*any and all technology described in the claims of the Patents-in-Suit, including, but not limited to, in-flight Wi-Fi features . . . and reasonably similar technology*." This Interrogatory could be interpreted as requiring Southwest to identify and provide information about hardware and software, including those that have no relationship and zero relevance whatsoever to the '326 and '469 Patents. This Interrogatory thus seeks entity information that is untethered to any specific Southwest systems or services accused of infringing the '326 Patent or '469 Patent, in connection with functionalities of Southwest's systems or services other than those that Plaintiffs specifically accuse—namely, in-flight Wi-Fi systems supplied by Viasat and Anuvu—or entirely unrelated to permissible discovery in connection with the pending Motion, Dkt#17. Such information is irrelevant to any claim, defense, or the Motion and is not proportional to the needs of this case or the limited discovery permitted in connection with the Motion.

Southwest objects to the phrase "reasonably similar functionality" as undefined, overly broad, vague, and ambiguous and is broad enough, either standing alone or in combination with the term "Accused Functionality," to seek irrelevant information not proportional to the needs of

this case or the limited discovery permitted, including technology that Plaintiffs do not specifically accuse of infringing the '326 Patent or '469 Patent. For example, the Interrogatory does not provide any specificity regarding its scope, nor does it specify what constitute "reasonably similarly functionality" in this context, particularly considering this Interrogatory seeks information beyond the '326 and '469 Patents. Southwest will interpret the phrase "Accused Functionality or reasonably similar functionality" to refer to in-flight Wi-Fi systems used on Southwest aircraft.

Southwest objects to this Interrogatory to the extent it assumes Southwest provides or provided hardware or software in connection with the operation of the in-flight Wi-Fi systems supplied by Viasat or Anuvu.

Subject to and without waiving these objections, Southwest states: none.

**INTERROGATORY NO. 4:** Identify the Persons most knowledgeable regarding the Accused Functionality or reasonably similar functionality alleged in Plaintiff's Infringement Contentions and their locations.

**RESPONSE:** Southwest objects to the definition of "Accused Functionality" as vague and overbroad, and to the extent it seeks to expand or modify the scope of Plaintiffs' infringement contentions in this case because, as the term is defined, this Interrogatory seeks information about "the Persons most knowledgeable regarding" "*any and all technology described in the claims of the Patents-in-Suit, including, but not limited to, in-flight Wi-Fi features . . . and reasonably similar technology*." This Interrogatory could be interpreted as requiring Southwest to identify and provide information about the Persons most knowledgeable "regarding the Accused Functionality or reasonably similar functionality," including those that have no relationship and zero relevance whatsoever to the '326 and '469 Patents. This Interrogatory thus seeks information that is untethered to any specific Southwest systems or services accused of infringing the '326 Patent or '469 Patent, in connection with functionalities of Southwest's systems or services other than those

that Plaintiffs specifically accuse—namely, in-flight Wi-Fi systems supplied by Viasat and Anuvu—or entirely unrelated to permissible discovery in connection with the pending Motion, Dkt#17. Such information is irrelevant to any claim, defense, or the Motion and is not proportional to the needs of this case or the limited discovery permitted in connection with the Motion.

Southwest objects to the phrase "reasonably similar functionality" as undefined, overly broad, vague, and ambiguous and is broad enough, either standing alone or in combination with the term "Accused Functionality," to seek irrelevant information not proportional to the needs of this case or the limited discovery permitted, including technology that Plaintiffs do not specifically accuse of infringing the '326 Patent or '469 Patent. For example, the Interrogatory does not provide any specificity regarding its scope, nor does it specify what constitute "reasonably similarly functionality" in this context, particularly considering this Interrogatory seeks information beyond the '326 and '469 Patents. Southwest will interpret the phrase "Accused Functionality or reasonably similar functionality" to refer to in-flight Wi-Fi systems used on Southwest aircraft.

Subject to and without waiving these objections, Southwest does not know the answer to this question. The "Persons most knowledgeable regarding the Accused Functionality" are at Viasat or Anuvu. Southwest's contacts at Viasat and Anuvu supervise and maintain the vendors' relationships with Southwest rather than the technical aspects of the IFC systems, and are thus not the "Persons most knowledgeable regarding the Accused Functionality." Southwest does not know who the "Persons most knowledgeable regarding the Accused Functionality" are. Although not required to answer this interrogatory, Southwest states that Christopher Muhich, Elly Jurgenson, Monica Boss, and Melissa Doyle have limited knowledge regarding the IFC systems provided by Anuvu and Viasat gained in their roles working with those vendors. Mr. Muhich's role is described in his declaration. He is a Managing Director of Aircraft Engineering overseeing

various aircraft systems from an engineering perspective, including the IFC systems. Ms. Jurgensen is the Director of Inflight Experience, which includes responsibility for supervising the vendors' provision of customer experience in their IFC systems. On her team, Ms. Boss manages the Viasat relationship, and Ms. Doyle manages the Anuvu relationship. They are all based in Dallas.

Date: April 3, 2025                              Respectfully submitted,

                                                 */s/ Wallace Dunwoody*
                                                 Michael C. Wilson
                                                 State Bar No. 21704590
                                                 mwilson@munckwilson.com
                                                 S. Wallace Dunwoody
                                                 State Bar No. 24040838
                                                 wdunwoody@munckwilson.com
                                                 **MUNCK WILSON MANDALA, LLP**
                                                 2000 McKinney Avenue, Suite 1900
                                                 Dallas, TX 75201
                                                 (972) 628-3600
                                                 (972) 628-3616 fax

                                                 David G. Henry
                                                 Texas Bar. No. 09479355
                                                 dhenry@munckwilson.com
                                                 **MUNCK WILSON MANDALA, LLP**
                                                 510 Austin Avenue, Suite 3100
                                                 Waco, Texas 76701
                                                 (254) 362-2300
                                                 (254) 362-2304 fax

                                                 Tri T. Truong
                                                 Texas State Bar No. 24102969
                                                 ttruong@munckwilson.com
                                                 **MUNCK WILSON MANDALA, LLP**
                                                 807 Las Cimas Parkway, Suite 300
                                                 Austin, Texas 78756
                                                 737-201-1600
                                                 737-201-1601 fax

                                                 *Attorneys for Southwest Airlines Co.*

## <u>VERIFICATION</u>

I am the Managing Director of Aircraft Engineering at Southwest Airlines. I declare under penalty of perjury under the laws of the United States of America that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on April 3, 2025, at Dallas, Texas.

*/s/ Chris Muhich*
Chris Muhich

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 3, 2025, the foregoing document has been served on all counsel of record via email.

*/s/ Wallace Dunwoody*
S. Wallace Dunwoody

7020316