# EXHIBIT A

114

1  to establish jurisdiction under 1404(a), and that was
2  just not done.  There is not a record.  There is a burden
3  to establish that.  And, if I, frankly, went through the
4  *Jumara* factors, I would, especially given the emphasis in
5  the *Shutte,* the Third Circuit case, that you to have
6  place on the plaintiff's initial choice of forum, I
7  would, and the other factors, it strikes me, do not
8  outweigh, and it has to substantially outweigh that.
9       But since we are on the 1404(a), I am not even
10 to go into the discretionary factors, other than just to
11 give you that broad reading.  So that takes care of the
12 transfer motion.
13      Now, on the motion to stay and motion to
14 dismiss, the threshold question is whether or not we
15 actually have a first to file.  And I am going to find,
16 as an initial matter, that we don't.  So the complaint
17 seeks a declaratory judgment of non-infringement of the
18 '326 patent, in Counts 1 and Counts 2.  And in Counts 3
19 and in Counts 4, or in Count 3, rather, it seeks a
20 declaratory judgment of non-infringement of the '469
21 patent.
22      All right.  The reason why they've got the two
23 counts for the '326 patent is because in Count 2, there's
24 non-infringement based on exhaustion.  All right.
25      What I find important is that in Paragraph 67,

115

1  first-to-file rule applies.  Had I determined that the
2  first-to-file rule applies, I would still deny the motion
3  because I do think there are great judicial efficiencies
4  with us litigating these, whether or not the Viasat
5  system infringes the two patents in question.  And I
6  think you would avoid, you potentially could avoid
7  conflicting rulings.  We'll see.  And we will get to that
8  because we still have to litigate the preliminary
9  injunction motion.
10      So I think judicial economy would favor the
11 case going forward here, and I think that I am especially
12 persuaded by that, given that there's indemnification of
13 both defendants in the Texas litigation.  And that's a
14 factor that the Federal Circuit considers when it
15 considers the first-to-file rule, and when it considers
16 the manufacturing exception.
17      You know, *Google* is non-precedental, and I
18 don't know of a case that says that just because there's
19 four manufacturers versus one, that should dictate how to
20 resolve the issue before me.  And so it is true there may
21 be.  But when I also look at the record that was provided
22 to me about the assertions in the Texas courts, that
23 clearly focused on Viasat.
24      So, anyway, I'm going to deny the motion to
25 stay and dismiss for those grounds and allow the case to

1  in Paragraph 72, and in Paragraph 76, it's made clear
2  that the declaratory judgment sought would be for
3  non-infringement of the patents in question by, quote
4  "Viasat and its products, including Viasat's in-flight
5  connectivity systems," unquote.
6       So the declaratory judgment sought goes beyond
7  the in-flight connectivity systems that are at issue in
8  the litigation in Texas.
9       And then when you add to that the June 12
10 contention, which is a preliminary contention, I get it,
11 that might be brought, there's no more argument.  We've
12 had argument.  It's almost 12:00.  I've been here for
13 almost three hours, I've read the briefs, we've had
14 argument.
15      **MR. WALDROP:**  Yes, Your Honor.
16      **THE COURT:**  Okay.  You can please sit down.
17 Now, I lost my thought.  But basically, I will repeat,
18 then.  I don't think the first-to-file rule even
19 applies.
20      **MR. WALDROP:**  Yes, Your Honor.
21      **THE COURT:**  I think the scope of the DJ
22 sought here is beyond what the infringement would be in
23 Texas, and I think that is confirmed by the June 12
24 contentions, if there were any doubt.
25      And so, first of all, I don't think the

116

1  proceed here.
2       All right.  And I'm doing it as a
3  discretionary matter.  I've read *Google,* but find, again,
4  it's non-precedential decision.  I don't think even if it
5  were a precedential decision it dictates a result
6  otherwise in this case.  All right?
7       Now, let's hear the preliminary injunction
8  issue.  Let's be brief because I am very, very reluctant
9  to enjoin two different judges, both of whom are very,
10 very skilled in patent litigation.
11      And, for all I know, you know, they could very
12 well decide a variety of ways to proceed with their case,
13 including staying the cases, staying part of the cases.
14 And, you know, just very reluctant to do it.
15      **MR. WARREN:**  I understand the Court's
16 reluctance.  I will try to be brief, and I will address
17 the Court's point directly.
18      I think the Court is going to say that this is
19 not a distinction that is worth a difference, but the
20 injunction that we are seeking is not an injunction
21 against another Court, it is an injunction to require IV,
22 as a party, to stay action in another Court.
23      **THE COURT:**  Right.  Look, actually, I should
24 have said, I do appreciate that difference.  If you had
25 asked me to enjoin the Court, we wouldn't even have oral

118

argument. I will just tell you that right now. As a practical matter, right?

**MR. WARREN:** And I like to think that I would be smart enough not to do that, Your Honor.

**THE COURT:** I've actually had the ITC people have a lawyer in here, had to litigate against somebody who had asked me to enjoin a tribunal. So it wouldn't be the first time. So go ahead.

**MR. WARREN:** I will bear in mind that our injunction also has another element, which is enjoining IV from bringing additional cases against Viasat customers. We have asked them over and over again whether or not they can confirm that they won't do that, and we have been met with resounding silence.

**THE COURT:** Why don't we wait and see. I think we've got lawyers over here who understand what could occur were they to bring subsequent suits against customers, now that I'm allowing this case to go forward.

So it's probably something I don't have to tackle right now. By the way, were I to deny it, which I think I will, but it's going to be without prejudice. But go ahead.

**MR. WARREN:** I appreciate that. Let me make two quick points, Your Honor, and then, hopefully, we

117

can all go have lunch.

Your Honor has noted that the, you know, potential preferences of the other judges and that they are, you know, they may be managing their cases.

I hate to go back to *In re Google*, but I have to because there's a very, very on-point thing that happened in that case.

So, in that case -- I'll do a little bit of chronology. In that case, Rockstar brought seven separate cases in the Eastern District of Texas against HTC, Pantech, LG, ZTE, Huawei, ASUSTeK and Samsung. Google filed a declaratory judgment action against Rockstar in the Northern District of California. Rockstar then amended its complaint against Samsung to add Google. So Google was now a defendant in the Eastern District of Texas. Rockstar moved to transfer the California case to Texas. Google and the other defendants moved to transfer the Texas cases to California.

So we had competing motions to transfer. The Texas Court ruled first. On July 1st of 2014, the Eastern District of Texas denied the motion to stay or transfer.

On August 14th, defendants filed a petition for mandamus. On August 20th, the Northern District

119

issued and order, and it was canned an order deferring ruling. And the Northern District said I'm not going to rule right now on Rockstar's motion to transfer this case to Texas, but added, quote, "If the customer suits were to proceed in Texas, the Court would likely transfer this action there," close quote. And that's Docket Number 105, if anyone wants to go look that up.

And then two days later, Rockstar's mandamus brief was due in opposition to Google's motion for mandamus, and Rockstar obviously took this and ran with it and they said, quote, "Upon hearing that the Texas Court had decided that the related cases should proceed in the EDTX, the NDCA Court indicated that it is disposed to transfer the NDCA case to that forum. This is federal comity and judicial efficiency in action." Close quote.

And so the Federal Circuit had squarely before them two judges, one judge who said, I want this and the other judge who said, you take it. And they ruled, as the Court knows, that it should go to California. It should go to the judge who said, you take it.

**THE COURT:** All right. So here's what I will do. I happen to know Judges Albright and Mazzant. I think the case should be here, and that's the most judicial efficient way to handle the case. So I've said it on the record, and you all can bring it to their

120

attention in Texas, and I can get on the phone with them.

And I totally respect them, and if they think they want to go forward, and there could be really good reasons to go forward, in part, but on the two patents that have been asserted, I do think it make most sense to litigate them here in Delaware, and I'm prepared to do it. All right?

I just don't see, I think there's too much respect among the three judges, and I think we're all going to want to achieve judicial economy. And it strikes me that as far as at least the two patents that have been asserted here, it makes most sense to proceed here with those. Okay?

And then, IV, you have a lot of choices in front of you. You can figure things out. And my guess is, you know, given the lawyers in the room, the ones I know, at least, probably could work things out.

**MR. WARREN:** Thank you, Your Honor. Unless Your Honor has any additional questions.

**MR. WALDROP:** I think you have decided, Your Honor, unless you want to hear from me.

**THE COURT:** No. I mean, you know, I guess you can appeal the denial of a preliminary injunction. If that's what you intend to do, I'm going to lay a

```
 1   bigger record.
 2         MR. WARREN:  No, Your Honor.
 3         THE COURT:  All right.  I didn't think you
 4   would want to.  So in that case, I'm just going to call
 5   it a discretionary call.  I have weighed the four
 6   factors, and this is about as purely discretionary as
 7   you can get.
 8         I am going to deny the motion for preliminary
 9   injunction.  I am going to encourage you all to
10   coordinate.  And I would actually, I'm open to, and I
11   don't think there is anything inappropriate, with having
12   discussions directly with Judges Mazzant and Albright, if
13   you think that would be helpful.
14         I thought about doing it before I came into
15   this hearing but decided not to.
16         And so, you know, I would encourage the
17   parties to figure out, to confer with, you know, the two
18   defendants in the Texas matters.  I would encourage there
19   to be conferrals with the parallel case in my court to
20   see whether these shouldn't be consolidated for further
21   judicial economy because, frankly, that's part of when I
22   say I think it could be more judicially efficient, I was
23   anticipating that I would have the parties in the
24   parallel case confer with the parties in this case to see
25   whether we shouldn't just consolidate these two
```

```
 1   proceedings.
 2         MR. WARREN:  We would be fine with that, Your
 3   Honor.
 4         THE COURT:  Of course, they need to be
 5   brought into the mix, but that strikes me as the most
 6   efficient way to proceed.
 7         MR. WARREN:  Your Honor, at risk of asking
 8   one question too many --
 9         THE COURT:  Go ahead.
10         MR. WALDROP:  Don't do it.  Don't do it.
11         MR. WARREN:  You mentioned that your denial
12   would be without prejudice.  I assume that is if there
13   is some change in circumstances that --
14         THE COURT:  Yeah.  What I mean by that is if
15   IV starts suing customers, you know, if they are suing
16   every single airline, I think these lawyers are pretty
17   smart, I think they know what's going to happen if that
18   occurs, and which it's very likely we will have
19   everybody in this court, so...
20         MR. WARREN:  That answers my question
21   perfectly.
22         THE COURT:  But it is without prejudice.
23   And, of course, I would have to see.  Maybe they could
24   come up with some really good reasons to justify what
25   the customer-suit exception is designed to avoid, right?
```

123

```
 1         But maybe they could come up with some really
 2   good reasons why it makes sense to have every airline
 3   sued, you know, in Chicago, United and Northwest.  They
 4   don't exist anymore but, you know what I'm saying.
 5         You're good?
 6         MR. WARREN:  Thank you, Your Honor.
 7         THE COURT:  You're good?
 8         MR. WALDROP:  Thank you, Your Honor, for your
 9   time.
10         THE COURT:  Thank you all.  Good arguments.
11   Appreciate it.  Have a good day.
12         We will have an oral order just disposing of
13   all the pending motions consistent with my rulings today.
14   All right?
15
16
17
18         (The proceedings concluded at 11:50 a.m.)
19
20
21
22
23
24
25
```

124

```
 1                CERTIFICATE OF COURT REPORTER
 2
 3      I hereby certify that the foregoing is a true and
 4   accurate transcript from my stenographic notes in the
 5   proceeding.
 6
 7                         /s/ Bonnie R. Archer
                           Bonnie R. Archer, RPR, FCRR
 8                         Official Court Reporter
                           U.S. District Court
```