# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC,

    *Plaintiffs,*

    v.

SOUTHWEST AIRLINES CO.,

    *Defendant.*

**Civil Action No. 3:25-CV-02885-L-BN
(consolidated with 3:25-cv-03097-L)**

**JURY TRIAL DEMANDED**

## APPENDIX IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

COME NOW Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC and

file this appendix in support of Plaintiffs' Opposition to Defendant's 12(b)(6) Motion to Dismiss

and in support thereof, would show the Court as follows:

| Exhibit No. | Description | Appx. Pages |
|:---:|:---|:---:|
| 1 | Declaration of Jonathan K. Waldrop | Appx 4 – Appx 6 |
| A | First Amendment, dated March 6, 2007 (an excerpt from the Prosecution History for U.S. Patent No. 7,257,582) | Appx 7 – Appx 14 |
| B | Notice of Allowability, dated August 13, 2012 (an excerpt from the Prosecution History for U.S. Patent No. 8,407,722 | Appx 15 – Appx 34 |
| C | Amendment, dated September 2, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080) | Appx 35 – Appx 44 |
| D | Examiner-Initiated Interview Summary, dated December 14, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080) | Appx 45 – Appx 47 |
| E | Memorandum Opinion and Order, *Intellectual Ventures I LLC and Intellectual Ventures II LLC v. American Airlines, Inc.*, Civil Action No. 4:24-cv-00980-ALM, ECF 74 (E.D. Tex. Aug. 19, 2025) | Appx 48 – Appx 52 |
| F | Notice of Allowability, dated December 14, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080). | Appx 53 – Appx 61 |

Dated: February 4, 2026                    RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
  Jonathan K. Waldrop (CA Bar No. 297903)
  (Admitted *pro hac vice*)
  jwaldrop@kasowitz.com
  Marcus A. Barber (CA Bar No. 307361)
  (*Pro hac vice* forthcoming)
  mbarber@kasowitz.com
  John W. Downing (CA Bar No. 252850)
  (*Pro hac vice* forthcoming)
  jdowning@kasowitz.com
  Heather S. Kim (CA Bar No. 277686)
  (Admitted *pro hac vice*)
  hkim@kasowitz.com
  ThucMinh Nguyen (CA Bar No. 304382)
  (*Pro hac vice* forthcoming)
  tnguyen@kasowitz.com
  Jonathan H. Hicks (CA Bar No. 274634)
  (Admitted *pro hac vice*)
  jhicks@kasowitz.com
  **KASOWITZ LLP**
  101 California Street, Suite 3950
  San Francisco, California 94111
  Telephone: (415) 421-6140
  Facsimile: (415) 358-4408

  Jeceaca An (NY Bar No. 5849898)
  (*Pro hac vice* forthcoming)
  jan@kasowitz.com
  **KASOWITZ LLP**
  1633 Broadway
  New York, NY 10019
  Telephone: (212) 506-1700
  Facsimile: (212) 506-1800

  Paul G. Williams (GA Bar No. 764925)
  (Admitted *pro hac vice*)
  pwilliams@kasowitz.com
  **KASOWITZ LLP**
  1230 Peachtree Street, N.E., Suite 2445
  Atlanta, Georgia 30309
  Telephone: (404) 260-6102
  Facsimile: (404) 393-9752

**Appx 2**

William D. Ellerman (TX Bar No. 24007151)
wellerman@CJSJLAW.com
**Cherry Johnson Siegmund James PLLC**
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Telephone: 254-732-2242
Facsimile: 866-627-3509

Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: 254-732-2242
Facsimile: 866-627-3509

*Attorneys for Plaintiffs*
*INTELLECTUAL VENTURES I LLC*
*INTELLECTUAL VENTURES II LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 4th day of February, 2026, via the Court's CM/ECF system.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop

**Appx 3**

# <u>Exhibit 1</u>

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | **Civil Action No. 3:25-CV-02885-L-BN** |
| *Plaintiffs,* | **(consolidated with 3:25-cv-03097-L)** |
| v. | |
| SOUTHWEST AIRLINES CO., | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## DECLARATION OF JONATHAN K. WALDROP IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

I, Jonathan K. Waldrop, declare as follows:

1. I am a Partner with the law firm of Kasowitz LLP. I am one of the attorneys responsible for the representation of Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Plaintiffs") in this matter and make this declaration in support of Plaintiffs' Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss.

2. Attached hereto as Exhibit A is a true and correct copy of the First Amendment, dated March 6, 2007 (an excerpt from the Prosecution History for U.S. Patent No. 7,257,582).

3. Attached hereto as Exhibit B is a true and correct copy of the Notice of Allowability, dated August 13, 2012 (an excerpt from the Prosecution History for U.S. Patent No. 8,407,722).

4. Attached hereto as Exhibit C is a true and correct copy of the Amendment, dated September 2, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080).

5.    Attached hereto as Exhibit D is a true and correct copy of the Examiner-Initiated Interview Summary, dated December 14, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080).

6.    Attached hereto as Exhibit E is a true and correct copy of the Memorandum Opinion and Order, *Intellectual Ventures I LLC and Intellectual Ventures II LLC v. American Airlines, Inc.*, Civil Action No. 4:24-cv-00980-ALM, ECF 74 (E.D. Tex. Aug. 19, 2025).

7.    Attached hereto as Exhibit F is a true and correct copy of the Notice of Allowability, dated December 14, 2009 (an excerpt from the Prosecution History for U.S. Patent No. 7,712,080).

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry under the circumstances.

Executed on the 4th day of February, 2026, in San Francisco, California.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop

# <u>Exhibit A</u>

03-07-07    TM    2165

22469

**Certificate of Express or First-Class Mailing**

I hereby certify that I have deposited this correspondence with the
US Postal Service as first-class or, if a mailing-label number is
given below, as express mail addressed to Comm. of Patents,
Box 1450, Alexandria, VA 22313-1450 on the below-given date.

_____    Date

EV800232338

Express-mail label number

_____    Signature

MAR 06 2007

## IN THE U.S. PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor | Michael ROTHSCHILD |
| Patent App. | 10/375,893 |
| Filed | 27 February 2003 |
| For | LOAD BALANCING WITH SHARED DATA |

Conf. No. 6365

Art Unit          2165                    Examiner   Wu, Y

Hon. Commissioner of Patents
Box 1450
Alexandria, VA  22313-1450

### FIRST AMENDMENT

In response to the Office Action mailed 08 December 2006,
please amend the above-identified application as follows:

- 1 -

Atty's 22469                                        Pat. App. 10/375,893

CLAIM AMENDMENTS

1      1.  (currently amended)  A method of effecting <u>on a</u>
2   <u>preexisting input file</u> a computer-executable process <u>comprised of a</u>
3   <u>plurality of subtasks, the method</u> comprising the steps of:
4          (a) automatically determining file allocation and
5   logically subdividing records of said input file into a plurality
6   of partitions;
7          (b) distributing <u>descriptions of all of</u> said partitions
8   to <u>each of</u> a plurality of <u>subtask</u> processors ~~and activating~~
9          <u>(c) simultaneously executing at least a</u> respective <u>one of</u>
10  <u>the</u> subtasks of the computer-executable process in each <u>of at least</u>
11  <u>some</u> of said processors <u>on a respective one of the partitions with</u>
12  [[,]] each subtask reading and processing [[said]] <u>the respective</u>
13  partition [[s]] <u>so as to process the respective partition and</u>
14  <u>produce respective subtask output and;</u>
15          <u>(d) thereafter repeating step (c) in at least some of the</u>
16  <u>subtask processors each with another unprocessed partition</u> on a
17  first<u>-</u>come/first-serve<u>d</u> basis; and
18          [[(c)]] <u>(e)</u> generating at least one output <u>combining all</u>
19  <u>of the subtask outputs and</u> reflecting the processing of <u>all of</u> said
20  subtasks.

1      2.  (currently amended)  The method defined in claim 1
2   wherein the automatic determination of file allocation and logical
3   subdivision of records of said input file into said plurality of

- 2 -

4    partitions in step (a) and the distribution of <u>the description of</u>

5    <u>all of</u> said partitions in step (b) is carried out with at least one

6    <u>further</u> processor in addition to the subtask processors

7    ~~formulation~~.

1          3.  (currently amended)  The method defined in claim 1

2    ~~wherein each of said subtasks produces a subtask output, said~~

3    ~~method~~<u>,</u> further comprising the step of merging said subtask outputs

4    ~~to produce the output of step (c)~~ <u>in step (e)</u>.

1          4.  (currently amended)  The method defined in claim 1

2    wherein the output in step [[(c)]] <u>(e)</u> is a succession of outputs

3    from said subtasks in a one<u>-</u>to<u>-</u>one correspondence with said records

4    of said input file.

1          5.  (currently amended)  The method defined in claim 1

2    wherein the output in step [[(c)]] <u>(e)</u> is an accumulation of output

3    records from said subtasks in an arbitrary order.

1          6.  (original)  The method defined in claim 1 wherein

2    said input file resides on a storage area network and is derived

3    therefrom.

1          7.  (currently amended)  The method defined in claim 1

2    wherein said input file resides on a network<u>-</u>attached storage and

3    is derived therefrom.

- 3 -

Atty's 22469                                          Pat. App. 10/375,893

1        8. (original)  The method defined in claim 1 wherein
2  said computer-executable process is a sort process.

1        9. (original)  The method defined in claim 1 wherein
2  said computer-executable process is a statistical analysis process.

1       10. (currently amended)  The method defined in claim 1
2  wherein said computer-executable process is a report_-creating
3  process.

1       11. (original)  The method defined in claim 1 wherein
2  said computer-executable process includes a database query.

1       12. (currently amended)  The method defined in claim
2  [[1]] 2 wherein said one processor is part of a mainframe computer
3  and ~~said plurality of~~ the other processors are processors of at
4  least one other computer.

1       13. (original)  The method defined in claim 1 wherein
2  said plurality of processors are all parts of a single
3  multiprocessor.

1       14. (currently amended)  The method defined in claim 1
2  wherein the automatic determination of file allocation and logical
3  subdivision of records of said input file into said plurality of

- 4 -

Atty's 22469                                          Pat. App. 10/375,893

4    partitions in step (a) and the distribution of <u>the descriptions of</u>

5    <u>all of</u> said partitions in step (b)  is carried out with at least

6    one processor, and said one processor and said plurality of

7    processors are all parts of a single multiprocessor <u>not including</u>

8    <u>said one processor</u>.

- 5 -

Atty's 22469                                          Pat. App. 10/375,893


### Remarks:

This amendment is submitted in an earnest effort to advance this case to issue without delay.

The claims have been amended to clarify their language and defined the invention with somewhat greater particularity over the art.

The primary difference between the instant invention and the processes disclosed in US 5,603,028 of Kitsuregawa and 5,357,632 of Pian is that these systems rely on a special control process that uses load information to distribute the load between processors that share the load.  With the instant invention as defined in the claims there is no such special process.  The prior art's load information is not created with the process of the instant invention.  Instead, the load sharing is done as a byproduct of the fact that the load-sharing process take parts of the load on a first-come/first-served basis.

A comparison would be to a road intersection where, according to the prior art, there is a traffic light that determines who can go when.  The instant invention is more like such an intersection with a four-way stop so that the individual drivers determine who can go and when.

This is a major improvement since in addition to eliminating the control process it also eliminates the need to

- 6 -

Atty's 22469                                        Pat. App. 10/375,893

collect and maintain load information, which it is very difficult
to do and almost impossible to define so as to anticipate all
possible processors that might execute the subtasks.

The amended claims, refer to a distribution of a
description of the work to be done.  The sharing process can use
such a description to distribute the load without a special load
process.

For these reasons the instant invention is clearly
allowable over the cited art.  Notice to that effect is earnestly
solicited.

If only minor problems that could be corrected by means
of a telephone conference stand in the way of allowance of this
case, the examiner is invited to call the undersigned to make the
necessary corrections.

Respectfully submitted,
K.B. Ross P.C.

by: Andrew Wilford, 26,597
Attorney for Applicant

02 March 2007
5676 Riverdale Avenue  Box 900
Bronx, NY  10471-0900
Cust. No.:  535
Tel:  718 884-6600
Fax:  718 601-1099

Enclosure:          None.

- 7 -

Appx 14

# **<u>Exhibit B</u>**

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 11/396,251 | TUTTLE ET AL. |
| | **Examiner** | **Art Unit** | |
| | TUAN DAO | 2194 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _05/31/02012_.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____;
   the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _26, 28-31, 33-62, and 77-78 (renumbered as 1-37)_.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All    b) ☐ Some*   c) ☐ None    of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
         International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF
   INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
      Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the
   attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08),
   Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit
   of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☒ Interview Summary (PTO-413),
   Paper No./Mail Date _08/01/2012_
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____ .

/Andy Ho/
Primary Examiner, Art Unit 2194

Application/Control Number: 11/396,251                                          Page 2
Art Unit: 2194

## DETAILED ACTION

1.      This action is responsive to the Appeal Brief dated 05/31/2012.

2.      Claims 26, 28-31, 33-64, and 66-68 have been examined, and all remained pending

claims are allowed (renumbered 1-37).

3.      An examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR

1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the

payment of the issue fee.

4.      Authorization for this examiner's amendment was given in a telephone interview with

Mr. Amirali Sharifi (Registration No. 68887) on 07/31/2012.


## PROPOSED AMENDMENTS TO THE CLAIMS


### Listing of Claims


 1-25. (Cancelled)


26.      (Previously Presented) A method comprising:

 receiving, using a processing device, an update message from an input source, the update

message identifying a live object and containing data for updating a property of the live object;

 identifying a category of the update message based on the input source;

Application/Control Number: 11/396,251                                      Page 3
Art Unit: 2194

determining a node having a node type to which the update message is to be routed based on a
mapping of categories of update messages to node types, the mapping controlling an amount of
update message traffic through nodes of a routing network;

routing, using the processing device, the update message to the node having the determined
node type;

causing the node, through the update message, to determine a client, different from the input
source, that has registered for updates of the live object;

causing the node to route the update message from the node to the client; and

causing the client to process the update message and to update the property of the live
object.

27.    (Cancelled)

28.    (Currently Amended) The method of claim 26, further comprising:

causing the node to extract an object [[ID]] identifier (ID) from the update message, to establish
a connection with the client, and to determine if the client has registered for updates of the live
object based on the object ID.

29.    (Previously Presented) The method of claim 28, further comprising:

causing the node to determine at least one client proxy with which the client communicates;

Application/Control Number: 11/396,251                                      Page 4
Art Unit: 2194

causing the node to route the update message to the client proxy; and

causing the client proxy to route the update message to the client to determine the connection.

30.    (Previously Presented) The method of claim 29, further comprising causing the node to

maintain client registration information concerning the client connection.

31.    (Previously Presented) The method of claim 29, further comprising causing the node to

maintain client registration information concerning the client connection at the client proxy.

32.    (Cancelled)

33.    (Previously Presented) A routing network comprising:

a gateway device configured to:

receive an update message from an input source, the update message identifying a live object

and containing data for updating a property of the live object,

        identify a category of the update message based on the input source;

        determine a node having a node type to which the update message is to be routed based

on a mapping of a categories of update messages to node types, the mapping controlling an

amount of update message traffic through nodes of a routing network; and                route

the update message; and

Application/Control Number: 11/396,251                                          Page 5
Art Unit: 2194

the node configured to:

receive the update message from the gateway device, wherein the node is configured to be mapped to the node type,

determine a client, different from the input source, that has registered for updates of the live object, and

route the update message from the node to the client, wherein the client is adapted to process the update message and to update the property of the live object.


34.     (Currently Amended) The routing network of claim 33, wherein the node is configured to extract an object [[ID]] identifier (ID) from the update message and to determine a connection to the client to route the data to the client.


35.     (Previously Presented) The routing network of claim 34, wherein the node is configured to determine the connection by determining at least one client proxy with which the client communicates and to route the update message to the client proxy.


36.     (Previously Presented) The routing network of claim 35, wherein client registration information concerning the client connection is configured to be maintained at the node.

Application/Control Number: 11/396,251                                    Page 6
Art Unit: 2194

37.    (Previously Presented) The routing network of claim 35, wherein client registration information concerning the client connection is configured to be maintained at the client proxy.

38.    (Previously Presented) The routing network of claim 33, wherein:

the gateway device is configured to route the update message to the node adapted to receive messages of more than one message category, and

the node is configured to determine a connection with at least one client proxy with which the client communicates and to route the data to the client proxy.

39.    (Currently Amended) A method comprising:

Application/Control Number: 11/396,251                                              Page 7
Art Unit: 2194

providing, using a processing device of an input source, a data representation to a client device, different from the input source, coupled to a routing network, wherein the data representation includes at least one live object recognizable by the client device, and causing the client device to respond to the live object of the data representation by determining an object [[ID]] identifier (ID) of the live object and to register for updates of the live object with the routing network, such that registering the client device with the routing network provides client connection information to a node in the routing network; and

sending, using the processing device of the input source, an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object,

wherein a gateway device at the routing network is configured to identify a category of the update message based on the input source, to determine a node type to which the identified category maps, and to route the update message to the node, having the node type, at the routing network,

wherein the node is configured to identify the client device as a registered device and to route the update message to the client device, and

wherein the client device processes the update message upon receipt to update the property of the live object at the client device.

Application/Control Number: 11/396,251                                    Page 8
Art Unit: 2194

40.    (Previously Presented) The method of claim 39, wherein providing the data representation to the client device includes providing the live object that causes the client device to register with a client proxy of the routing network.

41.    (Previously Presented) The method of claim 39, wherein providing the data representation to the client device includes providing the live object that causes the client device to register with the node of the routing network.

42.    (Previously Presented) The method of claim 39, wherein providing the data representation to the client device includes providing an activation module that is executed by the client device and that registers the live object with the routing network.

43.    (Previously Presented) The method of claim 42, wherein providing the activation module includes providing the activation module that is configured to determine a node type that handles registration and that causes the client device to register with the node corresponding to the node type.

44.    (Previously Presented) The method of claim 42, wherein providing the activation module includes providing the activation module that is configured to determine a message category of the data representation and that causes the client device to register with a node having a node type corresponding to the message category.

Application/Control Number: 11/396,251                                          Page 9
Art Unit: 2194

Application/Control Number: 11/396,251    Page 10
Art Unit: 2194

45.    (Currently Amended) An apparatus comprising:

an input source device configured to provide a data representation to a client device, different from the input source, coupled to a routing network, wherein the data representation includes at least one live object that is recognizable by the client device, and that causes the client device to determine an object [[ID]] identifier (ID) of the live object to register for updates of the live object with the routing network, such that registering the client device with the routing network provides client connection information to the routing network,

wherein the input source device is configured to route an update message to the routing network, wherein the update message identifies the live object and contains update data for updating a property of the live object,

wherein a gateway device at the network is configured to identify a category of the update message based on the input source, to determine a node type to which the identified category maps, and to route the update message to a node of the node type at the routing network,

wherein the node is configured to identify the client device as a registered device and route the update message containing the update data to the client device, and

wherein the client device is configured to process the update message upon receipt to update the property of the live object at the client device.

Application/Control Number: 11/396,251                                                    Page 11
Art Unit: 2194

46.    (Previously Presented) The apparatus of claim 45, wherein the live object of the data representation is configured to cause the client device to register with a client proxy of the routing network.

47.    (Previously Presented) The apparatus of claim 45, wherein the live object of the data representation is configured to cause the client device to register with the node of the routing network.

48.    (Previously Presented) The apparatus of claim 45, wherein the received data representation includes an activation module that is configured to be executed by the client device and adapted to register the live object with the routing network.

49.    (Previously Presented) The apparatus of claim 48, wherein the activation module is configured to determine a node type for handling registration and to cause the client device to register with the node of the node type.

50.    (Previously Presented)    The apparatus of claim 48, wherein the activation module determines a message category of the data representation and causes the client device to register with the node having a node type corresponding to the message category.

Application/Control Number: 11/396,251                                    Page 12
Art Unit: 2194

51.    (Currently Amended) An article of manufacture including a computer-readable storage medium having instructions stored thereon, execution of which by a computing device causes the computing device to perform operations comprising:

Application/Control Number: 11/396,251                                            Page 13
Art Unit: 2194

providing, using a processing device of an input source, a data representation to a client device, different from the input source, coupled to a routing network, wherein the data representation includes at least one live object that is recognizable by the client device, and that causes the client device to respond to the live object by determining an object [[ID]] identifier (ID) of the live object to register for updates of the live object with the routing network, such that registering the client device with the routing network provides client connection information to the routing network; and

sending, using the processing device of the input source, an update message to the routing network, wherein the update message identifies the live object and contains update data for updating a property of the live object,

wherein a gateway device at the routing network is configured to identify a category of the update message based on the input source, to determine a node type to which the identified category maps, and to route the update message to a node of the node type at the routing network,

wherein the node is configured to identify the client device as a registered device and to route the update message to the client device, and

wherein the client device is configured to process the update message upon receipt to update the property of the live object at the client device.

Application/Control Number: 11/396,251                                Page 14
Art Unit: 2194

52.    (Previously Presented) The article of manufacture of claim 51, wherein the live object of the data representation causes the client device to register with a client proxy of the routing network.

53.    (Previously Presented) The article of manufacture of claim 51, wherein the live object of the data representation causes the client device to register with the node of the routing network.

54.    (Previously Presented) The article of manufacture of claim 51, wherein the received data representation includes an activation module executed by the client device and adapted to register the live object with the routing network.

55.    (Previously Presented) The article of manufacture of claim 54, wherein the activation module determines a node type that handles registration and causes the client device to register with the node of the node type.

56.    (Previously Presented) The article of manufacture of claim 54, wherein the activation module determines a message category of the data representation and causes the client device to register with the node having a node type corresponding to the message category.

Application/Control Number: 11/396,251                                      Page 15

Art Unit: 2194

57.    (Currently Amended) A non-transitory computer readable storage medium having instructions stored thereon, the instructions comprising:

instructions for providing a data representation to a client device coupled to a routing network, wherein the data representation includes at least one live object recognizable by the client device, and wherein the client device is configured to respond to the live object of the data representation by determining an object [[ID]] identifier (ID) of the live object to register for updates of the live object with the routing network, such that registering the client device with the routing network provides client connection information to the routing network; and

instructions for providing, using a processing device of an input source, different from the client device, an update message to the routing network, wherein the update message identifies the live object and contains update data for updating a property of the live object,

wherein a gateway device at the routing network is configured to identify a category of the update message based on the input source, to determine a node type to which the identified category maps, and to route the update message to a node of the node type at the routing network,

wherein the node is configured to identify the client device as a registered device and to route the update message containing the update data to the client device, and

wherein the client device is configured to process the update message upon receipt to update the property of the live object at the client device.

Application/Control Number: 11/396,251                                      Page 16
Art Unit: 2194

58.     (Previously Presented)    The non-transitory computer readable storage medium of claim 57, wherein the live object of the data representation causes the client device to register with a client proxy of the routing network.

59.     (Previously Presented)    The non-transitory computer readable storage medium of claim 57, wherein the live object of the data representation causes the client device to register with the node of the routing network.

60.     (Previously Presented)    The non-transitory computer readable storage medium of claim 57, wherein the data representation includes an activation module that is executed by the client device and that is adapted to register the live object with the routing network.

61.     (Previously Presented)    The non-transitory computer readable storage medium of claim 60, wherein the activation module determines a node type for handling registration and causes the client device to register with the node of the node type.

62.     (Previously Presented)    The non-transitory computer readable storage medium of claim 60, wherein the activation module determines a message category of the data representation and causes the client device to register with the node having the node type corresponding to the message category.

Application/Control Number: 11/396,251                                                    Page 17
Art Unit: 2194

63.    (Cancelled)


64.    (Cancelled)


65.    (Cancelled)


66.    (Cancelled)


67.    (Previously Presented) The routing network of claim 33, wherein the node type is configured to identify the node that receives the update message from the gateway device.


68.    (Previously Presented)  The method of claim 26, wherein the property of the live object has a direct effect on a visual representation of the live object in a data representation, has an effect on an internal aspect of the live object and has no effect on the visual representation of the live object in the data representation, or has a direct effect on one aspect of the visual representation of the live object in the data representation and has no effect on other aspect of the visual representation of the live object in the data representation.

Application/Control Number: 11/396,251                                              Page 18
Art Unit: 2194

**Examiner's Statement of Reasons for Allowance**

5.      As Applicants pointed out in the Brief, the prior art of record (Chandra in view of Stocker

and Trenbeath) does not disclose and/or fairly suggest at least claimed limitations recited in such

manners in independent claim 1 and similarly recited in such manners in other independent

claims 33, 39, 45, 51, and 57.

        These claimed limitations are not present in the prior art of record and would not have

been obvious, thus all pending claims 26, 28-31, 33-62, and 67-68 are allowed.


**Conclusion**

6.      Any inquiry concerning this communication should be directed to examiner Tuan Dao,

whose telephone/fax numbers are (571) 270 3387, respectively. The examiner can normally be

reached on every Monday-Thursday, and the second Friday of the bi-week from 7:30AM to

5:00PM.

7.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Hyung Sough, can be reached at (571) 272 6799.

        The fax phone number for the organization where this application or proceeding is

assigned is (571) 273 8300.

        Any inquiry of a general nature of relating to the status of this application or

proceeding should be directed to the TC 2100 Group receptionist whose telephone number is

(571) 272 2100.

Application/Control Number: 11/396,251                                              Page 19
Art Unit: 2194

       Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).


/Tuan C. Dao/

Examiner, Art Unit 2194




/Andy Ho/

Primary Examiner, Art Unit 2194

# **Exhibit C**

Atty Docket No. 703538.4044
Serial No.  10/850,842

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Appl. No. | : | 10/850,842 |
| Applicant | : | Pan et al. |
| Filing Date | : | May 21, 2004 |
| Title | : | SYSTEMS AND METHODS FOR PARALLEL DISTRIBUTED PROGRAMMING |
| Group Art Unit | : | 2192 |
| Examiner | : | Zheng Wei |
| Docket No. | : | 703538.4044 |

Confirmation No. 9744

## <u>AMENDMENT</u>

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

This paper is filed in response to the Office Action mailed on April 2, 2009.

Please amend the subject application as follows.

Amendment to the claims appear in a listing of the claims beginning on page 2.

The remarks begin on page 5.

Atty Docket No. 703538.4044
Serial No.  10/850,842

Listing of the claims:

1.     (Currently amended)  A method of developing a ~~parallel~~ distributed <u>parallel</u> ~~application~~ <u>computing program</u>, comprising steps of:

establishing at least one distributed shared variable;

developing at least one distributed sequential computing program to access the at least one distributed shared variable; and

transforming the at least one distributed sequential computing program into at least one distributed parallel <u>computing</u> program by spawning at least one child distributed sequential computing program from the at least one distributed sequential <u>computing</u> program when at least one intermediate condition occurs within the at least one distributed sequential <u>computing</u> program, <u>wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one child distributed sequential computing program to perform parallel processing and/or operations</u>.

2.     (Previously presented)  The method of claim 1, wherein each of the at least one distributed sequential computing program includes at least one self-migrating thread, capable of migrating among at least one processor and capable of accessing the at least one distributed shared variable.

3.     (Previously presented)  The method of claim 1, wherein the at least one distributed shared variable is configured to be located among a plurality of memories.

4.     (Currently amended)  The method of claim 1, wherein the ~~parallel~~ distributed <u>parallel</u> ~~application~~ <u>computing program</u> is configured to operate across multiple processors.

Atty Docket No. 703538.4044
Serial No.  10/850,842

5.      (Currently amended)  The method of claim 1, wherein the ~~parallel~~ distributed

<u>parallel</u> ~~application~~ <u>computing program</u> is configured to operate using multiple threads.

6.      (Currently amended)  The method of claim 1, wherein the ~~parallel~~ distributed

<u>parallel</u> ~~application~~ <u>computing program</u> is configured to operate across multiple nodes.

7. – 8.  (Cancelled)

9.      (Currently amended)  The method of claim 1, further comprising the step of

configuring the at least one distributed sequential <u>computing</u> program to include at

least one mobile agent.

10.      (Previously presented)  The method of claim 9, wherein the at least one mobile

agent is implemented using self-migrating threads.

11. – 14.  (Cancelled)

15.      (Currently Amended)  A distributed parallel computing system, having at least

one memory area and at least one processor, comprising:

at least one distributed shared variable capable of loading into the at least one

memory area; and

at least one distributed sequential computing ~~system~~ <u>program</u>, configured to

operate in the at least one processor, configured to access the at least one distributed

shared variable, and configured to transform into at least one distributed parallel

computing ~~system~~ <u>program</u> by spawning at least one child distributed sequential

computing ~~system~~ <u>program</u> when at least one intermediate condition occurs within the

at least one distributed sequential ~~system~~ <u>program, wherein the at least one distributed

parallel computing program concurrently uses the at least one distributed sequential</u>

Atty Docket No. 703538.4044
Serial No.  10/850,842

computing program and the at least one child distributed sequential computing program to perform parallel processing and/or operations.

16.     (Currently amended)  The system of claim 15, wherein the at least one distributed sequential computing ~~system~~ program comprises at least one mobile agent.

17.     (Previously presented)  The system of claim 16, wherein the at least one mobile agent is implemented using self-migrating threads.

18.     (Previously presented)  The system of claim 16, wherein the at least one mobile agent is an explicit-navigation mobile agent.

19.     (Previously presented)  The system of claim 16, wherein the at least one mobile agent is an implicit-navigation mobile agent.

20.     (Previously presented)  The system of claim 16, wherein the at least one mobile agent is configured to move from one processor to another processor.

21.     (Previously presented)  The system of claim 16, wherein the at least one mobile agent operates within a distributed shared memory system.

22.     (Previously presented)  The system of claim 15, wherein the at least one processor is located across a physical network.

23. – 25.  (Cancelled)

26.     (New) The method of claim 1, wherein the distributed parallel computing program is configured to operate across a distributed shared memory system.

27.     (New) The method of claim 15, wherein the distributed parallel computing program is configured to operate across a distributed shared memory system.

Atty Docket No. 703538.4044
Serial No.  10/850,842

## REMARKS

Claims 1-6, 9-10, 15-22 and 26-27 are pending in the application.  Claims 26 and 27 are newly amended.  In the office action mailed April 2, 2009, the Examiner rejected claims 1-6, 9-10, and 15-22 under 35 U.S.C. § 103(a) as being unpatentable over Pan et al ("Distributed Sequential Computing Using Mobile Code: Moving Computation to Data," hereinafter "Pan") in view of Suzuki et al. ("Self-Migrating Threads for Multi-Agent Applications" hereinafter "Suzuki"), and further in view of Fukuda et al. ("Message Versus Messengers in Distributed Programming," hereinafter "Fukuda").

Neither Pan, Suzuki or Fukuda, alone or in combination, teach or suggest the claimed invention as claimed in independent claims 1 and 15.  Specifically, the combination of Pan, Suzuki and Fukuda fails to teach or suggest

> transforming the at least one distributed sequential computing program into at least one distributed parallel computing program by spawning at least one child distributed sequential computing program from the at least one distributed sequential computing program when at least one intermediate condition occurs within the at least one distributed sequential computing program, wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one child distributed sequential computing program to perform parallel processing and/or operations

as claimed in claim; or

Atty Docket No. 703538.4044
Serial No.  10/850,842

at least one distributed sequential computing program, configured

to operate in the at least one processor, configured to access the at least

one distributed shared variable, and configured to transform into at least

one distributed parallel computing program by spawning at least one child

distributed sequential computing program when at least one intermediate

condition occurs within the at least one distributed sequential program,

wherein the at least one distributed parallel computing program

concurrently uses the at least one distributed sequential computing

program and the at least one child distributed sequential computing

program to perform processing and/or operations

as claimed in claim 15.  Pan, Suzuki and Fukuda simply do not teach or suggest

transforming a distributed sequential computing (DSC) program into a distributed

parallel computing program (DPC) program or a DSC program configured to transform

into a DPC program wherein the DPC concurrently uses the DSC and child DSC to

perform parallel and/or pipeline processing.   Although Pan may describe the concept

of DSC programs, which is computing using a single locus of computation over

distributed data (Application [0024]), Pan does not disclose or suggest transforming the

DSC into a DPC by spawning a child DSC or a DSC configured to transform into a DPC

by spawning a child DSC.  Similarly, Suzuki describes the use of a collection of self-

migrating threads.  Although, as Applicants acknowledge at paragraph 0024 of the

application, a self-migrating thread may be utilized to perform DSC, a description of the

use of a collection of self-migrating threads does not disclose or suggest transforming a

DSC into a DPC by spawning a child DSC or a DSC configured to transform into a DPC

- 6 -

Atty Docket No. 703538.4044
Serial No.  10/850,842

by spawning a child DSC.

As Pan notes at page 78, column 1, "Our implementations use MESSENGERS, a system for agent-based distributed computing developed in Information and Computer Science at the University of California, Irvine ([1, 5])." Reference 5 in Pan is Fukada.  Thus the combined teaching of Pan and Fukuda is effectively Pan, i.e., distributed sequential computing using MESSENGERS.  Moreover, in light of Pan's discussion of implementation of DSCs using MESSENGERS, the fact that Fukuda describes replication does not teach or suggest transforming a DSC into a DPC by spawning a child DSC or a DSC configured to transform into a DPC by spawning a child DSC wherein the DPC concurrently uses the DSC and child DSC to perform parallel processing and/or operations, but rather only suggests to one skilled in the art the replication of a MESSENGER within an individual DSC program.  Thus, Fukuda does not cure the deficiency of Pan and Suzuki noted above, and, as a result, Pan, Suzuki and Fukuda can not establish a prima facie case of obviousness.  Accordingly, Applicants submit that independent claims 1 and 15, and claims 2-6, 9-10 and 16-22 by virtue of their dependence on claims 1 and 15,  meet the requirements for patentability under 35 USC 103, and respectfully request that the rejections of such claims be withdrawn.

CONCLUSION

In view of the foregoing, Applicants respectfully submit that claims 1-6, 9-10, and 15-22 are in condition for allowance.  Prompt and favorable action on the merits of the

Atty Docket No. 703538.4044
Serial No.  10/850,842

claims is earnestly solicited.  Should the Examiner have any questions or comments,

the Examiner is invited to call the undersigned at (949) 567-6700.

Atty Docket No. 703538.4044
Serial No.  10/850,842

The Commissioner is authorized to charge any fee that may be required in connection with this Amendment to deposit account no. 15-0665.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

Dated:  September 2, 2009

By:/Kenneth S. Roberts/ _____
     Kenneth S. Roberts
     Reg. No. 38,358

4 Park Plaza, Suite 1600
Irvine, CA 92614-2558
Tel. 949-567-6700
Fax: 949-567-6710

# **Exhibit D**

| **Examiner-Initiated Interview Summary** | Application No. | Applicant(s) |
| | 10/850,842 | PAN ET AL. |
| | Examiner | Art Unit | |
| | ZHENG WEI | 2192 | |

**All Participants:**

  (1) _ZHENG WEI_.

  (2) _Kenneth S. Roberts (reg#: 38,358)_.

**Status of Application:** _pending_

  (3) _____.

  (4) _____.

**Date of Interview:** _2 December 2009_          **Time:** _2:00PM_

**Type of Interview:**
☒ Telephonic
☐ Video Conference
☐ Personal (Copy given to: ☐ Applicant     ☐ Applicant's representative)

Exhibit Shown or Demonstrated:   ☐ Yes   ☒ No
  If Yes, provide a brief description:          .

**Part I.**

Rejection(s) discussed:

Claims discussed:
_1 and 15_

Prior art documents discussed:

**Part II.**

SUBSTANCE OF INTERVIEW DESCRIBING THE GENERAL NATURE OF WHAT WAS DISCUSSED:
_See Continuation Sheet_

**Part III.**

☒ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview directly resulted in the allowance of the application. The examiner will provide a written summary of the substance of the interview in the Notice of Allowability.
☐ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview did not result in resolution of all issues.  A brief summary by the examiner appears in Part II above.

(Applicant/Applicant's Representative Signature – if appropriate)

Case 3:25-cv-02885-L-BN     Document 113     Filed 02/04/26     Page 47 of 61     PageID 869

Continuation of Substance of Interview including description of the general nature of what was discussed:  Discussed the definition and scope of terms "distributed shared variable" and "intermediate condtion" as recited in the independent claims 1 and 15. Examiner proposed an amendment to further clarify the definitions of these terms. A copy of proposed amendment was send to Applicant. Applicant's amendment based on Examiner's proposed amendment is received and accepted by examiner, and will be incoporated in Examiner's Amendment to put the claims in condition for allowance.

# **<u>Exhibit E</u>**

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § § § § | |
| *Plaintiffs,* | § | Civil Action No. 4:24-cv-980 |
| v. | § § | Judge Mazzant |
| AMERICAN AIRLINES, INC., | § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant American Airlines, Inc.'s Partial Motion to Dismiss (Dkt. #15). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This is a patent case in which Plaintiffs allege that Defendant infringed on six patents covering various computer and cloud computing technologies: U.S. Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 7,949,785 (the "'785 Patent"); 8,027,326 (the "'326 Patent"); 7,324,469 (the "'469 Patent"); and 7,257,582 (the "'582 Patent") (collectively, the "Asserted Patents") (Dkt. #1 at p. 1). Four of these relate to cloud computing specifically: the '844, '722, '785, and '582 Patents (collectively, the "Cloud Computing Patents") (Dkt. #15 at p. 9). (Dkt. #1 at p. 1). Defendant seeks dismissal of several claims on the grounds that Plaintiffs did not adequately plead infringement and that certain patents are invalid under 35 U.S.C. § 101 (Dkt. #15 at pp. 2–3, 30–37).

Plaintiffs are a Washington-based entity that acquires and asserts patents (Dkt. #15 at p. 9). Defendant is a commercial airline headquartered in Fort Worth, Texas (Dkt. #15 at p. 9). On November 1, 2024, Plaintiffs sent Defendant a letter offering a license to the Asserted Patents (Dkt. #15 at p. 9). The next day, Plaintiffs filed this lawsuit (Dkt. #15 at p. 9). Plaintiffs assert that Defendant directly infringes the Asserted Patents by encouraging use of its systems and services, indirectly infringes through inducement and contributory acts (*See, e.g.*, Dkt. #1 at pp. 9, 12). Plaintiffs further allege that Defendant's conduct after receiving the November 1 letter constitutes willful infringement (*See, e.g.*, Dkt. #1 at pp. 10–11).

Plaintiffs concede that it has licensed these patents to certain cloud providers and that such licenses may cover Defendant's activities (Dkt. #15 at p. 9). Nonetheless, Plaintiffs have asserted them against businesses in other industries, including airlines, banks, and insurers (Dkt. #15 at p. 9). Plaintiffs maintain that Defendant infringes by using, offering, and promoting products and services that embody the Asserted Patents (Dkt. #1 at p. 3).

Defendant disputes Plaintiff's allegations, arguing that the Complaint does not identify unauthorized use of the Cloud Computing Patents, that the indirect infringement claims lack factual support, and that the pleadings as to the '844 and '722 Patents are conclusory given the complexity of the technology (*See, e.g.*, Dkt. #15 at pp. 12–13, 18–22). Defendant further contends that the '785 and '582 Patents are invalid because they are directed to abstract ideas without an inventive concept (Dkt. #15 at pp. 32–37).

On November 2, 2024, Plaintiffs filed their Complaint (Dkt. #1). On January 27, 2025, Defendant filed its Partial Motion to Dismiss (Dkt. #15). On March 19, 2025, Plaintiffs filed their

**Appx 50**

Response (Dkt. #31). On April 3, 2025, Defendant filed its Reply (Dkt. #42). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**Appx 51**

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

After reviewing Plaintiff's Complaint and the arguments presented in the briefs, the Court finds that Plaintiffs have stated plausible claims for relief under Rule 12(b)(6). Dismissal is unwarranted. Defendant's Motion should therefore be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendant American Airlines, Inc.'s Partial Motion to Dismiss (Dkt. #15) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 19th day of August, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

4

# <u>Exhibit F</u>

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 10/850,842 | PAN ET AL. | |
| | Examiner | Art Unit | |
| | ZHENG WEI | 2192 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _09/02/2009_.

2. ☒ The allowed claim(s) is/are _1-6,9,10,15-22,26 and 27 (re-numbered as 1-18)_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☒ Interview Summary (PTO-413), Paper No./Mail Date _20091202_ .

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Tuan Q. Dam/
Supervisory Patent Examiner, Art Unit 2192

**Appx 55**

Application/Control Number: 10/850,842                                          Page 2
Art Unit: 2192

## DETAILED ACTION

### *Remarks*

1.    This office action is in response to the amendment filed on 9/02/2009.

2.    Claims 1, 4-6, 9, 15 and 16 have been amended.

3.    Claims 26 and 27 have been added.

4.    Claims 1-6, 9, 10, 15-22, 26 and 27 remain pending and have been examined


## EXAMINER'S AMENDMENT

5.    An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as

provided by 37 CFR 1.312. To ensure consideration of such an amendment, it

MUST be submitted no later than the payment of the issue fee.

6.    Authorization for this examiner's amendment was given in a telephone interview

and further email communication with Kenneth S. Roberts(Reg# 38,358) on

12/02/2009 to obviate any potential 35 U.S.C. § 112 issues, and to put the claims

in condition for allowance.

7.    Applicant's proposed amendment is received via email and accepted by

examiner.

8.    Claims 1 and 15 are now being further amended based on the received

applicant's proposed amendment.

9.    The application has been amended as follows:

Application/Control Number: 10/850,842                                    Page 3

Art Unit: 2192

**IN THE CLAIMS**

**Please amend claims 1 and 15 as follows:**


1. (Currently amended) A method of developing a distributed parallel computing program, comprising steps of:

establishing at least one distributed shared variable, wherein the at least one distributed shared variable is a single variable that includes several variables that may be physically distributed across multiple memories;

developing at least one distributed sequential computing program to access the at least one distributed shared variable; and

transforming the at least one distributed sequential computing program into at least one distributed parallel computing program by spawning at least one child distributed sequential computing program from the at least one distributed sequential computing program when at least one intermediate condition occurs within the at least one distributed sequential computing  program, wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one spawned child distributed sequential computing program to perform parallel processing and/or operations, wherein the at least one intermediate condition comprising one intermediate result that will be required by the at least one spawned child distributed sequential computing program to continue computation.

Application/Control Number: 10/850,842                                                    Page 4
Art Unit: 2192

15. (Currently amended) A distributed parallel computing system, having at least

one memory area and at least one processor, comprising:

at least one distributed shared variable capable of loading into the at least one

memory area, wherein the at least one distributed shared variable is a single variable

that includes several variables that may be physically loaded into the at least one

memory area; and

at least one distributed sequential computing program, configured to operate in the

at least one processor, configured to access the at least one distributed shared variable,

and configured to transform into at least one distributed parallel computing program by

spawning at least one child distributed sequential computing system program when at

least one intermediate condition occurs within the at least one distributed sequential

program, wherein the at least one distributed parallel computing program concurrently

uses the at least one distributed sequential computing program and the at least one

spawned child distributed sequential computing program to perform parallel processing

and/or operations, wherein the at least one intermediate condition comprising one

intermediate result that will be required by the at least one spawned child distributed

sequential computing program to continue computation.


**--END OF AMENDMENT--**

Application/Control Number: 10/850,842                                                          Page 5
Art Unit: 2192

### *Allowable Subject Matter*

10.    **Claims 1-6, 9, 10, 15-22, 26 and 27 are allowed** (re-numbered as claims 1-18).

As the Applicants pointed out under REMAKRS section, page number 5-7, neither Pan,

Suzuki, Fukuda, alone or in combination, teach or suggest the claimed invention as

claimed in independent claims 1 and 15. Specifically, the combination of Pan, Suzuki

and Fukuda fails to teach or suggest the feature about "establishing at least one

distributed shared variable, wherein the at least one distributed shared variable is a

single variable that includes several variables that may be physically distributed across

multiple memories; developing at least one distributed sequential computing program to

access the at least one distributed shared variable; and transforming the at least one

distributed sequential computing program into at least one distributed parallel computing

program by spawning at least one child distributed sequential computing program from

the at least one distributed sequential computing program when at least one

intermediate condition occurs within the at least one distributed sequential computing

program, wherein the at least one distributed parallel computing program concurrently

uses the at least one distributed sequential computing program and the at least one

spawned child distributed sequential computing program to perform parallel processing

and/or operations, wherein the at least one intermediate condition comprising one

intermediate result that will be required by the at least one spawned child distributed

sequential computing program to continue computation" as further clarified by the

Examiner's Amendment above,  and in as such manners as recited in the independent

Application/Control Number: 10/850,842                                              Page 6
Art Unit: 2192

claims 1 and 15, thus Claims 1, 15 and each of the dependent claims are allowable for

at least the same reasons.

11.    Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Zheng Wei whose telephone number is (571) 270-1059

and Fax number is (571) 270-02059.  The examiner can normally be reached on

Monday-Thursday 8:00-15:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Tuan Q. Dam can be reached on (571) 272-3695.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

Application/Control Number: 10/850,842                                          Page 7

Art Unit: 2192

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Z. W./                                    /Tuan Q. Dam/
Examiner, Art Unit 2192                     Supervisory Patent Examiner, Art Unit 2192