**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC and** | § | |
| **INTELLECTUAL VENTURES II LLC,** | § | |
| | § | **Civil Action No. 3:25-cv-02885-L-BN** |
| **Plaintiffs,** | § | |
| | § | **Consolidated with 3:25-cv-03097-L** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT SOUTHWEST AIRLINES CO.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

---

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENTS .................................................................................................... 2

  A.   The '582 Patent Claims a Basic Scheduling Idea, Not a Computer-Functional
       Improvement. ........................................................................................... 2

    1.   *Alice* Step One—IV Cannot Manufacture a Technical Improvement the
         Claims Do Not Recite. ....................................................................... 2

    2.   *Alice* Step Two—FCFS Allocation Is Not An Inventive Concept. ......... 4

  B.   The '844 and '282 Patents Claim Nothing More Than an Abstract Idea for
       Organizing and Storing Data. ..................................................................... 5

    1.   *Alice* Step One—IV Fails to Rebut the '844 and '282 Patents Are Directed
         to an Abstract Idea. ........................................................................... 5

    2.   *Alice* Step Two—The Asserted Patent Claims Add Nothing Inventive. ..... 7

  C.   The '722 Patent Claims an Abstract Subscription-Update Workflow, Not a
       Technological Improvement. ....................................................................... 8

    1.   *Alice* Step One—Claim 14 Claims the Abstract Idea of Subscription-Based
         Content Distribution to Registered Recipients Without Any Technical
         Innovation. ...................................................................................... 8

    2.   *Alice* Step Two—Claim 14 Lacks an Inventive Concept and Only Claims
         Delivering Updated Content to Registered Clients Using Generic
         Hardware. ...................................................................................... 10

  D.   The '080 Patent is Directed to Abstract Parallel Task Distribution, Not
       Improved Computing Technology. ............................................................... 11

    1.   *Alice* Step One—IV Identifies No Specific Improvement, Only Functional
         Results. ......................................................................................... 11

    2.   *Alice* Step Two—Claim 9 Lacks an Inventive Concept Because the DSV
         Was Already Well-Known and Cannot Supply Inventiveness. ............... 12

  E.   Pre-Suit Damages Are Barred Because IV Failed to Plead Compliance with
       § 287. ..................................................................................................... 13

  F.   IV's Allegations Do Not Identify Any Specific, Unlicensed Southwest Use. ...... 14

III.  CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                 **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)....................................................................................4

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016).................................................................................3, 8

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ..................................................................................6

*Altair Logix LLC v. Netgear, Inc.*,
  2021 WL 6424910 (D. Del. Dec. 6, 2021)..................................................................3

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)..................................................................................7

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994)....................................................................................14

*Appistry, Inc. v. Amazon.com, Inc.*,
  2015 WL 4210890 (W.D. Wash. July 9, 2015) .........................................................2

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)................................................................................10

*Berkeley IEOR v. Teradata Operations, Inc.*,
  719 F. Supp. 3d 842 (N.D. Ill. 2024) .......................................................................12

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..................................................................................4

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) .............................................................................4, 9

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)..............................................................................6, 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)..................................................................................10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017)..................................................................................1

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................................6

*Contour IP Holding LLC v. GoPro, Inc.*,
   113 F.4th 1374 (Fed. Cir. 2024) ........................................................................6

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)...................................................................6, 8, 9

*e-Watch Inc. v. Avigilon Corp.*,
   2013 WL 5231521 (S.D. Tex. Sept. 13, 2013) ..................................................13

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020).........................................................................1

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..........................................................................3

*Express Mobile, Inc. v. DreamHost LLC*,
   2021 WL 3772040 (D. Del. Aug. 25, 2021) .....................................................13

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ..........................................................................5

*Intell. Ventures I LLC v. Nationwide Mutual Ins. Co.*,
   No. 3:25-CV-00632-S (N.D. Tex. Sept. 19, 2025) ...........................................12

*Intell. Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)..........................................................................8

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)..........................................................................3

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018)..........................................................................9

*JVC Kenwood Corp. v. Nero, Inc.*,
   797 F.3d 1039 (Fed. Cir. 2015)........................................................................15

*Lans v. Digital Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001)........................................................................14

*Lubby Holdings LLC v. Chung*,
   11 F.4th 1355 (Fed. Cir. 2021) ........................................................................13

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ........................................................................5

*Papasan v. Allain*,
   478 U.S. 265 (1986)...........................................................................................4

*Raytheon Co. v. Cray, Inc.*,
    2017 WL 1362700 (E.D. Tex. Mar. 13, 2017) .......................................................................14

*Recentive Analytics, Inc. v. Fox Corp.*,
    134 F.4th 1205 (Fed. Cir. 2025) .........................................................................................2

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).........................................................................................10

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)...........................................................................................3

*Swarm Tech. LLC v. Amazon.com Inc.*,
    561 F. Supp. 3d 861 (D. Ariz. 2021) ..................................................................................3

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................................5, 6, 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................................................3, 10

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ..........................................................................................8

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020).........................................................................................10

*US Pat. No. 7,679,637 LLC v. Google LLC*,
    164 F.4th 1373 (Fed. Cir. 2026) ................................................................................. *passim*

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017).........................................................................................6

*WirelessWerx IP LLC v. OnStar, LLC*,
    2024 WL 1607018 (E.D. Mich. Apr. 12, 2024)....................................................................15

*Yodlee, Inc. v. Plaid Techs., Inc.*,
    2016 WL 2982503 (D. Del. May 23, 2016)...........................................................................2

## Statutes

35 U.S.C. § 101 ....................................................................................................... *passim*

35 U.S.C. § 287 .................................................................................................1, 13, 14

# I.    INTRODUCTION

IV's patents originate from a pre-*Alice* era, when the Patent Office applied 35 U.S.C. § 101 leniently and seldom rejected computerized inventions directed to abstract concepts so long as the claims recited some hardware components. *Alice* changed that framework. Since then, the Federal Circuit has made clear that abstract ideas implemented using conventional computer and networking technology do not qualify for patent protection.

The five asserted patents challenged here claim only functional results—scheduling tasks, organizing and storing data, distributing updates, and parallel computing—implemented using ordinary computing and networking components performing their expected roles. The claims recite no specific technological improvement—no new algorithm, data structure, protocol, or architectural change—that improves how computers or networks operate. They describe the desired result, but not the concrete technological means for achieving it that § 101 requires.

IV responds by relabeling these functional results as purported "technical solutions" and asks the Court to defer ruling until claim construction and discovery. But the Court has all the information necessary to resolve eligibility now. The intrinsic record establishes that the challenged claims are directed to abstract ideas and lack any inventive concept, and IV identifies no claim construction or factual development that would alter that analysis. Counts I, II, V, VI, and VIII should therefore be dismissed under § 101. IV's remaining claims should also be dismissed for failure to plausibly identify an accused product or service and for failure to plead compliance with the marking statute, 35 U.S.C. § 287.[1]

---

[1] Although IV makes similar arguments for delaying rulings throughout its response, they all fail for the same reasons—(1) IV identifies no technical feature recited in the claim that is plausibly alleged to be non-conventional; and (2) IV does not propose any claim construction that would alter the § 101 analysis. Where, as here, the patents' own descriptions and admissions establish that the asserted claims are directed to abstract ideas and lack any inventive concept, eligibility is properly resolved as a matter of law at the pleading stage. *Cleveland Clinic Found. v. True Health*

## II.    ARGUMENTS

**A. The '582 Patent Claims a Basic Scheduling Idea, Not a Computer-Functional Improvement.**

    **1.** *Alice* **Step One—IV Cannot Manufacture a Technical Improvement the Claims Do Not Recite.**

At *Alice* step one, the question is what the claim is *directed to*, assessed by the "focus of the claimed advance over the prior art." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211–12 (Fed. Cir. 2025). IV contends claim 1 "discloses an improvement in data processing through improvements in the use of parallelization." Dkt. 112 at 4. Here, the prosecution history confirms that the asserted advance is executing subtasks by allocating unprocessed partitions on a first-come, first-served ("FCFS") basis. Dkt. 101 at Appx. 33–34.

IV attempts to recast the advance as eliminating a "special control process." But the very passage IV relies on explains that the absence of a control process follows from FCFS allocation—load sharing occurs "as a byproduct" of processors taking work on an FCFS basis. Dkt. 112 at 5. The file history thus confirms that FCFS scheduling (not any technological mechanism) is the asserted advance. FCFS is an abstract organizing principle—an age-old queueing technique. *See, e.g.*, *Yodlee, Inc. v. Plaid Techs., Inc.*, 2016 WL 2982503, at *18 (D. Del. May 23, 2016), *R. & R. adopted*, 2017 WL 385039; *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x 1007 (Fed. Cir. 2017).

The rest of claim 1 likewise does not supply any technological improvement. Partitioning a file, distributing partition descriptions, executing subtasks in parallel, and aggregating results were conventional distributed processing techniques disclosed in the art and treated as such during

---

*Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183–84 (Fed. Cir. 2020).

prosecution. *See* '582 Patent at 1:29–38; Dkt. 101 at Appx. 37–38 (rejecting original claim 1 over prior art reciting similar partitioning, distribution, parallel execution, and output generation). Merely applying an FCFS rule to these conventional techniques does not provide any computer-functional improvement—it merely implements an abstract scheduling model.

IV cites cases upholding claims directed to specific computer improvements. In *Enfish, LLC v. Microsoft Corp.*, the claims recited a new self-referential database structure that changed *how* data was stored to improve performance of the computer itself. 822 F.3d 1327, 1336–39 (Fed. Cir. 2016). In *SRI Int'l, Inc. v. Cisco Systems, Inc.*, the claims used a new distributed intrusion-detection technique to identify unauthorized or anomalous activity and improve security of the computer network itself. 930 F.3d 1295, 1303 (Fed. Cir. 2019). And in *Altair Logix LLC v. Netgear, Inc.*, the claim required a new hardware configuration that improved performance of the computer itself. 2021 WL 6424910, at *5–6 (D. Del. Dec. 6, 2021).

Claim 1 recites nothing comparable—it recites no new algorithm, data structure, protocol, or architecture that changes *how* computers operate. *See Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016). Using FCFS for subtask allocation does not make the concept concrete and patentable. *See Swarm Tech. LLC v. Amazon.com Inc.*, 561 F. Supp. 3d 861, 866 (D. Ariz. 2021) (invalidating claims directed to "a first co-processor configured to successively: retrieve a first task from the task pool; deliver the first task to the first co-processor; process the first task; generate first resulting data; and update the task pool to reflect completion of the first task" under *Alice*). Claim 1 is like *Intell. Ventures I LLC v. Capital One Bank (USA)*, where the claims were ineligible because they implemented an abstract organizational concept in a computing environment without reciting a technological improvement. 792 F.3d 1363, 1367 (Fed. Cir. 2015). Claim 1 is also like the ineligible claims in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,

which recited functional results at a high level of generality without any improvement in computer functionality. 874 F.3d 1329, 1338 (Fed. Cir. 2017).

Although IV argues that claim 1 is "novel and inventive," Dkt. 112 at 7, the Court need not credit those legal conclusions, even at the dismissal stage. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). The claim recites basic computer functions—"determining," "subdividing," "distributing," "executing," "combining"—without any concrete algorithm, data structure, protocol, or architectural constraint. Such claims "are almost always found to be ineligible" under § 101. *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). Because claim 1 is directed to the abstract idea of FCFS task scheduling, the analysis must proceed to *Alice* step two.

### 2. *Alice* Step Two—FCFS Allocation Is Not An Inventive Concept.

IV identifies no *claim-recited* mechanism that could supply something "significantly more" than the FCFS idea itself. *Alice*, 573 U.S. at 217–18. The specification and file history confirm that partitioning, distributing task information, executing in parallel, and aggregating results were all well-understood, routine, and conventional distributed processing techniques. '582 Patent at 1:29–38; Dkt. 101 at Appx. 37–38 (rejecting claim 1 over prior art reciting similar partitioning, distribution, parallel execution, and output generation). The only asserted point of novelty is FCFS load sharing—the abstract idea itself. Dkt. 101 at Appx. 33. An inventive concept must "reflect something more than the application of an abstract idea using well-understood, routine, and conventional activities previously known to the industry." *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1380 (Fed. Cir. 2026) (citation modified). Accordingly, claim 1 does not survive *Alice* step two.[2]

---

[2] IV's reliance on *Berkheimer* and *Aatrix* is misplaced. Those decisions do not preclude dismissal where, as here, the patent itself and the prosecution history establish what was conventional and identify no non-generic element or configuration beyond the abstract concept. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software,*

**B. The '844 and '282 Patents Claim Nothing More Than an Abstract Idea for Organizing and Storing Data.**

**1.  *Alice* Step One—IV Fails to Rebut the '844 and '282 Patents Are Directed to an Abstract Idea.**

Patent-eligible software claims must capture "specific … improvements in computer capabilities," not recite an abstract idea implemented on conventional computing components. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022). IV attempts to defend the '844 and '282 Patents' claims by pointing to alleged improvements in cluster computing (including caching, indexing, and merging). Dkt. 112 at 9–11. But those are merely conventional data storage operations recited at a high level of generality. *See* Dkt. 100 at 11. IV also points to features described in the specification, but it cannot "import eligibility" by invoking Figure 3A or "indexing" where these additional steps are not *recited in the claims*. Unclaimed features cannot confer eligibility. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024).

The concept of root/leaf storage also cannot establish eligibility. Once you strip away excess verbiage, the claims focus on a familiar information organization idea of storing a shared "root image" in one place, storing per-node "leaf images" (changes) in another, and then merging or caching data. Those are routine data storage and data processing functions performed using conventional computer components—not the kind of specific, transformative improvement to computer technology that *Alice* requires. The patents concede these are standard techniques and components, including specifically acknowledging that root/leaf images were known, caching mechanisms were conventional, and the union block device is just a coined name for a low-level driver operating below the file system. Dkt. 97-1 at 2:13–21, 6:38–49; Dkt. 97-17 at 1:62–2:3, 4:41–

---

*Inc.*, 882 F.3d 1121, 1125–27 (Fed. Cir. 2018). The '582 Patent admits that the claimed distributed processing components and operations were known in the art, and the prosecution history likewise treats everything apart from FCFS allocation as conventional. '582 Patent at 1:11–38; Dkt. 101 at Appx. 37–38. On this record, eligibility is properly resolved as a matter of law.

50. Reciting that kind of "environment" or "conduit" for an abstract idea does not confer eligibility. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611–12 (Fed. Cir. 2016).

IV accuses Southwest of "oversimplification," but it never identifies any *claim language* that supplies a specific technological mechanism improving computer functioning. The operative verbs remain high-level and results-oriented—storing, caching, interfacing, merging—without any improved algorithm, protocol, or architecture claimed for accomplishing those results. When claimed at this high level, such data storage and manipulation concepts are abstract. *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *TLI*, 823 F.3d at 613; *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

IV argues that the invention "allows for updating a boot image 'on the fly.'" Dkt. 112 at 10. *But boot image creation and updating mechanisms are not claimed*; the claims recite only root/leaf storage, merging, and caching at a high level. The claims recite no specific technical details on how to update or create a boot image "on the fly." And the specifications acknowledge that root/leaf approaches to creating boot images "on the fly" and the predictable performance effects of caching were already known in the art. Dkt. 97-1 at 2:13–25, 6:38–7:16; Dkt. 97-17 at 1:62–2:7. Thus, any purported improvements that arise from applying those known techniques in their expected manner do not transform the abstract idea for organizing and storing data into a patentable technological invention. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

IV's reliance on *Visual Memory* is misplaced. The claims there were directed to a programmable computer memory system configurable based on the processor type, which eliminated separate memory designs and improved system performance. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1256–57, 1259 (Fed. Cir. 2017). The '844 and '282 Patents' claims recite no comparable

improvement to computer functionality, architecture, or operation. They instead are directed to organizing and storing data using a root/leaf structure with routine functions performed by conventional computer components.

### 2. *Alice* Step Two—The Asserted Patent Claims Add Nothing Inventive.

IV does not dispute that the asserted claims are implemented using conventional components. *See* Dkt. 112 at 12. Instead, it asserts in conclusory fashion that the '844 and '282 Patents "capture inventive concepts" without identifying any *claim-recited* element—or any nonconventional ordered combination—that transforms the abstract root/leaf data-organization concept into a patent-eligible application. *Id.* at 11–12.[3] The specifications confirm that the claims employ a conventional sequence of operations—storing data, then caching or merging it—implemented using conventional technologies such as root/leaf storage structures, cache memory, and low-level drivers. *See* Dkt. 97-1 at 2:13–21, 6:38–49, 11:29–40; Dkt. 97-17 at 1:62–2:3, 4:41–50, 7:14–31. Using conventional components performing their ordinary functions is not an inventive concept. *See Two-Way Media*, 874 F.3d at 1339. And attorney argument cannot override what the patents themselves admit about conventionality. *See Google*, 164 F.4th at 1380; *TLI*, 823 F.3d at 614–15. IV identifies no genuine factual dispute regarding whether the claimed elements—or their combination—were well-understood, routine, and conventional. Because the '844 and '282 Patents' claims apply an abstract idea using only conventional components performing conventional functions, they lack an inventive concept and are ineligible under § 101.

---

[3] *Amdocs* is inapposite because the challenged claim recited a "*specific enhancing limitation*" that "necessarily require[d] . . . generic components operate in an *unconventional* manner to achieve *an improvement in computer functionality*"—i.e., "enhancing data in a distributed fashion." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299–1301 (Fed. Cir. 2016) (emphasis added). The asserted claims here contain no comparable limitation. And although IV invokes indexing-related benefits, it concedes indexing itself is abstract, and neither indexing nor any indexing-based mechanism appears in the claims. *See* Dkt. 112 at 11 n.3.

C. **The '722 Patent Claims an Abstract Subscription-Update Workflow, Not a Technological Improvement.**

As the Opening Brief explains, Claim 14 concerns information distribution over digital networks—not any improvement to how computers or networks operate. Dkt. 100 at 13–16. The claim implements a familiar subscription delivery concept—sending updates to registered subscribers—using conventional networking components performing their ordinary functions. *Id.* Like the mail-sorting patents in *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314, 1317–18 (Fed. Cir. 2016), long-prevalent practices remain abstract when applied in the Internet environment; routing updated information to subscribers is no different.

IV attempts to cast Claim 14 as a "technical solution" to polling inefficiency, but that does not change the inquiry at *Alice* step one. The Federal Circuit distinguishes between improving an abstract information delivery process and improving computer or network technology itself. A claim remains abstract where, like here, it merely improves information distribution using a computer as a tool. *Customedia*, 951 F.3d at 1363; *Two-Way Media*, 874 F.3d at 1337–38 (abstract claims directed to sending, routing, monitoring, and recording information over a network).

1. *Alice* **Step One—Claim 14 Claims the Abstract Idea of Subscription-Based Content Distribution to Registered Recipients Without Any Technical Innovation.**

Claim 14 recites a publish/subscribe concept at a high level of generality, assigning routine networking functions to generic components: an input source issues an update identifying a "live object," the routing network categorizes the update, determines which devices are registered for that object, and routes the update to those recipients. Dkt. 100 at 15–16. IV makes "no claim that it invented any of those components or their basic functions." *Affinity*, 838 F.3d at 1270. The claims "simply recite conventional actions in a generic way." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1349 (Fed. Cir. 2021).

The result-focused functional claim language states what the system must do (identify, determine, route, register, update), but does not recite an improved technical means for doing so. Claims framed in such results-oriented language "are almost always found to be ineligible." *Beteiro*, 104 F.4th at 1356; *Google*, 164 F.4th at 1377–78. Claim 14 recites no improved routing protocol, no new data structure, no registration mechanism, no message format change, and no algorithm governing distribution. It does not alter how the network operates—only when to send updates and to whom. That is an abstract information distribution rule, not a technological improvement.

Contrary to IV's argument, a "live object" is not a technical improvement. Dkt. 112 at 14–16. It merely identifies the *subject* of the subscription—not a mechanism for making content "live," generating or extracting identifiers, or storing and matching registrations in a technologically improved way. The specification confirms the breadth of the concept, defining an "object" as any individually identifiable data at any level of granularity. '722 Patent at 12:55–13:6.

Nor does IV's push-versus-poll efficiency narrative establish a technological improvement. Dkt. 112 at 13–14. Any efficiency from sending updates only upon change flows from the abstract publish/subscribe rule itself, not from an improvement in network technology; and the purported benefit is illusory because the claims recite no mechanism to avoid normal polling from the client. Even if the invention improves the user experience—by eliminating the need to refresh a webpage— that is not an improvement to computer functionality. *See Customedia*, 951 F.3d at 1365.

The specification confirms the conventional nature of the implementation, describing the use of standard hardware, protocols, and routing techniques "known in the art," including JAVA-based push updates. Dkt. 100 at 14–16 (citing '722 Patent 2:63–67, 6:13–15, 11:58–61, 16:28–46). Where a patent admits multiple conventional ways to achieve the claimed outcome, claiming the result is not a technical solution. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018).

9

Unclaimed implementation examples—such as code recited in the specification—cannot change that. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769–70 (Fed. Cir. 2019).

Finally, the cases IV cites underscore why Claim 14 is abstract. In *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, for example, the claims recited a concrete change to message structure that reduced latency and altered system operation. 957 F.3d 1303, 1307–08 (Fed. Cir. 2020). Claim 14 makes no comparable technological modification. It applies a publish/subscribe rule using conventional networking operations and is therefore directed to an abstract idea at step one.

### 2. *Alice* Step Two—Claim 14 Lacks an Inventive Concept and Only Claims Delivering Updated Content to Registered Clients Using Generic Hardware.

Claim 14 also fails step two for the reasons set out in the Opening Brief. Dkt. 100 at 13–14, 16–17. Once the abstract idea is identified (publish/subscribe routing of updates to registrants), the remaining limitations recite only conventional components performing routine functions in a conventional arrangement. Subscribing to receive updates through generic network nodes is not an inventive concept. *See Two-Way Media*, 874 F.3d at 1339–40; *BSG Tech.*, 899 F.3d at 1290–91 (the abstract idea cannot supply the inventive concept).

IV's reliance on *BASCOM* is misplaced. There, the claim was directed to an abstract idea but survived at step two because it recited an unconventional technological arrangement—filtering at the ISP server level. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016); Dkt. 100 at 16–17. Claim 14 recites no comparable unconventional arrangement and instead distributes the abstract workflow across generic components performing standard functions.

Where, as here, the patent admits conventionality and no claim construction issue affects eligibility, § 101 is properly resolved on the pleadings. *Simio, LLC v. FlexSim Software Prods., Inc.*,

983 F.3d 1353, 1359 (Fed. Cir. 2020). Claim 14 is directed to the abstract idea of distributing updates to registered recipients and lacks any inventive concept. Count II should be dismissed.

**D. The '080 Patent is Directed to Abstract Parallel Task Distribution, Not Improved Computing Technology.**

**1. *Alice* Step One—IV Identifies No Specific Improvement, Only Functional Results.**

Southwest's Opening Brief explained that the '080 Patent is directed to distributed parallel computing—dividing and conquering computing tasks. Dkt. 100 at 17. IV does not dispute that characterization, acknowledging the patent "generally relates to parallel distributed programs." Dkt. 112 at 19. Although IV argues the "distributed shared variable" ("DSV") offers a technical improvement, claim 9 does not describe how the DSV—or any other element—operates to solve a technological problem in parallel computing.

Claim 9 recites a "distributed shared variable" that "includes several variables … physically loaded into the at least one memory area" and a program "configured to transform into … a distributed parallel computing program by spawning … child distributed sequential computing system program[s] when at least one intermediate condition occurs." These limitations describe only a *potential* improved technique as abstract functional results—loading shared variables, spawning child programs upon an intermediate condition, and executing in parallel—without any technical mechanism for defining the condition, generating and coordinating child processes, or enabling concurrent access across distributed memory. *See Google*, 164 F.4th at 1378 (claims using "arranged to allow" and "able to" language were results-oriented and did not explain how the system worked).

The authorities IV cites do not alter the step one analysis. For example, the claim in *Contour IP Holding LLC v. GoPro, Inc.* required a POV camera processor to generate two video streams from the same image data—one lower-quality stream for wireless transmission to a phone and a second higher-quality stream for storage. 113 F.4th 1374, 1376 (Fed. Cir. 2024). This was a patentable

improvement over the prior art because it enabled streaming real-time images to a phone while storing high-quality video for later use. *Id.* at 1379. Claim 9 identifies no similar technological mechanism for enabling distributed parallel computing—no technique for coordinating parallel execution, no architecture for shared-variable access, and no algorithm for spawning or synchronizing processes. Instead, the patent acknowledges that parallel distributed programs using multiple processors and memory areas were already known in the art. '080 Patent at 1:25–28, 2:42–45. Claim 9 coins a new term that describes conventional parallel-processing concepts, but it does not claim a specific new technological improvement. The claim is directed to the abstract idea of dividing computing tasks across distributed programs.

### 2. *Alice* Step Two—Claim 9 Lacks an Inventive Concept Because the DSV Was Already Well-Known and Cannot Supply Inventiveness.

IV relies on the presence of the DSV in claim 9 as the inventive concept. *See* Dkt. 112 at 23. But the record demonstrates that a DSV was not only well-known, it was also recognized in prior art both by the inventors themselves and the Examiner during prosecution. Dkt. 100 at 17 (citing '080 Patent 1:25–28, 2:42–45); *see Intell. Ventures I LLC v. Nationwide Mutual Ins. Co.*, No. 3:25-CV-00632-S (N.D. Tex. Sept. 19, 2025), Dkt. 35 at App. 11. The lead inventor, Mr. Lei Pan, authored a prior art paper cited by the Examiner during prosecution that already described a "distributed shared variable"—the feature that IV now relies on to inject an inventive concept into claim 9. *Id.* The Examiner also cited at least one other prior art reference, Chrobot, showing that a DSV was known in the art. *Id.* at App. 30.

The known DSV elements of claim 9 are not like the novel step that saved the claims in *Berkeley*, which IV relies upon. *See* Dkt. 112 at 24–25 (citing *Berkeley IEOR v. Teradata Operations, Inc.*, 719 F. Supp. 3d 842, 858 (N.D. Ill. 2024)). Here, the DSV was not new; it was taught in prior art. And contrary to IV's prosecution argument, Dkt. 112 at 23–24, the "distributed shared variable" element

was already recited in the claim before the amendment and was not the basis for allowance. *See* Dkt. 112 at 24 (only the underlined words above were added by the amendment; the claim already recited "at least one distributed shared variable").

Because claim 9 offers nothing beyond an abstract, well-known divide-and-conquer strategy implemented using conventional components, it is patent-ineligible under § 101.

### E. Pre-Suit Damages Are Barred Because IV Failed to Plead Compliance with § 287.

IV does not dispute that the Complaint fails to allege compliance with the patent marking statute. That omission should end the analysis. A patentee seeking pre-suit damages must affirmatively plead either that patented articles were properly marked or that the accused infringer had actual notice of the asserted patents. Silence on both fronts precludes recovery. *See e-Watch Inc. v. Avigilon Corp.*, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 13, 2013) (dismissing pre-suit damages claim where the complaint failed to allege compliance with § 287: "The Federal Circuit specifically allows addressing the § 287(a) issue through a motion to dismiss.").

IV argues it need not plead marking until Southwest identifies a specific unmarked product. That is incorrect. While an alleged infringer who challenges marking must satisfy a low burden of production under *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021), that framework presumes the plaintiff has first alleged compliance. *Lubby* does not excuse a patentee's failure to plead a basic element of its claim. *See also Express Mobile, Inc. v. DreamHost LLC*, 2021 WL 3772040, at *3 (D. Del. Aug. 25, 2021) ("If a patentee seeks pre-suit damages, it must plead compliance with the marking statute.").

In any event, Southwest has identified Docker, Spark, Kafka, Hadoop, and networking components from Extreme Networks and Aruba/HPE as unmarked products IV accuses of practicing the asserted patents and noted that these technologies are provided by licensed third-party suppliers who do not mark patented articles. *See* Dkt. 100 at 22–23. IV concedes this point, yet

13

argues that because it is only accusing unlicensed *versions* of those products, it is relieved of its marking obligations. Dkt. 112 at 26. That is not the law; and it misses the point that IV's licensees are suppliers of systems IV asserts practice its patents. Because IV has not pleaded compliance with § 287, it should be precluded from seeking pre-suit damages and its claims for pre-suit damages should be dismissed. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328–29 (Fed. Cir. 2001).

Nor does the presence of method claims excuse IV's pleading failure. The marking statute does not apply where a patent claims only a method and no patented article exists, but where the asserted patents include system or apparatus claims tied to products supplied by IV's licensees, compliance with § 287 remains a prerequisite to pre-suit damages. *See, e.g.*, *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994). IV has not alleged marking, has not alleged actual notice, and cannot avoid § 287 by selectively characterizing its claims. Its request for pre-suit damages should therefore be dismissed.

**F. IV's Allegations Do Not Identify Any Specific, Unlicensed Southwest Use.**

IV acknowledges that it bears the burden to plead facts showing unlicensed use, yet contends it has provided adequate notice by identifying Southwest products and services that allegedly rely on accused third-party technologies.[4] Dkt. 112 at 26–29. That position is circular. IV broadly labels unspecified Southwest offerings across its business as "Accused Products and Services" while supplying claim charts directed primarily to third-party technologies. This does not plausibly identify which specific Southwest product or service practices each asserted claim, nor does it allege

---

[4] IV cites *Raytheon* to deflect its burden. But the plaintiff in *Raytheon Co. v. Cray, Inc.*, actually alleged that the defendant "sold an infringing *XC40 supercomputer*." 2017 WL 1362700, at *1 (E.D. Tex. Mar. 13, 2017) (emphasis added). Nothing comes close to that here. IV also relies on Judge Mazzant's ruling in the *American Airlines* case, but that decision provides no analysis supporting the court's conclusion and IV's *third* amended complaint here includes additional patents not addressed in that opinion. *See* Dkt. 113 (Appx. 49, 52), Dkt. 97 at 1.

14

unlicensed use of the accused third-party programs.[5] *See WirelessWerx IP LLC v. OnStar, LLC*, 2024 WL 1607018, at *6–7, 9–10 (E.D. Mich. Apr. 12, 2024) (complaint insufficient where it failed to identify the particular accused product despite claim charts directed to a non-party application).

IV's own allegations further undermine any inference of unlicensed use. IV admits it has licensed the asserted patents to multiple upstream cloud service providers, though it has not identified all such licensees. *See, e.g.*, Dkt. 77 at 17; Dkt. 64-20 at 2 n.1. IV states it does not accuse Southwest's public-cloud activities where those services are provided by a licensed cloud provider, conceding that at least some of Southwest's cloud usage may be authorized. *See* Dkt. 97-7 at 2 n.1.

IV's allegations concerning private cloud use fare no better. IV points to "Southwest engineers who worked with each technology." Dkt. 112 at 26. But employee familiarity with open-source software does not plausibly allege that Southwest used the accused technology, much less that any such use was unlicensed or occurred in a non-licensed environment. IV's reliance on a generalized statement regarding Southwest's cloud technology migration, *id.* at 27, is likewise speculative and fails to tie any accused technology to any identified Southwest product or service or to any unlicensed deployment. To the contrary, the very source IV cites confirms that Southwest partners with Amazon Web Services, consistent with licensed use. *Compare* Dkt. 97-7 at 2 (PhocusWire, "*Southwest has a partnership with Amazon Web Services*"), *with* Dkt. 77 at 17 (IV identifying AWS and IBM/OpenShift as products it does not accuse). IV's own concessions thus negate any plausible inference that Southwest's cloud usage is unlicensed.

### III.     CONCLUSION

For the foregoing reasons, Southwest respectfully requests the Court grant its Motion to Dismiss.

---

[5] IV's attempt to distinguish *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1045 (Fed. Cir. 2015) on the ground that it does not license patents through a pool misses the point. The relevant issue is whether—not how—the accused use is licensed.

Dated: February 19, 2026

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
Texas Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24040838
wdunwoody@munckwilson.com
Lucas R. Dombroski
Texas Bar No. 24142846
ldombroski@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar No. 09479355
dhenry@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas Bar No. 24102969
ttruong@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 19, 2026, the foregoing document has been

served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

7851810