# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | | **Civil Action No. 3:25-cv-02885-L-BN** |
| *Plaintiffs,* | | |
| v. | | **JURY TRIAL DEMANDED** |
| SOUTHWEST AIRLINES CO., | | |
| *Defendant.* | | |

## PLAINTIFFS' OPPOSITION TO SOUTHWEST AIRLINES CO.'S MOTION TO SEVER AND STAY INTELLECTUAL VENTURES' CLAIMS REGARDING THE '000 PATENT SYSTEMS BASED ON THE CUSTOMER-SUIT EXCEPTION

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. LEGAL STANDARD......................................................................................... 3

IV. ARGUMENT...................................................................................................... 4

    A. The Customer-Suit Exception Does Not Apply Because AvioVision is Not the Only Source of the Infringing Product................................................. 4

        1. AvioVision is Not the Sole Supplier of the Accused SRS Functionality ...................................................................................... 4

        2. Defendants' Agreement to be Bound is Not Dispositive of All Issues........................................................................................................ 6

    B. The Traditional Stay Factors Do Not Warrant A Stay........................................... 6

    C. The Court Should Order Limited Discovery ........................................................ 9

V. CONCLUSION.................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clinton v. Jones*,
   520 U.S. 681 (1997)..............................................................................................................4

*Corydoras Techs., LLC v. Best Buy Co.*,
   No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782 (E.D. Tex. Mar. 17, 2020) ........................8

*CyWee Grp. Ltd. v. Huawei Device Co., No. 2:17-CV-495-WCB,*
   *2018 WL 4002776 (E.D. Tex. Aug. 22, 2018)*..............................................................................3

*Delta Elecs., Inc. v. Vicor Corp.*,
   724 F. Supp. 3d 645 (W.D. Tex. 2024)......................................................................................9

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
   No. 6:21-CV-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30, 2022) ........................4, 7

*Intell. Ventures I LLC v. Am. Airlines, Inc.*,
   No. 4:24-CV-980, 2025 WL 2161425 (E.D. Tex. July 30, 2025) ............................................4

*Kahn v. General Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989)...............................................................................................3

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990)...............................................................................................3

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)................................................................................................................4

*Liberty Access Technologies Licensing LLC, v. Marriott International, Inc.*,
   No. 2:22-cv-00318-JRG (E.D. Tex. May 22, 2023) ..................................................................9

*Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.*,
   No. 2:24-CV-00125-JRG, 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024)................................8

*Luv N' Care, Ltd. v. Jackel Int'l Ltd.*,
   No. 2:14-cv-00855-JRG, 2014 U.S. Dist. LEXIS 158293 (E.D. Tex Nov. 10,
   2014) .......................................................................................................................................9

*New Berry Inc. v. Smith*,
   No. 2:19-CV-159 JD, 2021 WL 411154 (N.D. Ind. Feb. 5, 2021).........................................9

*STC.UNM v. TP-Link Techs. Co.*,
   No. W-19-CV-00262-ADA, 2020 WL 10758856 (W.D. Tex. Jan. 2, 2020) ...........................9

*Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006)......................................................................................3

*Wapp Tech. Ltd. Partnership v. Bank of America Corp.*,
   No. 4:18-CV-00519, 2019 WL 3890171 (E.D. Tex. Aug. 19, 2019)........................................6

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV" or "Plaintiffs") respectfully file this opposition to Defendant Southwest Airlines Co.'s ("Southwest" or "Defendant") Motion to Sever and Stay Intellectual Ventures' Claims Regarding U.S. Patent No. 11,032,000 ("the '000 Patent") Patent Systems Based on the Customer-Suit Exception. (Dkt. 122; the "Motion.")

## I.      INTRODUCTION[1]

Southwest seeks to sever and stay IV's claims for the '000 Patent relating to Southwest's use of a standard based LTE SRS functionality identified in IV's infringement contentions, in deference to AvioVision's recently filed declaratory judgment action ("Delaware Action"). *See* Dkt.122.

Southwest's motion should be denied, or alternatively, the Court should allow limited discovery into the identification of suppliers that provide the accused SRS functionality. Southwest's motion is based on the false premise that AvioVision's AvioCast device is the only asserted/accused source of the accused functionality ("Intellectual Ventures' claim chart for the '000 patent only accuses AvioVision's AvioCast and no other product") and that a declaratory judgment action concerning that device will resolve the case issues. *Id.* at 5. In reaching this conclusion, Southwest blatantly ignores IV's infringement contentions, which specifically state that discovery is needed to identify additional components that provide the SRS functionality because "information regarding how specifically Southwest implements LTE, including for which products and offerings, is generally not public." Tellingly, when IV asked Southwest to confirm

---

[1] Submitted herewith is the April 3, 2026 declaration of Jonathan K. Waldrop, with exhibits ("Ex. __").

prior to filing this motion, that AvioVision is the sole supplier of the accused SRS functionality so that IV could assess the customer-suit factors, Southwest refused.

At the very least, this Motion is premature because no discovery on the identification of components that utilize the accused SRS standard technology is public and there is no factual evidence provided by Southwest that provides an inference that Southwest is the only supplier or that the case would be more efficient and less costly in the DJ case.

## II.     FACTUAL BACKGROUND

On November 11, 2024, IV filed this action, alleging that Southwest infringes six patents. On December 22, 2025, IV filed its amended complaint, alleging that Southwest infringes eight patents for which IV owns all rights, title and interest, including U.S. Patent No. 11,032,000 ("the '000 Patent") entitled "Communications in a Wireless Network."[2] On February 5, 2026, AvioVision N.V. filed a declaratory judgment action in the District of Delaware ("Delaware Action") stating that "AvioVision requests this relief because defendant Intellectual Ventures II LLC ("IV") has filed a lawsuit against AvioVision's customer, Southwest Airlines Co. ("Southwest"), claiming that AvioVision's aircraft interface device ("AID") called AvioCast infringes the '000 patent…" Ex. 1 at ¶ 1.

On February 13, 2026, counsel for Southwest made IV aware of an incoming motion to sever and stay based on the AvioVision complaint, by emailing IV's counsel and stating that "Southwest Airlines will be moving to sever and stay claims based on the '000 Patent." Ex. 2. After a few emails coordinating a meet and confer, the parties met and conferred regarding the

---

[2] The other patents involved in this action are United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 7,949,785 (the "'785 Patent"); and 7,257,582 (the "'582 Patent") 7,712,080 ("the '080 Patent"); 7,721,282 ("the '282 Patent"); 8,027,326 ("the '326 Patent); 7,324,469 ("the '469 Patent"). Southwest sought to sever and stay the '326 Patent and '469 Patent which the Court granted on March 10, 2026.

merits of Southwest's motion. At that time, IV asked Southwest to confirm that "AvioVision is the sole system used during the entire relevant damages period that is responsive to Plaintiff's infringement contentions" and "[n]o other systems (including predecessor, parallel, integrated, or third-party systems) were used to perform the accused functionality, including the accused SRS optional standard functionality." Ex. 2. Instead of confirming that AvioVision was the sole supplier of the accused functionality, counsel for Southwest refused to take a position on the issue. Instead, Southwest claimed that IV was conducting a "fishing expedition." Ex. 2. IV responded stating that "[d]uring our meet and confer, counsel for Southwest indicated that they would check on the single-supplier issue. We are therefore somewhat surprised that Southwest is unwilling to confirm whether AvioVision is, or is not, the sole supplier of the accused functionality." Ex. 2.

## III.    LEGAL STANDARD

"The customer suit exception is an exception to the general rule that favors the forum of the first-filed action. . . ." *CyWee Grp. Ltd. v. Huawei Device Co., No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018).* "Efficiency and judicial economy are guiding principles underlying the doctrine" of the customer-suit exception. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "[A] critical question under the customer suit exception 'is whether the issues and parties are such that the disposition of one case would be dispositive of the other.'" *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463 (Fed. Cir. 1990).

Application of the customer-suit exception is neither absolute nor automatic. The customer-suit exception is subject to a three-factor test: (1) Whether the customer-defendant in the earlier filed case is merely a reseller; (2) whether the customer defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product. *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.,* 458 F.3d 1335, 1343 (Fed. Cir. 2006). Additionally, this Court has the

3

inherent power to control its own docket, including the power to determine if a stay of proceedings is appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

## IV.    ARGUMENT

### A.    The Customer-Suit Exception Does Not Apply Because AvioVision is Not the Only Source of the Infringing Product

The customer-suit exception to the first to file does not apply. The customer-suit exception is "narrow" and applied to "avoid wasteful expenditure of resources" and in a manner that "substantial savings of litigation resources can be expected." *Fleet Connect Sols., LLC v. Precision Drilling Corp.*, No. 6:21-CV-00987-ADA, 2022 WL 2373711, at *2 (W.D. Tex. June 30, 2022) ("*Fleet*"); *Intell. Ventures I LLC v. Am. Airlines, Inc.,* No. 4:24-CV-980, 2025 WL 2161425, at *2 (E.D. Tex. July 30, 2025) ("The customer-suit exception is a narrow doctrine that allows a court to stay an action against a customer in favor of a manufacturer's parallel declaratory judgment suit, where doing so would promote judicial economy and efficiency.")

#### 1.    AvioVision is Not the Sole Supplier of the Accused SRS Functionality

Southwest cannot meet the relevant factors, including whether AvioVision is the sole supplier because Southwest has not provided evidence to support that it is the sole supplier of the accused product. With regards to the technology at issue, IV's infringement contentions allege infringement related to Sounding Reference Signals ("SRS"). '000 Chart at 4. This functionality does not originate from AvioVision. It is part of a 3GPP standard that is analyzed in IV's infringement contentions. IV's infringement contentions identify AvioVision Aviocast and an "Aircraft Interface Device (AID")" that provides LTE ground connectivity and acts as a UE in an LTE Network." '000 Chart at 4. While AvioVision Aviocast is certainly one AID product that IV

was able to identify through public information, IV's contention makes it clear that "[i]nformation regarding how specifically Southwest implements LTE, ***including for which products and offerings, is generally not public***. IV intends to obtain discovery regarding how LTE is used and implemented in Southwest products and services and will update it's infringement positions once this discovery is completed."). '000 Chart at 2 (emphasis added). Southwest's Motion incorrectly asserts that AvioVision AID is the only asserted product in the case, even though the contentions identify the lack of public information that is available to identify all such implementations.

Not only does IV's infringement contentions explain that it will identify other products through discovery because they are not publicly available, but IV specifically asked Southwest to confirm that it was the only supplier of the SRS functionality at issue as part of the meet and confer process, before the Motion was filed and Southwest refused. Ex. 2. Southwest's declaration in support of its Motion is silent with regards to any exclusive partnership, sales numbers, or other information that would provide a reasonable inference that AvioVision is the only AID or LTE SRS functionality on Southwest aircraft such that the Court could infer that staying the case would create the efficiencies that the customer-suit exception is intended to confront. Dkt. 123-33.

Southwest's declaration and Motion does not even confirm that AvioVision has possession, custody, and control of relevant documents, source code, and/or witnesses with regards 3GPP certification or testing that would allow IV to obtain the necessary technical information from AvioVision as opposed to the LTE chipmaker used in the AvioVision product. While Southwest claims that it is a "mere user" of AvioVision's AvioCast product, this assertion addresses only design control and does not establish that Southwest is a mere user for purposes of the customer-suit exception. Dkt. 123-33.

5

At a minimum, IV should be allowed to investigate Southwest's contentions before the Court rules on Southwest's motion. *See, e.g.*, *Wapp Tech. Ltd. Partnership v. Bank of America Corp.*, No. 4:18-CV-00519, 2019 WL 3890171, at *3 (E.D. Tex. Aug. 19, 2019) (denying as premature motion to stay to allow discovery on applicability of customer use exception). Discovery is necessary because neither Southwest nor AvioVision has provided no evidence that it is the "only source of the infringing product" and that AvioVision, as opposed to a third party has possession of discovery needed to assess the implementation of SRS functionality.

### 2.    Defendants' Agreement to be Bound is Not Dispositive of All Issues.

Southwest's agreement to be bound is limited to the Delaware court's determination regarding AvioVision's product. Dkt 122 at 6 ("Because Southwest agrees to be bound by the Delaware court's determination of infringement by any AvioVision products and whether the '000 patent is valid, there is nothing further for this Court to adjudicate.") It does not extend, for example, to other AID products or other products in Southwest aircraft that implement the SRS functionality. This means that, here where no discovery has taken place, IV is placed in the situation where, it cannot assess the relevant stay factors because of the lack of public information or evidence from Southwest, and it must litigate the issue related to a single product in another jurisdiction where the agreement to be bound covers only the AvioVision product. Southwest's stipulation, at most, binds it to the outcome of AvioVision's specific implementation, not to whether the accused functionality is implemented across Southwest's systems as a whole.

### B.    The Traditional Stay Factors Do Not Warrant A Stay

A stay is also not warranted under the traditional stay factors. In assessing the traditional stay factors the Court looks to: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial

of the case; (3) whether discovery is completed; and(4) whether a trial date has been set." *Fleet, supra,* at \*2.

First, staying this action would unduly prejudice IV by delaying enforcement of its patent rights and increasing the risk of evidence degradation over time. As explained above, Southwest is carving the case into multiple declaratory judgment actions, forcing IV to litigate in multiple courts, a clear tactical disadvantage for IV. Further, a stay would present a clear tactical disadvantage to IV because it would prevent IV from obtaining information relevant to assess the stay factors and obtaining discovery needed to assess whether AvioVision is the sole provider of the accused functionality. Based on the fact that the technology did not originate from AvioVision, Southwest's declaration does not assert that AvioVision is the sole provider, and Southwest's refusal to provide evidence prior to the Motion, AvioVision being the sole provider is unlikely. Prejudice is compounded here because Southwest has not established that the Delaware Action will resolve the issues in this case, meaning any delay would not yield corresponding efficiencies. There is no evidence provided that AvioVision, rather than an LTE chipmaker, has the necessary evidence to show infringement.

Second, Southwest's Motion fails because it does not promote efficiency or simplicity. As stated above, this is not the first time Southwest has sought to sever and stay claims based on supplier declaratory judgment actions, resulting in multiple parallel proceedings across different forums. This Motion represents yet another attempt to fragment this case into separate actions. Permitting successive stays based on separate supplier actions, when those supplier actions will not resolve relevant issues, undermines judicial efficiency rather than promoting it.

Courts have repeatedly recognized that the customer-suit exception is intended to promote efficiency—not to multiply proceedings across jurisdictions. *See Fleet, supra,* at \*4 ("in failing to

show that it is a mere reseller, [defendant] has not shown that the issues of direct infringement are clearly common between these cases or that [Southwest] has possession, custody, and control of the discovery and witnesses needed to address the issues of infringement. [I]t is unlikely that a stay will simplify the issues in this Action. This is typically the most important factor in the stay analysis … All a stay would accomplish is delay [plaintiff] from seeking vindication of its hard-won patent rights …."); *see also Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.,* No. 2:24-CV-00125-JRG, 2024 WL 4729750, at 3 (E.D. Tex. Nov. 8, 2024) (where customer-suit exception did not apply, "a stay would unduly delay Plaintiff's right to seek timely enforcement of its intellectual property rights before a court of law [and] would not mitigate Plaintiff's concerns about spoliation of evidence, which is a reasonable risk with any delay.") Because Southwest has not established that AvioVision is the sole source of the accused functionality, there is no basis to conclude that the Delaware Action will eliminate the need to adjudicate infringement as to Southwest, and thus no significant simplification will result.

Litigating these issues in Delaware would also prejudice IV because "(1) [IV] would not be able to address issues related to [Southwest] along with all of the related issues and (2) any favorable relief for [IV] could be substantially delayed if this case were stayed." *See Corydoras Techs., LLC v. Best Buy Co.,* No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782, at *5 (E.D. Tex. Mar. 17, 2020) (concluding that the prejudice factor "weighed against a stay because of the increased expense and delay.") Additionally, because these actions involve the same technology, IV would have to transport documentary evidence of Southwest's use of the infringing technology, which Southwest has represented to be in Texas, not Delaware. Thus, a stay is not warranted under the second traditional factor. *See Liberty Access,* 2024 WL 4729750, at *3 (stay unwarranted where declaratory judgment action would leave certain major issues unresolved).

Finally, and because the first two important factors cannot be satisfied, the fact that discovery is not complete is not dispositive and cannot outweigh the first two factors. *See Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, No. 2:14-cv-00855-JRG, 2014 U.S. Dist. LEXIS 158293 at *14-15 (E.D. Tex Nov. 10, 2014) (denying motion to stay where, even though the parties have yet to file a proposed Docket Control Order, the Court found on balance that the other two factors outweighed the third factor); *see also Liberty Access Technologies Licensing LLC, v. Marriott International, Inc.*, No. 2:22-cv-00318-JRG (E.D. Tex. May 22, 2023) ("The first factor outweighs the last. Staying this action would materially disadvantage [IV], who is entitled to seek timely enforcement of its intellectual property rights. Any delay at this point, before discovery has concluded, would heighten the risk of evidence spoliation/deterioration."). Staying this case and awaiting an outcome of the Delaware Action could cause further delays and/or result in inconsistent decisions.

### C.    The Court Should Order Limited Discovery

If the Court is not inclined to deny Southwest's Motion, IV respectfully requests that this Court grant IV leave to conduct limited discovery to supplement the record. IV requires further information from Southwest regarding its Motion and statements made by Southwest's declarant. Discovery has been granted in similar situations, including testing the veracity of declarations submitted with motions. *See, e.g., Delta Elecs., Inc. v. Vicor Corp.,* 724 F. Supp. 3d 645, 658 (W.D. Tex. 2024) (allowing limited venue discovery to help "the Court to rule on [defendant's motion to dismiss]"); *STC.UNM v. TP-Link Techs. Co.,* No. W-19-CV-00262-ADA, 2020 WL 10758856, at *1 (W.D. Tex. Jan. 2, 2020) (granting leave for "limited discovery in order to determine the relationship between [defendant] and its domestic subsidiary"); *New Berry Inc. v. Smith,* No. 2:19-CV-159 JD, 2021 WL 411154, at *4 (N.D. Ind. Feb. 5, 2021) (granting leave to conduct limited discovery to assess personal jurisdiction and venue and noting that a court "risks abusing its discretion if it does not allow at least some limited discovery"). Discovery is paramount

9

so that IV may confirm that Southwest is a "mere reseller" and AvioVision is the sole provider of the accused functionality.

## V.     CONCLUSION

For the foregoing reasons, Southwest's Motion should be denied in its entirety or alternatively, the Court should order limited discovery related to the customer-suit factors.

Dated: April 3, 2026                                  RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted *pro hac vice*)
jwaldrop@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted *pro hac vice*)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(*Pro hac vice* forthcoming)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted *pro hac vice*)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(*Pro hac vice* forthcoming)
tnguyen@kasowitz.com
Jonathan H. Hicks (CA Bar No. 274634)
(Admitted *pro hac vice*)
jhicks@kasowitz.com
**KASOWITZ LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 358-4408

Jeceaca An (NY Bar No. 5849898)
(*Pro hac vice* forthcoming)
jan@kasowitz.com
**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Paul G. Williams (GA Bar No. 764925)
(Admitted *pro hac vice*)
pwilliams@kasowitz.com
**KASOWITZ LLP**
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6102
Facsimile: (404) 393-9752

William D. Ellerman (TX Bar No. 24007151)
wellerman@CJSJLAW.com
**Cherry Johnson Siegmund James PLLC**
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Telephone: 254-732-2242
Facsimile: 866-627-3509

Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: 254-732-2242
Facsimile: 866-627-3509

*Attorneys for Plaintiffs*
*INTELLECTUAL VENTURES I LLC*
*INTELLECTUAL VENTURES II LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 3rd day of April, 2026, via the Court's CM/ECF system.

/s/ Jonathan K. Waldrop
Jonathan K. Waldrop

12