**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | § § § | |
| **Plaintiffs,** | § § | **Civil Action No. 3:25-cv-02885-L-BN** |
| **v.** | § § § | **Consolidated with 3:25-cv-03097-L** |
| **SOUTHWEST AIRLINES CO.,** | § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

**SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION TO SEVER AND
STAY INTELLECTUAL VENTURES' CLAIMS REGARDING THE '000 PATENT
BASED ON THE CUSTOMER-SUIT EXCEPTION**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT...................................................................................................... 2

       A.     The Customer-Suit Exception Applies to IV's Claims. ........................... 2

              1.     Southwest is a mere user of AvioCast........................................... 3

              2.     Southwest agreed to be bound by the Delaware Action. ............. 3

              3.     AvioVision is the sole supplier of the accused product............... 4

       B.     The Traditional Stay Factors Favor Southwest........................................ 6

       C.     No Additional Facts Are Necessary to Resolve this Motion................... 8

III.   CONCLUSION................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*CyWee Grp. Ltd. v. Huawei Device Co.*,
   2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ...................................................................7

*GreatGigz Sols., LLC v. CHRISTUS Health*,
   2022 WL 22869797 (W.D. Tex. Sept. 12, 2022)...........................................................5

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*,
   2022 WL 1037114 (W.D. Tex. Apr. 6, 2022)................................................................8

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990).............................................................................3, 5

*Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*,
   2021 WL 4555803 (W.D. Tex. Oct. 4, 2021)........................................................2, 5, 9

*Opticurrent, LLC v. Power Integrations, Inc.*,
   2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ..............................................................7

*Polaris Powerled Techs., LLC v. Dell Techs.*,
   2023 WL 5282381 (W.D. Tex. Aug. 15, 2023)............................................................8

*SITO Mobile R&D IP, LLC v. SFA Holdings Inc.*,
   2024 WL 3843804 (W.D. Tex. Apr. 19, 2024).............................................................4

*Slick Slide LLC v. NKDZ DFW, LLC*,
   2024 WL 733641 (N.D. Tex. Feb. 19, 2024).......................................................2, 3, 4, 6

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011).............................................................................3, 5, 6

*Unicorn Glob., Inc. v. Golabs, Inc.*,
   2020 WL 9076548 (N.D. Tex. Oct. 7, 2020)................................................................2

*Wapp Tech. Ltd. P'ship v. Bank of America Corp.*,
   2019 WL 3890171 (E.D. Tex. Aug. 19, 2019) .............................................................9

## I.    INTRODUCTION

Both the customer-suit exception and the traditional stay factors support severing and staying IV's '000 patent allegations in favor of AvioVision's declaratory judgment action against IV in Delaware (the "Delaware Action"). Indeed, just last month, this Court severed and stayed other claims by IV in this action on nearly identical grounds—a decision that IV largely ignores in its opposition. Dkt. 124 (the "March 10 Order"). Specifically, like AvioVision, third parties Viasat and Anuvu had filed declaratory judgment actions in the District of Delaware to resolve IV's assertion of two other patents in this action against in-flight connectivity ("IFC") systems that they supply to Southwest (the "IFC claims"). This Court granted Southwest's motion to sever and stay those claims in favor of the Delaware actions.

IV's opposition provides no basis for a different result here. With respect to the customer-suit factors, IV does not (and cannot) dispute that (i) Southwest is a mere user of AvioCast; (ii) Southwest agrees to be bound by any infringement or validity decision in the Delaware Action; and (iii) AvioVision is the sole supplier of AvioCast, the only product that IV has accused to date for the '000 patent. With respect to the traditional stay factors, IV does not (and cannot) dispute that (i) the Delaware Action will resolve the issue of whether AvioCast infringes the '000 patent against the supplier of AvioCast, and (ii) the instant action is effectively in its infancy, with fact discovery not set to close until well over one year from now and no trial date set.

Instead, IV focuses on a single speculative argument dressed in different clothes throughout its opposition—that AvioVision is not the sole supplier for the accused technology. But this contention appears nowhere in IV's live complaint—IV raises it for the first time in its opposition brief, which is no substitute for a pleaded allegation. In making this argument, IV attempts to broaden the accused technology for the '000 patent to any product that uses "Sounding Reference Symbol (SRS)," a feature described in 3GPP standards documents related to LTE. Yet despite multiple rounds

1

of pleadings and infringement contentions, including just days ago on April 17, 2026, IV has failed to identify any accused product for the '000 patent other than AvioCast. And even if other third-party products are implicated, it "would not undermine the Delaware Actions' ability to resolve the 'major issues'" of IV's assertion of the '000 patent, as this Court found with respect to the IFC claims. March 10 Order at 14.

Given these circumstances, the Court should not entertain the delay and burden of the additional discovery that IV requests, which IV bases on "mere[] speculat[ion] that it may be able to discover other infringing products…." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, 2021 WL 4555803, at *4 (W.D. Tex. Oct. 4, 2021). Rather, the Court should grant this Motion and sever and stay IV's '000 patent claims.

## II.   ARGUMENT

### A.   The Customer-Suit Exception Applies to IV's Claims.

The Delaware Action will resolve the infringement and invalidity issues raised in this case for the '000 patent. Accordingly, severing and staying IV's '000 patent claims would advance "[t]he guiding principles underlying the customer-suit exception," i.e., "efficiency and judicial economy." *Slick Slide LLC v. NKDZ DFW, LLC*, 2024 WL 733641, at *2 (N.D. Tex. Feb. 19, 2024) (cleaned up). Courts consider these principles as part of the "flexible" application of the three-factor test for this exception, i.e., whether "(1) the [] customer-defendant[] [is] merely a reseller[] [or user] of the manufactured products; (2) the customer-defendant[] agree[s] to be bound by any decision in the [supplier]'s case; and (3) the [supplier] is the sole source of the infringing product[]." *Id.*; *Unicorn Glob., Inc. v. Golabs, Inc.*, 2020 WL 9076548, at *2 (N.D. Tex. Oct. 7, 2020) (same). Here, these three factors readily support severing and staying IV's '000 patent claims, and IV's opposition fails to show otherwise.

2

### 1. Southwest is a mere user of AvioCast.

Southwest is a "mere downstream purchaser[]" of AvioVision's product, AvioCast, making AvioVision the "true defendant" of IV's claim asserting the '000 patent. *Slick Slide*, 2024 WL 733641, at *2–3. IV's own chart confirms this—it maps only AvioCast to the '000 patent using AvioVision and LTE sources and no Southwest documents. *See* Dkt. 97-14. IV has not disputed that Southwest is a mere user of AvioCast, or any of the following facts established by Southwest's executive Christopher Muhich:

- AvioVision provides Southwest AvioCast entirely—all the hardware, software, and other services required to operate AvioCast;

- Southwest does not design, develop, or modify AvioCast or the accused functionality and does not create, update, or otherwise maintain any relevant code or technical documents;

- AvioVision is responsible for providing and implementing any software updates or changes to AvioCast; and

- Southwest has no design control over the components, configuration, or functions of AvioCast, including whether and to what extent AvioCast complies with any standard, such as LTE.

Dkt. 123 at 33–34. As IV provides no opposition under this factor, it weighs decidedly in favor of applying the customer-suit exception.

### 2. Southwest agreed to be bound by the Delaware Action.

Southwest has agreed "to be bound by any infringement and validity findings in the Delaware Action." Dkt. 122. The supplier suit "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). Southwest's stipulation binds it on the '000 patent's validity across the board and on infringement as to AvioVision's products—the only products IV has actually accused—fully satisfying this

3

standard. Lacking any direct rebuttal under this factor, IV simply points out that Southwest's agreement to be bound to an infringement determination would be limited to AvioCast. Opp. at 10. This is one of several incarnations of IV's argument that AvioVision is allegedly not the only supplier of accused products. While this argument may relate to the third factor (addressed below), it does not impact Southwest's agreement to be bound. Rather, Southwest's agreement to be bound "weighs heavily in favor of staying the [] suit." *Slick Slide*, 2024 WL 733641, at *4; *see also SITO Mobile R&D IP, LLC v. SFA Holdings Inc.,* 2024 WL 3843804, at *3 (W.D. Tex. Apr. 19, 2024) (same).

### 3.    AvioVision is the sole supplier of the accused product.

IV does not dispute that AvioVision is the sole supplier of AvioCast, the only product that IV has identified as allegedly infringing the '000 patent. Instead, IV attempts to broaden the accused technology to any LTE product that incorporates Sounding Reference Signals ("SRS"), and in turn claim that AvioVision does not supply all such products. Yet IV has not identified any other allegedly infringing LTE product that Southwest uses, despite having ample opportunity to do so through its multiple rounds of pleadings and infringement contentions. The only product that IV purportedly had a good faith basis to accuse when it added the '000 patent to this case was AvioCast. IV's fishing expedition to now try to find other products that Southwest *might* use that *might* also include this technology should not delay severing and staying IV's claims against the only product it has identified to date.

This Court rejected similar arguments by IV in severing and staying the IFC claims. As with those claims, IV's "complaint, on its face, 'accused systems provided solely by'" AvioVision, and IV has not "explained how any [other suppliers] contributed to the accused systems." March 10 Order at 12–13. That IV "reserv[ed] the right to investigate" whether additional suppliers exist is insufficient to defeat this Motion because "a contention that Southwest 'possibly uses (or has used) other companies and technologies' does not amount to identifying other providers and cannot

rebut Southwest's evidence." March 10 Order at 13; *see also GreatGigz Sols., LLC v. CHRISTUS Health*, 2022 WL 22869797, at *3 (W.D. Tex. Sept. 12, 2022) (holding that plaintiff's argument "that its 'allegations against Defendant are not limited to only their use of [the manufacturer's] systems,'" without any "specific information," cannot rebut the application of the customer-suit exception's third factor). Indeed, even if IV later succeeds in adding accused products for the '000 patent to this action—it should not—severing and staying the '000 patent claims now would still be warranted because additional products "would not undermine the Delaware Action['s] ability to resolve the 'major issues' of the ['000] Patent claims." March 10 Order at 14 (citing *Spread Spectrum*, 657 F.3d at 1358; *Katz*, 909 F.2d at 1464); *see also e.g.*, *Kirsch*, 2021 WL 4555803, at *5 (finding the customer-suit exception to apply in cases against multiple manufacturers, even where those manufacturers were litigating their own claims in separate lawsuits).

IV's related argument that LTE chipmakers may contribute to AvioCast fares no better. IV contends that Southwest's declaration "does not even confirm that AvioVision has possession, custody, and control of relevant documents, source code, and/or witnesses with regards [to] 3GPP certification or testing," and speculates that IV may need to obtain technical information from "the LTE chipmaker used in the AvioVision product" rather than AvioVision itself. Opp. at 5. But IV's argument mischaracterizes the record. The undisputed evidence demonstrates that AvioVision provides Southwest AvioCast entirely—all the hardware, software, and other services required to operate AvioCast—and that Southwest has no design control over the components, configuration, or functions of AvioCast, including whether and to what extent AvioCast complies with any standard, such as LTE. Dkt. 123 at 33–34. IV's complaint does not allege that any entity other than AvioVision is responsible for the accused technology, and IV has not identified any specific chipmaker or other third party that allegedly contributes to the accused functionality. In all events,

5

IV's chipmaker argument only reinforces why IV should address the '000 patent claims directly with AvioVision in the Delaware Action, where any information regarding AvioCast's components or third-party vendors—including any LTE chipmaker—would be within AvioVision's possession and available for discovery.

**B.      The Traditional Stay Factors Favor Southwest.**

IV has also not shown that any of the three traditional stay factors weigh against a stay. *First*, a stay will not unfairly prejudice IV. IV cites no basis for its claim that a stay would "delay[] enforcement of its patent rights and increas[e] the risk of evidence degradation …." Opp. at 11. This Court rejected identical conjecture by IV with respect to the IFC claims. *See* March 10 Order at 15 (finding that "the interest in timely enforcement is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion" and further finding "no specific facts to support [IV's] general contention" that a "stay would risk spoliation of infringement evidence.") (cleaned up). Moreover, as a non-practicing entity and non-competitor of Southwest, IV can seek only *monetary* relief in this Court, which can be recovered after the supplier suit concludes. *See* Dkt. 97 at 49–50. And IV must litigate in Delaware regardless of this Motion, further reducing any claim of tactical disadvantage. *See* March 10 Order at 16.

*Second*, a stay would greatly simplify the issues in this case, and at a minimum, resolve "'major issues' concerning the ['000 patent] claims against the customer." *Slick Slide*, 2024 WL 733641, at *2 (quoting *Spread Spectrum*, 657 F.3d at 1358). That is especially true here because IV accused only AvioCast and mapped the claims solely through AvioVision and LTE sources, not Southwest documents. *See* Dkt. 97-14. A stay would also "obviate the need for non-party discovery" from AvioVision because "once the Delaware action is resolved, there presumably will be nothing left for this Court to adjudicate as to whether" AvioCast infringes. *CyWee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 4002776, at *3–4 (E.D. Tex. Aug. 22, 2018).

To the extent that IV argues that there will be issues of direct infringement against Southwest that are not resolved by the Delaware action (Opp. at 12), it provides "no facts or evidence" to support this argument, just as it failed to do for the IFC claims. *See* March 10 Order at 9. Nor does this argument weigh against a stay, since "whether or not the claims against [the supplier] are completely dispositive of the claims against [the customer], a finding that [the supplier] infringes is a prerequisite to recovery from [the customer] given that [the customer] is merely a distributor or reseller of the accused products.'" *Opticurrent, LLC v. Power Integrations, Inc.,* 2016 WL 9275395, at *5 (E.D. Tex. Oct. 19, 2016) (cleaned up). IV also repeats its previously rejected (and puzzling) argument that it "would have to transport documentary evidence of Southwest's use of the infringing technology" to Delaware. Opp. at 8. As this Court found with respect to the IFC claims: "[IV has] not explained why evidence of Southwest's use of [AvioCast] is needed in a lawsuit between [IV] and [AvioVision], to which Southwest is not a party. Southwest's use of technology would be litigated in the severed claim, if necessary, once the Delaware Actions involving the underlying technology are resolved." March 10 Order at 16.

There is also no prejudice or efficiency concern due to "multiple declaratory judgment actions" (Opp. at 11), especially when both the Viasat and Anuvu actions (which have been consolidated through pre-trial) and the AvioVision action are pending in the same forum, the District of Delaware, where IV is incorporated. Moreover, these declaratory judgment actions are proceeding irrespective of the instant action (particularly since IV's motion to dismiss the Viasat and Anuvu actions has been denied), so IV must litigate in Delaware regardless of the outcome of this Motion. To the extent any delay results from the stay, IV's "status as a non-practicing entity, which does not manufacture or sell the products covered by the patents in suit and seeks to collect licensing fees" still "favors a stay." *Polaris Powerled Techs., LLC v. Dell Techs.*, 2023 WL

5282381, at *4 (W.D. Tex. Aug. 15, 2023) (cleaned up). A stay "will not adversely impact" IV's ability to obtain these "monetary damages." *Id*. At the same time, a stay would help defuse the unfair advantage that IV has attempted to gain by bringing a host of disparate claims against Southwest, a mere customer, to leverage the asymmetric litigation costs that Southwest would incur. This tactic unfairly burdens Southwest and blocks the true defendants, like AvioVision, from directly addressing the claims targeting their products.

*Third*, the stage of this case weighs in favor of a stay, which IV does not dispute. This case is effectively in its infancy (since the schedule was reset post-transfer), with fact discovery not set to close until July 2027, and no trial date set yet. Dkt. 131; *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, 2022 WL 1037114, at *4 (W.D. Tex. Apr. 6, 2022). While IV argues that there is a risk of "inconsistent decisions" with a stay (Opp. at 13), it provides no basis for this claim. To the contrary, a stay would avoid "inconsistent decisions," as this Court found with respect to the IFC claims. March 10 Order at 18 ("Any delay or inconvenience would be outweighed by avoiding inconsistent and duplicative litigation of the [IFC] claims. And nothing suggests that severance would lead to 'inconsistent judgments' between the [IFC] claims and the other patent claims in this lawsuit.").

**C.    No Additional Facts Are Necessary to Resolve this Motion.**

The Court should deny IV's invitation to conduct "limited discovery to supplement the record." Opp. at 13. IV's own chart accuses only AvioCast and cites only AvioVision/LTE standards sources; discovery to search for other, unidentified products is not a basis to delay severance and a stay. *See* Dkt. 97-14. IV does not provide authority showing that "[d]iscovery has been granted in similar situations" as it claims. Opp. at 9. Rather, the cases IV cites involve discovery related to jurisdiction, venue, and the proper entity to serve. *See id.* These are entirely different threshold issues that do not exist here, requiring particularized inquiries into facts

8

unrelated to the substantive claims of the case. In the only case that IV cites as allowing limited discovery related to the customer-suit exception, discovery was permitted to determine the fundamental question of whether "Defendant is a customer or manufacturer of an accused system." *Wapp Tech. Ltd. P'ship v. Bank of America Corp.*, 2019 WL 3890171, at *3 (E.D. Tex. Aug. 19, 2019). No such question exists here.

Rather, here, IV seeks additional discovery to attempt to uncover more products to accuse. Yet IV has presented no reason to deviate from the usual rule that "[t]he Court will not deny a stay under the customer-suit exception where Plaintiff merely speculates that it may be able to discover other infringing products that its pre-suit diligence did not reveal." *Kirsch*, 2021 WL 4555803, at *4. Moreover, the discovery that IV seeks would not impact the outcome here, because the existence of third-party products "would not undermine the Delaware Action['s] ability to resolve the 'major issues' of the…claims." March 10 Order at 14. Instead, allowing discovery would inject delay in resolving the claims at issue, create a longer period of wasteful duplicative actions, and increase burden and expense for the parties and the Court. Accordingly, the Court should reject IV's request for discovery.

### III.    CONCLUSION

For the foregoing reasons, the Court should sever and stay IV's claims regarding AvioVision until final resolution of the Delaware Action.

Date: April 21, 2026

Respectfully submitted,

/s/ S. Wallace Dunwoody
Michael C. Wilson
State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
State Bar No. 24040838
wdunwoody@munckwilson.com
Lucas R. Dombroski
Texas Bar No. 24142846
ldombroski@munckwilson.com
**Munck Wilson Mandala, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar No. 09479355
dhenry@munckwilson.com
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas State Bar No. 24102969
ttruong@munckwilson.com
**Munck Wilson Mandala, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 21, 2026, the foregoing document has been

served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody
