IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:25-cv-2885-L-BN |
| SOUTHWEST AIRLINES CO., | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case was referred to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 82.

On January 5, 2026, Defendant Southwest Airlines Co. filed a Motion to Dismiss the claims of Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures"). *See* Dkt. No. 99. Southwest challenges the validity of certain patent claims under 35 U.S.C. § 101, Intellectual Ventures's assertion of recovery of pre-suit patent infringement damages, and the sufficiency of Intellectual Ventures's pleadings regarding patent infringement. *See id.*

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant in part and deny in part Southwest's Motion to Dismiss [Dkt. No. 99] for the reasons and to the extent set out below.

## Background

This is a patent infringement matter in which Intellectual Ventures asserts that Southwest has infringed, or is infringing, claims of the patents-in-suit. *See* Dkt. No. 97. In its Amended Complaint for Patent Infringement, Intellectual Ventures initially asserted infringement of eight patents owned by Intellectual Ventures. *See id.* The Court, during the course of this litigation, severed and stayed the patent infringement claims related to two of the eight patents-in-suit, leaving six active patents-in-suit. *See* Dkt. No. 124.

In the Motion, Southwest challenges the validity of certain claims of five of the current patents-in-suit under 35 U.S.C. § 101: U.S. Patent No. 7,257,582 (the "'582 Patent); U.S. Patent No. 7,721,282 (the "'282 Patent); U.S. Patent No. 8,332,844 (the "'844 Patent"); U.S. Patent No. 8,407,722 (the "'722 Patent"); and U.S. Patent No. 7,712,080 (the "'080 Patent").

Southwest argues that Intellectual Ventures cannot maintain a claim of patent infringement against Southwest for such claims of the patents-in-suit because the patent claims are invalid and, so, unenforceable. *See* Dkt. No. 99 at 1.

Southwest also challenges Intellectual Ventures's assertion that Intellectual Ventures is entitled to recover pre-suit damages for patent infringement because, according to Southwest, Intellectual Ventures cannot plead plausible facts that support awarding pre-suit damages. *See id.* at 2. In particular, Southwest asserts that Intellectual Ventures has failed to plead plausible facts showing that Southwest had any knowledge that it was infringing Intellectual Ventures patents, as alleged in

Intellectual Ventures's complaint, prior to initiating this lawsuit. *See* Dkt. No. 100 at 30. Southwest argues that Intellectual Ventures has not and cannot plead that Intellectual Ventures complied with the constructive notice marking provisions of 35 U.S.C. § 287 or that Southwest had actual knowledge of the possibility that Southwest might be infringing the patents-in-suit. *See id*. And Southwest argues that in this case any award of patent infringement damages is limited to post-suit damages under 35 U.S.C. § 287. *See id*.

Southwest also asserts that Intellectual Ventures's pleadings are insufficient to support claims of patent infringement because they fail to provide Southwest with notice of what activity Southwest is engaging in that constitutes patent infringement. *See* Dkt. No. 99 at 2.

## Legal Standards

### I.    Pleading Standards

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must

plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions, and, so, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 722, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377

(5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

In a patent infringement lawsuit, the plaintiff needs only to plead "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1346 (Fed. Cir. 2021). Plaintiffs are not required to plead infringement on an element-by-element basis. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). Pleadings that place the alleged patent infringer on notice of what activity is accused of infringement are sufficient. *Id.*

## II.  Patent Subject Matter Eligibility

A party may challenge patentability of patent claims under 35 U.S.C. § 101 based on the pleadings with a motion to dismiss. *See Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1342 (Fed. Cir. 2019). Patent "[e]ligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." *SAP Am. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Section 101 patent eligibility may be resolved on a motion to dismiss when there are no factual allegations that prevent resolving the question as a matter of law. *See Nat. Alts.*, 918 F.3d at 1342.

Section 101 provides that whoever "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. The Supreme Court has explained that Section 101 does not allow patenting purely "abstract ideas." *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). That is, purely

abstract ideas are not patent-eligible subject matter. *See id.*

Courts use a two-part test to determine if a patent claims patent-eligible subject matter. *See id.* at 217. First, the court determines if the claim is "directed to … [a] patent-ineligible concept," such as an abstract idea. *Id.* If it is not, then it passes the test, the analysis ends, and the patent claim is not invalid for attempting to claim an abstract idea. *See id.* But, if the claim is directed toward an abstract idea, then the court must determine if the claim contains something else – an "inventive concept" – to ensure that the claim goes beyond implementing the abstract idea. *Id.* The court must "consider the elements of each claim both individually and as an 'ordered combination' to determine whether [the] additional elements 'transform the nature of the claim' into" patent-eligible subject matter. *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)).

Limiting a claim to a "particular technological environment … is, without more, insufficient to transform" a claim directed toward an abstract idea into a patent-eligible idea. *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (citations omitted). Neither does implementing "an abstract idea using conventional and well-understood techniques" add an inventive concept that transforms application of an abstract idea into patent-eligible subject matter. *BSG Tech, LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018). For instance, "methods of organizing human activity" or implementing abstract ideas on generic computer equipment, without an inventive concept, are abstract ideas that are not patent-eligible subject matter. *Id.* at 1285. But patent claims "'purport[ing] to

improve the functioning of [a] computer itself,' or "improv[ing] an existing technological process,'" may include patent-eligible subject matter. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 223, 225).

An issued patent and its claims are presumed to be valid, and the burden of proof rests on a party asserting invalidity. *See* 35 U.S.C. § 282(a). Invalidity of a patent or its claims must be proven by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

"The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that also "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Allegations that individual elements or the claimed combination are not "well-understood, routine, or conventional activity" can, in some cases, preclude granting a motion to dismiss. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)).

But, in some cases, a court may determine subject matter eligibility under Section 101 on a Rule 12(b)(6) motion, such as when the specification describes, and the patent claims, a purely abstract idea. *See Genetic Techs. Ltd. v. Merial L.L.C*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

## III.   **Patent Infringement Damages**

Patent marking requirements, notice to an infringer, and the related effect on

damages for patent infringement are controlled by 35 U.S.C. § 287(a), which states:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

Section 287(a) dictates the correct way to mark a patented product. And it provides that a patent owner's damages for patent infringement are limited to infringement that occurred after the infringing party received notice that it was infringing a valid patent. Properly marking a patented product provides constructive notice to potential infringers and triggers the start of the damages period. *See Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1316-17 (Fed. Cir. 2009). But, when a patent owner fails to mark patented products in an approved manner, the damages period does not start until the alleged infringer receives actual notice of infringement. *See id.* Filing suit is one way to establish actual notice. *See id.*

If a patent owner fails to comply with the marking statute or otherwise show pre-suit notice of infringement, then the alleged infringer cannot have received actual or constructive notice of the alleged infringement prior to the lawsuit's

commencement. *See id.* In that case, the patent owner cannot recover pre-suit damages for that alleged infringement. *See id.*

The marking requirements of Section 287(a) "do not apply where the product is directed to a process or method" because, in a method claim, there is no product to mark. *Id.* at 1316; *accord Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983) ("[T]he notice requirement of [Section 287] does not apply where the patent is directed to a process or method."). "Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)." *Id.* at 1317.

A patent owner bears the burden of pleading and proving compliance with the statutory marking requirements. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). ("[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked patented articles subject to § 287."). "Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

## Analysis

**I.   Sufficiency of Intellectual Ventures's Pleadings Regarding Patent Infringement**

The Court should deny the Motion regarding the sufficiency of the pleadings

because Intellectual Ventures has sufficiently pleaded facts showing the plausibility of infringement and what activities Southwest is accused of engaging in that allegedly constitute patent infringement.

A complaint must "place the alleged infringer 'on notice of what activity … is being accused of infringement.'" *Bot M8*, 4 F.4th at 1352 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). "There must be some allegation of specific services or products of the [accused infringer] which are being accused." *Addiction & Detox. Inst. L.L.C. § v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015).

Southwest asserts that Intellectual Ventures has not sufficiently pleaded facts that inform Southwest of which products, systems, or services Southwest uses or performs that infringe Intellectual Ventures's patents. *See* Dkt. No. 100 at 30-31. Southwest asserts that "Accused Products and Services" are defined so broadly in the complaint that Southwest cannot identify the accused products, devices, or services. *Id.* (quoting Dkt. No. 97 at 2).

In support of this argument, Southwest cites allegations in Intellectual Ventures's pleadings that broadly describe software programs that are accused products, devices, or services. *See id.* In these portions of the complaint, Intellectual Ventures asserts that accused products include any "products, services, and technologies" that Southwest "makes, utilizes, services, tests, distributes, sells, offers, and/or offers for sale in the State of Texas and the Northern District of Texas." Dkt. No. 97 at 2. Southwest further asserts that the complaint's ambiguity is made

worse by its allegations that systems and services that have the same or substantially similar features as specifically identified software are also accused products, devices, or services. *See* Dkt. No. 100 at 31 (citing Dkt. No. 97-7 at 2). According to Southwest, "[s]uch sweeping allegations fail to give Southwest notice of what conduct is actually accused." *Id.*

The undersigned disagrees with Southwest's description of the complaint

The portion of Intellectual Ventures's complaint cited by Southwest – that "Southwest makes, utilizes, services, tests, distributes, sells, offers, and/or offers for sale in the State of Texas and the Northern District of Texas products, services, and technologies ('Accused Product and Services')" – was not intended to be a specific detailed account of the allegations of patent infringement. Dkt. No. 97 at 2. Instead, this language is in the section of the complaint that identifies Southwest as a party and, so, is used to identify Southwest's corporate identity and related information, to allege Southwest's presence in this district, and to alert Southwest that it is infringing Intellectual Ventures's patents in this district. *See id.* at 2-3.

And, while Intellectual Ventures does generally assert patent infringement in this section of the complaint, Southwest appears to ignore the remainder of the complaint and its exhibits, which provide ample details regarding Southwest's alleged infringing activities. *See generally id.*

For example, Count I of the complaint, which alleges infringement of the '844 Patent, includes more than four pages of text to describe the alleged infringement. *See* Dkt. No. 97 at 10-15.

Intellectual Ventures also attaches claim charts to the complaint, which identify, on an element-by-element basis, the software programs, packages, or services that Southwest allegedly uses and that are the basis for Intellectual Ventures's claims. In Count I, Intellectual Ventures refers to and incorporates by reference Exhibit 7. *See* Dkt. No. 97 at 14. Exhibit 7 is a claim chart related to Southwest's use of a program called Docker. *See* Dkt. No. 97-7. The claim chart identifies Docker as an accused system or service and provides facts showing that Southwest uses Docker. *See id.* at 2. The exhibit then goes on to, on a detailed element-by-element basis, describe how Southwest's alleged use of Docker constitutes infringement of the '844 Patent by performing every step of this method claim. *See id.* at 4-31.

Intellectual Ventures provides the same information and level of detail in its other counts of patent infringement. *See generally* Dkt. No. 97. These include implementations of Docker, Kafka, Spark, and Hadoop software technology. *See* Dkt. Nos. 97-7; 97-8, 97-11; 97-12; 97-13; 97-15.

These allegations and exhibits are sufficient, for each count of the complaint, to put Southwest on notice of Southwest's accused devices and actions that allegedly constitute patent infringement. Since Intellectual Ventures's complaint places Southwest on notice of what activity is being accused and what software programs are related to that activity, Intellectual Ventures has met its burden of pleading patent infringement allegations.

And, so, the Motion should be denied with respect to Southwest's assertion that

the counts of patent infringement should be dismissed for failure to state a claim.

## II.    Patent Subject Matter Eligibility

Invalid patent claims cannot be infringed. *See Alice*, 573 U.S. at 216. And, so, a party cannot sufficiently plead a cause of action for infringement of an invalid claim. *See id.*

In the Motion, Southwest asserts that Intellectual Ventures cannot sufficiently plead claims of patent infringement regarding the claims of the '582, '282, '844, '722, and '080 Patents because the asserted patent claims are invalid under 35 U.S.C. § 101. *See* Dkt. No. 100 at 9-28.

The undersigned first addresses the sufficiency of Southwest's briefing.

For each asserted patent-in-suit, Southwest has identified a single patent claim that it asserts is invalid under Section 101. Southwest has briefed the Section 101 issues in detail for those identified claims. It did not provide any other specific briefing regarding the other claims of the patents-in-suit, other than to assert that the sole briefed claim was "charted as representative" of the other patent claims. Dkt. No. 100 at 11, 16, 21, & 25.

But, in the Motion, Southwest requests that the Court dismiss, in their entirety, all claims of patent infringement asserted under each count of patent infringement. *See generally id.* It is not clear in the briefing or the complaint whether Intellectual Ventures asserts patent infringement only for the specifically briefed claims or for the briefed claim and other claims of the patents-in-suit.

Patent claim invalidity under Section 101 is determined on a claim-by-claim

basis and not on the patent as a whole. *See, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255-59 (Fed. Cir. 2014). In certain cases, it is appropriate for a court to use a single representative claim for a Section 101 validity analysis and to apply that analysis to all claims of a patent-in-suit. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 & n.9 (Fed. Cir. 2016). Courts may treat a claim as representative if, for example, the patentee does not meaningfully argue the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative. *See, e.g.*, *Intellectual Ventures*, 838 F.3d at 1313. But the party asserting that a representative claim's invalidity applies to the patent's other claims must clearly request this relief from the court. *See, e.g.*, *Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015).

Southwest does not clearly assert that the Court should apply its analysis of the briefed claims to any or all of the other claims of the patents-in-suit. Intellectual Ventures appears to have a similar understanding of Southwest's requested relief because Intellectual Ventures did not address, in its briefing, how any additional elements of dependent claims make a claim valid under Section 101. And, so, the undersigned limits its analysis of validity under Section 101 to the specifically briefed claims, and it will not apply its analysis generally to any other claims of the patents-in-suit.

Under this framework, the undersigned recommends that the Court deny the Motion as to the assertion of invalidity of the certain claims of the '582 Patent, the

'844 Patent, the '282 Patent, and the '080 Patent because, at this stage, where plausible allegations must be taken as true, Southwest has not met its burden to show by clear and convincing evidence that the asserted patent claims are invalid under Section 101.

But the Court should grant the Motion as to the assertion of invalidity of Claim 14 of the '722 Patent because Claim 14 is, as a matter of law, invalid under Section 101.

## A. Claim 1 of the '582 Patent

Under Count V of its complaint, Intellectual Ventures asserts that Southwest infringes claims of the '582 Patent. *See* Dkt. No. 97 at 29. The '582 Patent is entitled "Load Balancing with Shared Data." Dkt. No. 97-5 at 7. Generally, the '582 Patent discloses and claims methods for load balancing of computer processing by dividing tasks into "subtasks" and distributing those subtasks to multiple processors. *Id*. According to the patent, this method results in faster and more efficient operation of computing systems by allocating tasks among available processors. *See id*.

Southwest asserts that Claim 1 of the '582 Patent is invalid because it claims an abstract idea without an inventive concept. *See* Dkt. No. 100 at 11-14.

Claim 1 of the '582 Patent is a method claim. Claim 1 reads as follows:

1. A method of effecting on a preexisting input file a computer-executable process comprised of a plurality of subtasks, the method comprising the steps of:

   (a) automatically determining file allocation and logically subdividing records of said input file into a plurality of partitions;

   (b) distributing descriptions of all of said partitions to each of a

plurality of subtask processors

(c) simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions with each subtask reading and processing the respective partition so as to process the respective partition and produce respective subtask output and;

(d) thereafter repeating step (c) in at least some of the subtask processors each with another unprocessed partition on a first-come/first-served basis; and

(e) generating at least one output combining all of the subtask outputs and reflecting the processing of all of said subtasks.

Dkt. No. 97-5 at 9.

Claim 1's method has five general steps: (1) subdivide a record into partitions; (2) send descriptions of the subdivisions to multiple subtask processors; (3) use multiple subprocessors to simultaneously execute some of the subtasks; (4) repeat the simultaneous execution of subtasks by subtask processors as subtask processors become available; and (5) combine all of the results of the subtasks into a final output result. *See id.* The claim also contains further required elements for each described step. *See id.*

Southwest asserts that these steps are merely the abstract idea of a fundamental organization principle whereby one "break[s] a job into smaller tasks, assign[s] them to workers, and ha[s] workers request new tasks when finished." Dkt. No. 99 at 12. According to Southwest, this is a routine and known organization practice that human beings have been doing "for centuries." *Id.*

Southwest also points out that the claims do not have descriptions or requirements for how each step of the process is performed. Southwest contends that

Claim 1's steps use generic terms such as "logically subdividing," "distributing," and "aggregating," without any limitations or requirements on how to perform these tasks. *Id.* at 13. Under this view, the Claim 1 does not pass Step 1 of *Alice* because the Claim is directed toward an abstract idea. *See id.*

According to Southwest, Claim 1 also fails step 2 of *Alice* because there are no claim limitations other than those describing the abstract process of performing the tasks and the requirement to perform those steps using a computer. *See id.* It argues that using a computer to perform steps is not an inventive concept that turns an abstract idea into a patentable and limited execution of that idea. *See id.* at 12 (citing *BSG Tech*, 899 F.3d at 1290-91).

In its response, Intellectual Ventures argues that Claim 1 is not directed toward an abstract idea, so the Claim passes Step 1 of *Alice*. *See* Dkt. No. 112 at 8. And it argues that, even if Claim 1 was directed toward an abstract idea, the claim is "directed to an inventive concept," so Claim 1 passes Step 2 of *Alice* and is valid patent subject matter. *Id.* at 12.

Intellectual Ventures argues that Southwest made the error of too broadly abstracting the elements of the claims without considering the details of each step and how all elements, when combined, operate together. *See id.* at 10. Intellectual Ventures further argues that the claimed method changes the "normal, expected operation of a conventional computer network." *Id.* at 11 (quoting *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 1295)).

Intellectual Ventures and the '582 Patent acknowledge that distributed

computing was a known practice at the time of the claimed invention. *See* Dkt. No. 97-5 at 7. But Intellectual Ventures points out that the patent specification asserts that Claim 1's method is not the normal expected operation of performing distributed computing. *See id.*; Dkt. No. 112 at 9-11.

In particular, Claim 1 requires "distributing descriptions of all said partitions of a plurality of subtask processors"; "simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions with each subtask reading and processing the respective partition so as to process the respective partition"; and "thereafter repeating [the previous step] in at least some of the subtask processors each with another unprocessed partition on a first-come/first-served basis." Dkt. No. 97-5 at 9.

According to Intellectual Ventures and the patent specification, these steps are not conventional steps used in distributed-computing data processing. *See* Dkt. No. 112 at 12. Instead, the ordered combination of all the steps provides an improvement in the field of distributed computing and load balancing that was not performed before by computers or humans and that provides the benefits of available capacity of multiple processors while optimizing execution, improving processing efficiency, and improving processor utilization. *See id.*

Considering the record before it, the undersigned finds that the complaint and patent specification both allege that Claim 1 of the '582 Patent claims a new and useful manner of operating a computer system that is not the manner in which a

computer system was expected to operate at the time of the described invention, that improves the state of the art related to distributed computing, and that increases the processing power and efficiency of distributed processing.

The language of Claim 1 itself supports Intellectual Ventures's allegations. The claim presents five specific steps with limitations that all relate to steps taken to process data. *See* Dkt. No. 97-5 at 9. But Claim 1, as a whole, is not attempting to capture the abstract concept of processing data or even splitting work into subtasks. Instead, the Claim describes the detailed steps required for a computing system to perform these subtasks using a new and specific process that provides a concrete improvement in functionality.

While Southwest is able to articulate a broad abstract concept toward which Claim 1 is directed, Southwest's abstract concept is too broad and disconnected from the claim elements. A court should not overly abstract a patent claim when determining subject matter eligibility of the claim. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Southwest fails to consider the ordered combination of elements as a whole and the improvements that the claimed method provides in the field of parallel processing. This is particularly true at this stage of the litigation, where the assertions of improvements in the field of parallel processing made in the patent specification and complaint, if plausible, are taken as true and construed in favor of Intellectual Ventures.

Considered in this light, Claim 1 appears to not be directed toward an abstract idea. Instead, Claim 1 is directed toward a particular method for performing steps to

accomplish load balancing in a computerized application that provides concrete improvements in the field.

And, so, the undersigned finds that Southwest has not met its burden, at this stage, to show that Claim 1 of the '582 Patent is invalid under 35 U.S.C. § 101. Intellectual Ventures's pleadings and the assertions of the specification support the conclusion that the claim is not directed toward an abstract idea and is, instead, a claimed improvement of the way a computing system functions. Claim 1, on the record before the Court, passes Step 1 of *Alice*.

The Court should not dismiss Intellectual Ventures's claims based on Claim 1 of the '582 Patent.

## B. Claim 1 of the '282 Patent and Claim 7 of the '844 Patent

Under Count VIII of the complaint, Intellectual Ventures asserts that Southwest infringes claims of the '282 Patent. *See* Dkt. No. 97 at 44. The '282 Patent is entitled "Block-Level I/O Subsystem for Distributed Application Environment Management." Dkt. No. 97-17 at 7. The '282 Patent discloses and claims methods related to distributed applications where an application is executed using multiple computers or processors. *See id.*

And, under Count I of its complaint, Intellectual Ventures asserts that Southwest Airlines infringes claims of the '844 Patent. *See* Dkt. No. 97 at 10. The '844 Patent is entitled "Root Image Caching and Indexing for Block-Level Distributed Application Management." Dkt. No. 97-1 at 10. The '844 Patent is a continuation-in-part of the '282 Patent. *Id*. A continuation-in-part contains all the information and

disclosure of the previous application, along with additional material such as improvements or changes. *See Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994) (citing MPEP § 201.08). As such, the '844 Patent, like the '282 Patent, discloses and claims methods and systems related to distributed applications.  And the '844 patent adds some caching and indexing concepts to the methods and systems of the '282 Patent. *Id.* at 2, 10.

Southwest asserts that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are both invalid because they are directed toward an abstract idea without any inventive concept. *See* Dkt. No. 100 at 15-20.

Claim 1 of the '282 Patent reads as follows:

1. A system for distributing an application environment comprising:

a compute node comprising a computer system;

a first storage unit for storing blocks of a root image of the compute node, wherein the first storage unit comprises a first non-volatile memory, wherein the root image comprises a computer program, wherein the blocks comprise sections of data, and wherein a file of the root image comprises at least one block;

a second storage unit for storing a leaf image, the leaf image comprising new data blocks and changes to the blocks of the root image, wherein the second storage unit comprises a second non-volatile memory; and

a union block device for interfacing between the compute node and the first and second storage units to distribute the application environment to the compute node, wherein the union block device comprises a driver, wherein the union block device creates the application environment by merging the blocks of the root image stored on the first storage unit with the blocks of the leaf image stored on the second storage unit; the union block device comprises a low-level driver for interfacing between the first and second storage units and the file system of the compute node; and the

> union block device, upon receiving a write request from the compute node for a sector X, creates an appropriate persistent mapping for sector X.

Dkt. No. 97-17 at 10.

Claim 1 of the '282 Patent, in general terms, claims a computing node that includes first and second storage units and a union block. *See id.* Some portions (a root image) needed to operate the computing node are stored on the first storage unit, while other portions (a leaf image) are stored on the second. *See id.* The union block contains data (such as drivers) needed to merge the root image and the leaf image into an operating application environment. *See id.* Other claim elements specify further details regarding the root image, the leaf image, and the union block. *See id.* According to the patent, this system efficiently distributes processing power for an application across multiple computers by significantly diminishing the bring-up time required to do so, as compared to methods used at the time of the invention. *Id.* at 7.

Claim 7 of the '844 Patent reads as follows:

> 7. A method for providing data to a plurality of compute nodes, comprising:
>
> storing blocks of a root image of said compute nodes on a first storage unit;
>
> storing leaf images for respective compute nodes on respective second storage units, said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image, wherein said leaf images of respective compute nodes do not include blocks of said root image that are unchanged by respective compute nodes; and
>
> caching blocks of said root image that have been accessed by at least one of said compute nodes in a cache memory.

Dkt. No. 97-1 at 15.

Claim 7 of the '844 Patent, in general terms, provides one type of method that the system of Claim 1 of the '282 Patent might perform. This method involves storing a root image in a first storage unit, storing leaf images in second storage units, and caching blocks. *See id.* A root image is a base image of an application environment for compute nodes. *See id.* at 10. Data blocks of a root image and leaf images are stored on separate storage devices, with previously accessed root image data blocks being stored in a cache. *See id.* at 15.

As described in the specification, when a compute node sends a "read request," the compute node may receive data from the cache instead of from one of the storage locations. *Id.* at 13. If the compute node accesses data not previously cached, the cache will be updated to include that data. *See id.* The "merging [of] the root image [and] the blocks of the leaf image" to create the application environment can then be performed, resulting in an application environment that appears to the compute node as one cohesive image. *Id.*

According to the specification, one benefit of the claimed invention and improvement over the prior art is the use of the cache to "improve the access time" to data, as compared to accessing data from one of the storage devices. *Id.* Another benefit of the disclosed method, as asserted in the specification, is that the methods or systems make it appear to a compute node that the compute node has its unique version of the "application environment," but it is not necessary to actually store and complete a boot image on the compute node. *Id.*

Southwest argues that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are invalid because they claim an abstract idea – "organizing and storing information." Dkt. No. 100 at 17. According to Southwest, this is the only feature captured by the claims, and there are no elements in the claims that provide something beyond the abstract idea. *See id.* at 17-18. Southwest also argues that the components of Claim 1 and the steps of Claim 7 are routine, well-known, and common practices used to organize and store data and that implementing these common practices with a computer does not make them not abstract. *See id.*

Intellectual Ventures argues that Southwest has taken the abstraction of both claims too far and has analyzed the claims without considering the whole ordered combination of claim elements for each claim. *See* Dkt. No. 112 at 15-16. According to Intellectual Ventures, when the claims are analyzed correctly, they are not abstract – rather, both claims provide a technological improvement in the way a computing system operates. *See id.*

The undersigned agrees that Southwest has taken the abstraction of the claims too far. Southwest's proposed abstract idea of "organizing and storing information" ignores the detailed elements of both claims. While the claims are ultimately used to organize and store information, the detailed elements of the claims limit application of such an abstract idea to a concrete application, as described and limited by the claims themselves.

The pleadings and exhibits support the conclusion that both claims are technological improvements to the way a computing system functions. According to

the patent specification, which is taken as true at this stage of the litigation, the claims present a new way of performing distributed application environments, where one application is running across multiple computers or processors. The process as described in the claims is different and unexpected compared to the way distributed processing was done in the past. And the method described in the claims provides technical benefits compared to past methods, including eliminating wasted data transfer and processing times, because less data is needed to initiate the use of additional processors and improved overall processing and response times.

And, so, the undersigned finds that Southwest has not met its burden, at this stage, to show that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are invalid under 35 U.S.C. § 101. These claims are concrete implementations of ways to store and organize information and are improvements to the way computing systems function. Based on the claims, specification, and pleadings, the claims do not appear to be directed toward an abstract idea. And the claims pass Step 1 of *Alice* and cover patent-eligible subject matter.

The Court should not dismiss Intellectual Ventures's claims based on Claim 1 of the '282 Patent and Claim 7 of the '844 Patent.

### C. Claim 14 of the '722 Patent

Under Count II of its complaint, Intellectual Ventures asserts that Southwest infringes claims of the '722 Patent. *See* Dkt. No. 97 at 20. The '722 Patent is entitled "Asynchronous Messaging Using a Node Specialization Architecture in the Dynamic Routing Network." Dkt. No. 97-2 at 17. The '722 Patent discloses and claims methods

and systems related to distribution of updated information using a communication network. *Id.* at 18.

Southwest asserts that Claim 14 of the '722 Patent is invalid because it claims only an abstract idea without an inventive concept. *See* Dkt. No. 100 at 20-24. Claim 14 reads as follows:

> 14. A method comprising:
>
> > providing, using a processing device of an input source, a data representation to a client device, different from the input source, coupled to a routing network, wherein the data representation includes at least one live object recognizable by the client device, and causing the client device to respond to the live object of the data representation by determining an object identifier (ID) of the live object and to register for updates of the live object with the routing network, such that registering the client device with the routing network provides client connection information to a node in the routing network; and
>
> > sending, using the processing device of the input source, an update message to the routing network, wherein the update message identifies the live object and contains update data that updates a property of the live object,
>
> > wherein a gateway device at the routing network is configured to identify a category of the update message based on the input source, to determine a node type to which the identified category maps, and to route the update message to the node, having the node type, at the routing network,
>
> > wherein the node is configured to identify the client device as a registered device and to route the update message to the client device, and
>
> > wherein the client device processes the update message upon receipt to update the property of the live object at the client device.

Dkt. No. 97-2 at 28.

In general terms, Claim 14 describes a method for providing data to a user that

allows that user to select content for which that user wants to receive updates and, when an update of the information becomes available, sending an update message to the user through a message routing network. *See id.* A node is used to identify which user requested the update, and a gateway device is used to route the updated information to that user. *See id.* When the information arrives at the user's device, the information is processed to display the updated information. *See id.*

An example of this process might be a user who wants to follow the score of a sports game. The user informs the system that the user wants updates as they become available. The system registers the information needed to track the request and to push any updates to the user. When the score changes, the system creates a new update message and routes that through the system components to the correct user using the information that identifies the user and destination.

Southwest argues that Claim 14 of the '722 Patent is "directed to the abstract idea of subscription-based content distribution to registered recipients when new information becomes available." Dkt. No. 100 at 21 (caps omitted). According to Southwest, this abstract idea is not a new concept and does not improve the way that a computing system functions. *See id.* at 20-21. Instead, it is an old concept of subscription-based content updates. *See id.* According to Southwest, the only difference between this well-known routine practice and Claim 14 is that the process in Claim 14 is performed using a computer. *See id.*

Intellectual Ventures argues that Claim 14 is not directed toward an abstract idea and that, even if it were, it contains inventive components that make it a concrete

limited implementation of that abstract idea. *See* Dkt. No. 112 at 18-24. Intellectual Ventures also argues that the claim describes an invention that improves the way a computer functions by providing a new and unexpected manner of providing live updates to users. *See id.* at 23.

The undersigned agrees with Southwest that Claim 14 of the '722 Patent is directed toward an abstract idea without an inventive concept and, so, finds that Claim 14 is invalid for attempting to claim subject matter that is not eligible for patent protection.

There are only two steps in Claim 14. Dkt. No. 97-2 at 28. The first is informing the system which user wants what kind of live update. *See id.* The second is sending an update when the information changes. *See id.* Considering all the elements individually and as an ordered combination in the whole, the undersigned finds that these two steps are directed toward the abstract concept of providing updated information. And, so, the claim fails Step 1 of *Alice*.

The other elements of Claim 14 are not steps. *See id.* Rather, they further describe how the information is routed using standard computing systems components. *See id.* And these additional claim elements do little to take Claim 14 out of the abstract. These elements are all directed toward using standard computing components for getting the new message to the correct destination and providing the update to the user.

An example of this process is one person – a boss – requesting that another person – an employee – provide the boss with updated information, such as a

transaction related to the operation of a business. The boss identifies to the employee the situation for which the boss wants an update. The employee monitors the information. When the information changes, the employee creates an update message and delivers it to the boss. This process would include the information and steps needed for the employee to identify how that message should be delivered to the boss.

Claim 14 does contain elements or limitations that, at first glance, appear to limit the application of the abstract idea. *See id*. These include claim language such as "live object," "routing network," "client device," "node," and "registered device." *Id*.

But these elements and limitations are not sufficient to make the claimed invention not abstract. Rather, they relate to how Claim 14's method would be accomplished using a computing system. In other words, they are generic computing components that are used to implement the abstract idea of providing updates as they become available.

To put the limitations in terms of the analogy above, these additional elements would be akin to the employee looking up the boss's telephone number and using a telephone to dial the correct number to contact the boss when the boss requested an update via telephone. Here, the additional elements of the claim are the routing elements that would be used to deliver the update via a computer. And generic computing components do not provide an inventive concept that makes an abstract idea a patentable concrete implementation of that abstract idea. *BSG Tech*, 899 F.3d at 1290-91. And, so, the claim fails Step 2 of *Alice*.

Intellectual Ventures, in its briefing, does not identify any elements that make

Claim 14 not abstract. Instead, Intellectual Ventures points to specific implementation details contained in the specification. But these implementation details do nothing to save this claim. The details are only in the specification of the patent. They are not in the claim itself. And, so, the abstract concept's implementation through the claim is not limited by the specification details.

Considering Claim 14's scope, abstract nature, and lack of inventive concept, the undersigned finds that the claim passes neither Step 1 nor Step 2 of Alice. The claim fails Step 1 of *Alice* because the claim is directed toward the abstract idea of providing updated information, a well-known routine activity practiced by humans. And the claim fails Step 2 of *Alice* because the additional claim elements add nothing to the abstract concept other than using generic computing concepts to implement the abstract idea. And the specification does little to support the conclusion that the claimed two-step method improves the way in which a computer functions. Instead, the specification describes what is claimed, which is the use of computers to provide live updates.

And, so, the undersigned finds that Southwest has met its burden to show, by clear and convincing evidence, that Claim 14 is invalid as a matter of law.

The Court should grant the Motion as to infringement of Claim 14 of the '722 Patent asserted under Count II of the complaint.

But, as explained above, Southwest does not sufficiently request the Court to apply its argument pertaining to Claim 14 equally to all claims of the '722 Patent. And, so, the Court should dismiss only causes of action arising out of Claim 14 of the

'722 Patent. The other claims of the '722 Patent should remain as live patent claims, to the extent that they are asserted by Intellectual Ventures in its complaint.

## D.  Claim 9 of the '090 Patent

Under Count VI of its complaint, Intellectual Ventures asserts that Southwest infringes claims of the '080 Patent. *See* Dkt. No. 97 at 34. The '080 Patent is entitled "Systems and Methods for Parallel Distributed Programing." Dkt. No. 97-16 at 12. The '080 Patent discloses and claims methods and systems related to operation of distributed programs where one program is executed by multiple processors. *See id.* at 12-13.

Southwest is unclear as to which claim of the '080 Patent it asserts is invalid. In its brief in support of the Motion, Southwest briefs Claim 1 of the '080 Patent. *See* Dkt. No. 100 at 24-28.  In its response, Intellectual Ventures contends that Southwest "incorrectly states that [Intellectual Ventures] charted [C]laim 1 as representative" because Claim 9 of the '080 Patent was specifically described as being infringed in the complaint. *See* Dkt. No. 112 at 25 n.9. And, so, Intellectual Ventures briefed the invalidity issue only in relation to Claim 9. *See id.* at 24-30. And, in its reply, Southwest briefs Claim 9 without reference to the fact that Southwest originally presented Claim 1 as being invalid. *See* Dkt. No. 119 at 16-18.

It appears that Southwest intended the Section 101 invalidity analysis to apply to Claim 9, not Claim 1, of the '080 Patent and that Southwest acquiesced to that assertion by briefing only Claim 9 of the '080 Patent in its reply. And, so, the Court's determination of validity regarding '080 Patent's claims should be limited to the

validity of Claim 9. And the undersigned treats Southwest's Motion as directed to Claim 9, not Claim 1, of the '080 Patent.

Claim 9 of the '080 Patent reads as follows:

9. A distributed parallel computing system, having at least one memory area and at least one processor, comprising:

at least one distributed shared variable capable of loading into the at least one memory area, wherein the at least one distributed shared variable is a single variable that includes several variables that may be physically loaded into the at least one memory area; and

at least one distributed sequential computing program, configured to operate in the at least one processor, configured to access the at least one distributed shared variable, and configured to transform into at least one distributed parallel computing program by spawning at least one child distributed sequential computing system program when at least one intermediate condition occurs within the at least one distributed sequential program, wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one spawned child distributed sequential computing program to perform parallel processing and/or operations, wherein the at least one intermediate condition comprising one intermediate result that will be required by the at least one spawned child distributed sequential computing program to continue computation.

Dkt. No. 97-16 at 17.

In general terms, Claim 9 of the '080 Patent is a system that implements a distributed parallel computing program. *See id.* In the specification, a parallel computing program is distinguished from a sequential computing program. *See id.* at 12. Like the names suggest, a parallel computing program performs multiple processes at the same time using multiple processors and multiple memory areas, while a sequential computing program performs processes one at a time in sequence, such as would occur when using a single processor and a single memory. *See id.*

The claimed invention requires (1) a distributed shared variable that is loaded onto at least one memory and (2) a distributed sequential program that can access the distributed shared variable and transform into a distributed parallel program. *See id.* at 17. The transformation is done by creating a child distributed sequential program when an intermediate condition occurs. *See id.* The original distributed sequential computing program and the child distributed sequential computing program execute in parallel so that both programs are processing something related to the application at the same time. *See id.* In addition, the intermediate condition, which triggered the transformation, includes at least one intermediate result that is required by the child distributed sequential computer program to continue computing. *See id.*

Southwest asserts that Claim 9 is "directed toward the abstract concept of dividing and conquering computing tasks." Dkt. No. 100 at 25. And it asserts that the claim does nothing more than use "generic" computer components to implement well-known routine human processes. *See id.* at 26. Southwest equates Claim 9's method to things such as using multiple movers to move multiple boxes at once, instead of one mover moving one box at a time; a head chef delegating meal preparation tasks to subordinate chefs so that each task can be simultaneously performed; or a general contractor assigning tasks to specialized crews, such as plumbers and electricians, who can each perform tasks required to construct a building at the same time. *See id.* at 24-25. Southwest argues that Claim 9's method does "nothing more than 'divide-and-conquer'" type of task division in a computing environment. *See id.* And, so,

Southwest asserts that the claim is invalid. *See id.*

Intellectual Ventures argues that Southwest ignores the claimed invention's improvement of the way computers perform distributed programming. *See* Dkt. No. 112 at 24. According to Intellectual Ventures, the claim contains several limitations that both limit the implementation of any abstract concept associated with the claim to a specific application and claim an improvement to the way that a computer functions. *See id.* at 26.

In particular, Intellectual Ventures points to the "distributed shared variable" and "intermediate condition" claim elements in support of these arguments. *Id.* at 24-26. According to Intellectual Ventures, the distributed shared variable and the intermediate condition are elements that would not be present in any routine "divide-and-conquer" situation and provide technical improvements to how distributed processing worked in the past. *Id.* at 28. Intellectual Ventures contends that these elements provide a non-routine, non-conventional manner of executing a distributed computing system. *See id.* at 29.

Considering the claim elements together, the undersigned finds that Southwest's abstraction of the claim is too broad and that its analogies to movers, chefs, or general contractors fail. Southwest is unable to explain how the distributed shared variable or the requirements of the intermediate condition fit into Southwest's proposed abstract concept or analogies.

On the record before the Court, the distributed shared variable and intermediate condition elements appear to do exactly what Intellectual Ventures

asserts that they do – implementing a new way to perform distributed computing that is not an abstract concept.

And, even if the claim were directed toward an abstract concept, the claim contains additional elements that, on the record before the Court, make the claim something more than mere implementation of that abstract concept.

And, so, the undersigned finds that Southwest has not met its burden to show that Claim 9 of the '080 Patent is invalid under 35 U.S.C. § 101. Based on the specification, the claim language, and the pleadings, Claim 9 passes at least Step 1 of *Alice* by claiming an invention that is non-routine and provides an improvement to the way a computer system functions. Claim 9 is not invalid under *Alice*.

The Court should not dismiss Intellectual Ventures's claims based on Claim 9 of the '080 Patent.

## III.   <u>Pre-Suit Patent Infringement Damages</u>

Southwest asserts that the Court should dismiss all claims for pre-suit patent infringement damages because Intellectual Ventures has not pleaded, and cannot plead, marking or pre-suit notice allegations to support pre-suit infringement damages. *See* Dkt. No. 100 at 28. Intellectual Ventures responds that it has fully pleaded the marking allegations required to support pre-suit damages. *See* Dkt. No. 112 at 30-34.

As set out above, 35 U.S.C. § 287 governs marking requirements and the effect on damages of marking or failing to mark patent products. It states that, "[i]n the event of failure to mark, no damages shall be recovered by the patentee in any action

for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice." 35 U.S.C. § 287(a).

When a patent owner fails to mark patented products in an approved manner, the damages period does not start until the alleged infringer receives actual notice of the infringement allegations. *See id*. A patent owner who fails to comply with the marking statute and who does not otherwise show pre-suit notice of infringement to an alleged infringer cannot recover pre-suit damages for patent infringement because the alleged infringer did not receive constructive or actual knowledge of the alleged infringement prior to commencement of the lawsuit. *See id*.

Intellectual Ventures asserts that it has complied with the statutory marking requirements to the extent possible. Specifically, Intellectual Ventures asserts:

168. Plaintiffs do not make or sell products and thus have no products to mark.

169. To the extent any of the Patents-in-Suit include only asserted method claims, the marking requirement of 35 U.S.C. § 287 for those Patents-in-Suit does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 for those Patents-in-Suit, such that it is entitled to past damages for infringement.

170. Plaintiffs have entered into settlement licenses with other entities. None of the settlement licenses were to produce a patented article for Plaintiffs or under the Patents-in-Suit. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this Complaint, but discovery will show that Plaintiffs have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the entities in the settlement licenses denied infringing any of the Patents-in-Suit and thus were not entering into the settlement license to produce a patented article for Plaintiffs or under the Patents-in-Suit.

> 171. Each settlement license that was entered into between an entity and Plaintiffs was negotiated in the face of continued litigation and while Plaintiffs believe there was infringement, no defendant entity agreed or admitted that it was infringing.

Dkt. No. 97 at 48-49.

The above excerpts from Intellectual Ventures's complaint are the only allegations regarding its compliance with the marking statute's requirements and its right to seek pre-suit patent infringement damages.

Southwest argues that such pleadings are insufficient to support an award of pre-suit patent infringement damages. *See* Dkt. No. 100 at 29-30.

Based on the above allegations, the undersigned finds that, to the extent that Intellectual Ventures asserts pre-suit patent infringement damages for claims that are not method claims, Intellectual Ventures is not entitled to pre-suit damages.

By its own admission, Intellectual Ventures does not make any products that are covered by the patents-in-suit. *See* Dkt. No. 97 at 48-49. So Intellectual Ventures has not, and cannot, show any marked products. Also, while Intellectual Ventures asserts that it has entered into licensing agreements with third parties regarding the patents-in-suit, Intellectual Ventures has, by its own admission, not required its licensees to mark any of their products because the parties to the license agreements did not agree that any of the licensees were producing products covered by the patents-in-suit. *See id.* These allegations make clear that Intellectual Ventures did not and cannot mark any patented products either directly or through its licensees.

And Intellectual Ventures provides no legal support for its conclusion that a

patent owner with no products to mark is excused from the consequences of failing to mark described in Section 287(a) with respect to non-method patent claims.

Intellectual Ventures appears to argue that it has complied with, or is excused from, the marking requirements of Section 287(a) because of Intellectual Ventures's limitations on accused products in this litigation. *See* Dkt. No. 112 at 30-32. Intellectual Ventures asserts that it "expressly excluded licensed products from the products or systems it is accusing" in this matter. *Id.* at 31 (emphasis omitted). But Intellectual Ventures does not provide any legal support for the conclusion that the scope of the accused products in a particular litigation matter has any bearing on whether or not a patent owner can show that it marked products in accordance with the statutory provisions.

Intellectual Ventures also argues that Southwest bears the burden of production to assert unmarked products that practice the claimed invention if Southwest wishes to challenge the sufficiency of Intellectual Ventures's marking allegations. *See id.* at 30. This argument also fails. Southwest's burden to identify what it believes are unmarked products that practice the patents-in-suit does not relieve Intellectual Ventures's initial burden to initially at least plead facts supporting compliance or relief from the statutory marking requirements. That is, Southwest's burden to identify unmarked products that practice the claims of the patents-in-suit is not triggered until after Intellectual Ventures properly pleads compliance with the marking statute. Intellectual Ventures did not plead that it marked products – instead, it pleaded that it does not mark products.

But the marking requirements of Section 287 do not apply to allegations of infringement for method claims because there is no product to mark related to a method claim. *See Crown Packaging Tech.*, 559 F.3d at 1316-1317. And, so, insofar as Intellectual Ventures asserts method claims, the undersigned finds that it not precluded from seeking pre-suit damages as to those claims.

The Court should grant the Motion as to all assertions of Intellectual Ventures's right to recovery of pre-suit damages for allegations of infringement based on non-method patent claims. But the Court should deny the Motion regarding pre-suit patent infringement damages because patent owners are relieved from marking in the case of method claims.

### Recommendation

The Court should grant in part and deny in part Defendant Southwest Airlines Co.'s Motion to Dismiss [Dkt. No. 99] the claims of Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC. The Court should:

Deny the Motion regarding the assertion that Intellectual Ventures has not adequality pleaded facts to show plausible infringement of the patents-in-suit;

Deny the Motion regarding the 35 U.S.C. § 101 assertion that Claim 1 of the '582 Patent is invalid;

Deny the motion to dismiss regarding the 35 U.S.C. § 101 assertion that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are invalid;

Grant the Motion regarding the 35 U.S.C. § 101 assertion that Claim 14 of the '722 Patent is invalid and dismiss Intellectual Ventures's claims arising out of Claim

14 of the '722 Patent with prejudice;

Deny the Motion regarding the 35 U.S.C. § 101 assertion that Claim 9 of the '080 Patent is invalid;

Grant the Motion regarding the assertion that Intellectual Ventures is not entitled to recovery of pre-suit patent infringement damages for infringement of non-method claims and dismiss that claim with prejudice; and

Deny the Motion regarding the assertion that Intellectual Ventures is not entitled to recovery of pre-suit patent infringement damages for infringement of method claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 13, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE