**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 3:25-cv-02885-L-BN** |
| | § | |
| **v.** | § | **Consolidated with 3:25-cv-03097-L** |
| | § | |
| **SOUTHWEST AIRLINES CO.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S OBJECTIONS TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

---

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. PROCEDURAL BACKGROUND ..... 1
III. STANDARD OF REVIEW ..... 2
IV. OBJECTIONS ..... 3
A. Objection 1: Representative Claims ..... 4
B. The § 101 Analyses ..... 7
1. Objection 2: Framing of Southwest's Burden under § 101 ..... 7
2. Objection 3: The '582 Patent ..... 9
3. Objection 4: The '282 and '844 Patents ..... 13
4. Objection 5: The '722 Patent ..... 17
5. Objection 6: The '080 Patent ..... 19
C. Objection 7: The Marking Requirement ..... 22
V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....23

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).... *passim*

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993)....23

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....8

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024)....11

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....11, 14

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....13

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026).... *passim*

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)....15

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024)....6

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025)....15

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023)....10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....8

*Simio, LLC v. FlexSim Software Products, Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....10, 17, 18

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023)....10, 17

*Trs. of Columbia Univ. in City of N.Y. v. Gen Digital, Inc.*,
169 F.4th 1320 (Fed. Cir. 2026) .......... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017).......... 9, 11

**Statutes**

35 U.S.C. § 101 .......... *passim*

35 U.S.C. § 282.......... 8

35 U.S.C. § 287 .......... *passim*

## I. INTRODUCTION

The magistrate judge's Findings, Conclusions, and Recommendation ("FCR") on Southwest's Rule 12(b)(6) motion (Dkt. 159) presents recurring errors that warrant *de novo* correction. The FCR properly recognized that Claim 14 of the '722 Patent is invalid under 35 U.S.C. § 101 because it is directed to an abstract idea implemented with generic routing components. But it declined to apply that same claim-focused analysis across the other challenged patents, instead crediting conclusory allegations of technological improvement and treating functional computer language as enough to avoid dismissal at the pleading stage. The FCR also imposed a clear-and-convincing evidentiary burden on the legal step-one inquiry under *Alice*, refused representative-claim treatment despite IV's own claim charts and Southwest's claim-wide request for relief, and stated 35 U.S.C. § 287's method-claim carve-out more broadly than Federal Circuit law permits. Southwest therefore objects to the portions of the FCR recommending denial of its Motion to Dismiss (Dkt. 99 and 100) and asks the Court to sustain its objections, dismiss the challenged claims under § 101, and clarify that § 287 bars pre-suit damages for method claims asserted from patents that also assert apparatus or system claims where marking was required.

## II. PROCEDURAL BACKGROUND

IV filed the operative Complaint in this consolidated action on December 22, 2025, asserting eight patents: U.S. Patent Nos. 8,332,844; 8,407,722; 8,027,326; 7,324,469; 7,257,582; 7,712,080; 7,721,282; and 11,032,000. Amended Complaint, Dkt. 97 at 1. Southwest then filed the Rule 12(b)(6) Motion to Dismiss (the "Motion") at issue here, seeking dismissal on three separate grounds. Dkt. 99 and 100. *First*, Southwest moved to dismiss the '582, '282, '844, '722, and '080 Patents as invalid under § 101. Dkt. 100 at 2–21. *Second*, Southwest sought dismissal of IV's request for pre-suit damages for failure to plead compliance with the marking and notice

requirements of § 287. *Id.* at 21–23. *Third*, Southwest moved to dismiss IV's infringement claims for failure to identify specific infringing uses of the accused technologies. *Id.* at 23–25.

On August 13, 2026, Magistrate Judge Horan issued the FCR now before the Court. Dkt. 159. The FCR recommends granting Southwest's Motion in part and denying it in part. FCR at 41–42. It recommends dismissing with prejudice the claims based on Claim 14 of the '722 Patent under § 101 and IV's pre-suit damages claims for non-method claims. *Id.* at 30–32, 39–42. But it recommends denying the rest of the Motion, including Southwest's § 101 challenges to the remaining patent claims and its request to bar pre-suit damages for method claims under § 287 where the same patents assert both method and system/apparatus claims. *Id.* at 16–17, 20–22, 26–27, 32–37, 40–42. Southwest now files its objections to the FCR.

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the district court must review de novo those portions of the FCR to which a specific objection is made. An objection must identify the specific finding or recommendation challenged, state the basis for the objection, and specify where in the FCR the disputed determination appears. FCR at 42–43. These objections do so by identifying the FCR's representative-claim ruling, its step-one analyses for each challenged patent, its allocation of the evidentiary burden, and its marking ruling, and by citing the pages where those determinations appear.

The Court owes no deference to the FCR's legal conclusions regarding patent eligibility under § 101. Section 101 eligibility follows the two-step framework of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). At step one, the Court asks whether the claim is directed to a patent-ineligible concept, such as an abstract idea. The step-one inquiry asks "what the patent asserts to be the focus of the claimed advance over the prior art," focusing on the claim language read in light of the specification and, where appropriate, the prosecution history. If the claim is

directed to an abstract idea, step two asks whether the claim's elements, individually and as an ordered combination, contain an inventive concept that amounts to "significantly more" than the abstract idea itself. *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1063 (Fed. Cir. 2026); *Alice*, 573 U.S. at 217–18; FCR at 7–8.

## IV. OBJECTIONS

Southwest objects to the FCR on seven grounds. *First*, Southwest objects that the FCR refused to treat the charted claims as representative of the other asserted claims, even though Southwest sought claim-wide relief, used the same representative claims IV charted in its complaint, and IV did not identify any distinctive limitations that would change the § 101 analysis. *Second*, Southwest objects to the FCR's framing of the § 101 burden because patent eligibility is a legal question that may be resolved at the pleading stage, and the FCR improperly required Southwest to prove disputed facts by clear and convincing evidence before the Court could decide what the claims are directed to. *Third*, Southwest objects to the FCR's ruling on the '582 Patent because Claim 1 recites only an abstract rule for allocating distributed-computing work—not a claimed technological mechanism for improving computer operation. *Fourth*, Southwest objects to the FCR's ruling on the '282 and '844 Patents because the claims allegedly organize and store information using functional language and generic computing concepts, and limiting that abstract idea to a distributed-application environment does not make it patent eligible. *Fifth*, Southwest objects to the FCR's refusal to extend its § 101 ruling on Claim 14 of the '722 Patent to dependent Claims 16–18, arguing those claims add only conventional registration and routing steps. *Sixth*, Southwest objects to the FCR's ruling on the '080 Patent because Claim 9 allegedly claims the abstract divide-and-conquer concept for distributed computing, and its distributed shared variable and intermediate-condition limitations do not supply an inventive concept. *Seventh*, Southwest objects to the FCR's method-claim carve-out under § 287; when the same patent asserts both

system/apparatus and method claims and a tangible item could have been marked, the marking requirement applies patent by patent to the asserted method claims as well as the system claims.

The Court should review the challenged portions of the FCR de novo, sustain Southwest's objections, and grant Southwest's Motion to the extent set out below.

### A. Objection 1: Representative Claims

The FCR erred in refusing to consider the challenged claims as representative of the other asserted claims for purposes of the Motion.

The FCR recognized that Southwest challenged the '582, '282, '844, '722, and '080 Patents under § 101 and briefed one claim for each patent—the claim IV had "charted as representative" in the Complaint. *Id.* at 15. The FCR also correctly recognized that a court may treat one claim as representative when the parties agree to that treatment or when the patentee fails to identify distinctive limitations in the other claims. *Id.* at 16. But the FCR declined to treat the charted claims as representative here, concluding that Southwest had not "clearly assert[ed]" that its § 101 analysis should extend beyond the specifically briefed claims. It therefore refused to decide whether that analysis applied to the remaining claims of each patent—even though, as shown below, the charted claim and the unbriefed claims of each patent rise or fall together, because the § 101 analysis does not differ in any way material to eligibility from one claim to the next.

The briefing history establishes that both parties treated the charted claims as representative. IV's Complaint identifies only a single "example" claim for each patent-in-suit and presents claim charts mapping that single claim to Southwest's accused technologies. Dkt. 97 (Exs. 8–15). Following IV's lead, Southwest filed its Motion (Dkt. 100) presenting its § 101 analyses using those same representative claims. *Id.* at 4, 9, 14, 18. Indeed, Southwest's Motion notes that the claims presented in its § 101 analysis are representative and treats them as such. *See* Dkt. 100 at 4 ("Claim 1 [of the '582 Patent], charted as representative, recites in relevant part:"), 9 ("The

’282 Patent claims a system for organizing and storing information, with claim 1 charted as representative for Count VIII (Dkt. 97-15)”; “The ’844 Patent claims methods for organizing and storing information, with claim 7 charted as representative for Count I (Dkt. 97-7)”), 14 (“Claim 14 [of the ’722 Patent] is charted as representative.”), 18 (“Claim 1 [of the ’080 Patent] is charted as representative”). IV’s Response to the Motion does not challenge that framing: it addresses only the representative claims and raises no argument that any unbriefed claim contains a distinctive limitation bearing on the § 101 analysis. *See generally* Dkt. 112 (addressing arguments on the representative claims and failing to challenge representativeness). Indeed, IV confirmed that the parties were proceeding on a representative-claim basis when it disputed only *which* claim was representative of the ’080 Patent—not *whether* the claims should be treated as representative. IV explained that it had charted claim 9, rather than claim 1, and accordingly directed its § 101 arguments to claim 9. *Id*. at 20 n.9.

The FCR nevertheless declined representative treatment, reasoning that Southwest did not “clearly assert that the Court should apply its analysis of the briefed claims to any or all of the other claims.” FCR at 16. That conclusion is wrong for two independent reasons.

*First*, Southwest did request claim-wide relief. The FCR itself recognized that Southwest’s Motion “requests that the Court dismiss, in their entirety, all claims of patent infringement asserted under each count.” FCR at 15. Southwest’s Motion identified the charted claims as representative of the asserted claims (as did the Complaint) and sought dismissal of the corresponding counts—not just the representative claims. IV understood the Motion the same way and responded only as to the charted claims. The magistrate judge nevertheless declined representative treatment. The FCR’s finding that Southwest requested claim-wide relief cannot be reconciled with its conclusion that Southwest did not clearly seek representative treatment. As explained below, Southwest does

not ask the Court to extend any § 101 ruling automatically; it asks only that, if the Court sustains these objections, the Court apply that determination to the other asserted claims of each patent, which stand or fall with the representative claims.

*Second*, the Federal Circuit's intervening decision in *GoTV Streaming*—issued after the parties completed briefing on the Motion—confirms the standard. 166 F.4th at 1061 n.2. *GoTV Streaming* arose at the pleading stage, on a Rule 12(c) motion for judgment on the pleadings, which is governed by the same standard as a Rule 12(b)(6) motion. *Id.* at 1058. There, the plaintiff accepted the defendant's representative claim for eligibility purposes by making no separate argument for other claims. *Id.* at 1061 n.2. The court treated the briefed claim as representative without requiring a separate procedural motion or express stipulation. *Id.* That is precisely what occurred here: IV addressed only the charted claims and identified no distinctive limitation in any other claim that would change the § 101 analysis. On that record, the charted claims are representative.

The Federal Circuit's decision in *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290–94 (Fed. Cir. 2024), reinforces the point. A challenger who identifies a representative claim and shows that the grouped claims are substantially similar and linked to the same ineligible concept shifts the burden to the patent owner to identify a nonfrivolous basis—such as an additional limitation having distinctive significance to the eligibility analysis—for treating the claims separately. *Id*. at 1291–92. A patent owner who fails to make that showing forfeits any argument that the represented claims remain eligible despite the representative claim's ineligibility. *Id*. at 1292. IV made no such showing here.

The five challenged patents contain 126 claims in total, yet IV's Complaint charts only a single representative claim for each patent. *See* Dkt. 97. Requiring a claim-by-claim § 101 analysis

of all 126 claims—when the patentee itself treated one claim as representative of each patent—would be impractical and contrary to the Federal Circuit's approach to representative claims.

Southwest sought claim-wide relief, framed its § 101 analysis around the claims IV charted as representative, and IV identified no distinctive unbriefed limitation that would change the § 101 analysis. On that record, the charted claims should be treated as representative, and the FCR should have resolved the challenged counts on that basis.

### B. The § 101 Analyses

#### 1. Objection 2: Framing of Southwest's Burden under § 101

The magistrate judge committed two independent analytical errors at *Alice* step one for four of the five challenged patents—the '582, '282, '844, and '080 Patents. First, the FCR erred in its framing of Southwest's burden under *Alice* step one. *See Alice*, 573 U.S. at 217–18. The FCR states that Southwest failed, "where plausible allegations must be taken as true," to show "by clear and convincing evidence" that the challenged claims of the '582, '844, '282, and '080 Patents are invalid under § 101. *Id.* at 16–17. But eligibility under § 101 is a question of law that may be resolved on a motion to dismiss when the claims and incorporated patents establish the relevant focus and no factual allegation prevents resolution as a matter of law. *Id.* at 7–9. The FCR's clear-and-convincing framing improperly required Southwest to prove disputed facts before the Court could decide the legal step-one question of what the claims are directed to.

The FCR effectively collapsed *Alice* step one into a benefits-and-plausibility inquiry for the '582, '282, '844, and '080 Patents. Rather than identifying what each patent asserts to be the focus of the claimed advance over the prior art and asking whether that advance is technological or abstract, the FCR credited computer-specific claim language, allegations that the claimed arrangement was new or more efficient, and benefits described in the specification, and on that basis concluded that each claim improved computer functionality. The FCR's own analysis of

Claim 14 of the ’722 Patent illustrates the proper approach: it looked through the computer-specific terminology to identify what Claim 14 actually accomplishes and declined to credit implementation details appearing only in the specification. FCR at 30–32. The same methodology should have applied to the other challenged patents, but it did not.

Second, the FCR also applied the wrong evidentiary standard at step one. Step one presents a legal question: what the claims are directed to, as determined from the claims in light of the specification and, where appropriate, the prosecution history. Step two presents a subsidiary factual question: whether the claim elements, individually and as an ordered combination, are well-understood, routine, and conventional under *Berkheimer*. The clear-and-convincing standard applies to that step-two factual inquiry; it does not apply to the legal step-one determination of what the claims are directed to. *See SAP Am., Inc. v. InvestPic*, *LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365, 1368 (Fed. Cir. 2018). As the party asserting invalidity, Southwest bears the ultimate burden of proving ineligibility by clear and convincing evidence. *See* 35 U.S.C. § 282. But that burden attaches to factual questions at step two, not to the Court’s legal step-one determination of what the claims are directed to.

At this pleading stage, the Court decides that legal question by considering the claims in light of the specification and the prosecution history. The FCR nevertheless repeatedly denied the Motion because Southwest “has not met its burden to show by clear and convincing evidence that the asserted patent claims are invalid under Section 101.” FCR at 17; *see also* FCR at 22, 27, 36. By requiring Southwest to satisfy the clear and convincing evidence standard at step one, the FCR effectively insulated the challenged claims from the legal inquiry that *Alice* demands at the pleading stage. As this error shows, the FCR did not conduct a proper step-one inquiry.

### 2. Objection 3: The ’582 Patent

The FCR erred by concluding at *Alice* step one that Claim 1 of the ’582 Patent is not directed to an abstract idea. The FCR credited IV’s allegations and the patent specification’s assertions that Claim 1 claims a new way to improve distributed computing, increase processing power, and improve processing efficiency. *Id.* at 20–21. It then concluded that Claim 1 is not directed to processing data or splitting work into subtasks, but instead to “detailed steps” for performing subtasks through a “new and specific process” that provides a “concrete improvement in functionality.” *Id.* at 21–22. That analysis identifies the alleged benefit of the claim, but not any claimed technological means that produces it. Claim 1 recites only functional steps for subdividing work, distributing partition descriptions, and processing additional partitions on a first-come, first-served basis. The claim is directed to an abstract allocation rule, not a technological improvement in computer operation. *See Two-Way Media Ltd. v. Comcast Cable Commc’ns, LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017); *GoTV Streaming*, 166 F.4th at 1063–64. The FCR erroneously concluded that Claim 1 of the ’582 Patent is not directed to an abstract idea.

Claim 1 of the ’582 Patent is directed to an abstract scheduling rule, not a technological improvement. The same analysis applies to each asserted claim. The claim’s functional steps—partitioning an input file, distributing descriptions of partitions, executing subtasks in parallel, assigning additional partitions on a first-come/first-served basis, and combining the outputs—describe the allocation of work and the desired result without claiming a new processor, data structure, scheduling mechanism, or other technological means for achieving it. The FCR nevertheless concluded that Claim 1 is not directed to processing data or splitting work into subtasks, but instead is directed to “detailed steps” for performing subtasks through a “new and specific process” that provides a “concrete improvement in functionality.” FCR at 21–22. That is a high-level description of the alleged benefit of the claim, not any claimed technological means

that produces it. The FCR's statement that Southwest's abstraction is "too broad and disconnected from the claim elements," *id.* at 21, does not answer what the patent asserts to be the claimed advance over the prior art.

First, although plausible factual allegations are taken as true on a Rule 12 motion, the Court must "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *accord Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365–66 (Fed. Cir. 2023). A conclusory assertion that a claim reflects a technological improvement is entitled to no weight, even when it is echoed in both the Complaint and the patent's specification.

In *Trinity Info Media*, for example, the Federal Circuit rejected conclusory allegations in a complaint that (a) the prior art lacked certain claimed features and (b) the claimed invention represented a significant advance over the prior art. 72 F.4th at 1366 ("These conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept."). In *Simio*, the Federal Circuit likewise rejected such conclusory statements and affirmed the district court's determination that allowing amendments to the complaint to add more conclusory statements would be futile. 983 F.3d at 1365. Indeed, nothing in the Complaint, even if taken as true, can alter what the Patents themselves state. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (affirming a district court's rejection of proposed amendments that "sought to add conclusory statements that the claimed steps were not well-known, routine, and conventional. The district court was not required to credit such conclusory allegations."; "No amendment to a complaint can alter what a patent itself states.").

The FCR credited the kind of conclusory allegations that the Federal Circuit has held are insufficient. For example, on page 20, the FCR notes that IV's Complaint and the patent's

specification allege "these steps are not conventional steps used in distributed-computing data processing." It then relies on those allegations at *Alice* Step one, stating that "the complaint and patent specification both allege that Claim 1 of the '582 Patent claims a new and useful manner of operating a computer system that is not the manner in which a computer was expected to operate at the time of the described invention, that improves the state of the art related to distributed computing, and that increases the processing power and efficiency of distributed processing." FCR at 20–21. By crediting those allegations, the FCR did what the Federal Circuit cautions courts not to do. Southwest therefore objects to pages 20–21 of the FCR to the extent they credit IV's conclusory allegations to support patent eligibility under § 101.

Second, on page 21, the FCR correctly notes that Claim 1 recites five data processing steps, yet it finds that the claim as a whole is not directed to the abstract idea of processing data or splitting work into subtasks. "Instead, the Claim describes the detailed steps required for a computing system to perform these subtasks using a new and specific process that provides a concrete improvement in functionality." FCR at 21. The FCR overlooked that the claim uses purely functional, results-oriented language (e.g., "logically subdividing records," "distributing descriptions," and "simultaneously executing . . . subtasks") without describing *how* to perform those steps or achieve those results (e.g., *how* to logically subdivide records or *how* to schedule tasks on a first-come/first-served basis). This is the "result-focused functional language" that the Federal Circuit has repeatedly held insufficient. *See Two-Way Media*, 874 F.3d at 1337–38; *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *see also GoTV Streaming*, 166 F.4th at 1064. Claims that specify results without specifying *how* the purported invention achieves them "are almost always found to be ineligible for patenting under Section 101." *Beteiro,* 104 F.4th at 1356.

Intervening Federal Circuit authority confirms the point. The Federal Circuit held in *Gen Digital* that "a divide-and-conquer approach where multiple computers collaborate on a single task is an abstract idea," and that the resulting efficiency gain from using multiple collaborating computers is itself no more than that abstract idea. *Trs. of Columbia Univ. in City of N.Y. v. Gen Digital, Inc.*, 169 F.4th 1320, 1330 (Fed. Cir. 2026). Claim 1 does exactly that. It divides a task into subtasks, assigns them to multiple processors, repeats the assignment as processors become available, and combines the outputs. The claim's first-come/first-served detail is an allocation rule, not a technological mechanism. The FCR therefore failed to ask "what the patent asserts to be the claimed advance over the prior art." *GoTV Streaming*, 166 F.4th at 1063.

The prosecution history confirms that the claimed advance is an allocation rule, not a technological mechanism. The applicant characterized first-come/first-served scheduling as the "primary difference" between the claimed invention and the prior art and analogized the prior art to a stoplight with centralized scheduling, as opposed to a four-way stop where cars take turns without a centralized controller. Dkt. 100 at 4–5, Ex. A-3 (Appx. 33). This admission identifies the claimed advance as a rule for allocating work, not a technological mechanism. It says nothing about a new processor, memory architecture, scheduling algorithm, or other means for carrying out the allocation. A four-way stop is a human queue-management practice; placing that rule on a computer does not change its abstract character.

The FCR's characterization of Claim 1 as a "particular method for performing steps to accomplish load balancing" that provides concrete improvements does not cure the step-one error. The claim does not explain *how* to perform the claimed steps, and load balancing is itself an abstract organizational objective. "Only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond . . . an abstract idea and sufficient to render the

claim eligible." *GoTV Streaming*, 166 F.4th at 1061. Because the claimed advance is the allocation rule, not a claimed technological means, the FCR's reliance on specification-described efficiency cannot move the claim past step one.

Nor does the first-come/first-served limitation change the analysis. Distributing descriptions of all partitions and processing additional partitions on a first-come/first-served basis makes the allocation rule more specific, but specificity in an abstract methodology is not the same as specificity in a technological means of carrying it out. A claim may prescribe in detail *how work is allocated* without claiming any mechanism that changes how the computer operates. That distinguishes *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336–39 (Fed. Cir. 2016), where the claimed advance was a self-referential data structure that changed how the computer stored and retrieved information. Here, the claimed advance is the decentralized rule by which available work is allocated, and the efficiency it produces does not convert that rule into new computer technology. *See Gen Digital*, 169 F.4th at 1330.

Because Claim 1 recites only result-focused functional language and never specifies *how* the claimed steps achieve any purported improvement, Southwest objects to pages 21–23 of the FCR to the extent they conclude that Claim 1 is directed to a patent-eligible improvement rather than an abstract idea under § 101.

### 3. Objection 4: The '282 and '844 Patents

The FCR erred in ruling that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are not abstract at *Alice* step one. The FCR acknowledged that those claims are "ultimately used to organize and store information," but found them eligible because their "detailed elements" limit that abstract idea to a "concrete application." *Id.* at 26. The FCR relied on the pleadings and specifications to conclude that the claims describe a new distributed-application environment that eliminates wasted data-transfer and processing time and improves response times. *Id.* at 26–27.

That reasoning conflicts with the FCR's own legal standard that limiting an abstract idea to a particular technological environment does not make it patent eligible. *Id.* at 8. The '282 and '844 claims recite functional storage, root-image, leaf-image, merging, and caching concepts. They do not claim a technological mechanism that changes how computers operate. *See Alice*, 573 U.S. at 223; *GoTV Streaming*, 166 F.4th at 1065–66. Accordingly, the FCR erred in concluding that Claims 1 and 7 are not directed to abstract ideas at *Alice* step one.

Claim 1 of the '282 Patent[1] and Claim 7 of the '844 Patent (and all the asserted claims in these patents) are directed to the abstract idea of organizing and storing information, not to a technological improvement in how a computer operates. Southwest objects because the FCR treated the claims' detailed implementation as sufficient to convert that abstract idea into an eligible one, even though the claims use functional, results-oriented language and do not claim a technological mechanism sufficient to change the eligibility analysis.

The FCR acknowledged that the '282 and '844 claims are "ultimately used to organize and store information," which is an abstract idea, but upheld them because "the detailed elements of the claims limit application of such an abstract idea to a concrete application." FCR at 26. That is precisely the "without more" that cannot confer eligibility. The FCR itself recited the rule that "[l]imiting a claim to a 'particular technological environment . . . is, without more, insufficient to transform' a claim directed toward an abstract idea into a patent-eligible idea." FCR at 8 (quoting *Elec. Power Grp.*, 830 F.3d at 1354). The FCR's step-one holding therefore rests on precisely the reasoning that its own legal standard says is insufficient.

---

[1] IV represented that it intends to sever and stay its claims under the '282 Patent pending appeal of a claim construction ruling by Judge Mazzant holding that the asserted claims of the '282 Patent are invalid as indefinite. *See* Dkt. 161 at 1 n.1; *id.* at Ex. 2 (Judge Mazzant's claim construction opinion and order).

Nor does the caching limitation in representative Claim 7 of the ’844 Patent supply the missing technological improvement. The FCR described the ’844 Patent as adding “some caching and indexing concepts” to the ’282 Patent’s distributed-application disclosure and noted that the asserted caching benefit was improved access time. FCR at 23, 25. But Claim 7 still recites the functional result of caching accessed root-image blocks, not a claimed technological mechanism for improving computer operation.

The Supreme Court and Federal Circuit “have long recognized that ‘[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment.’” *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015)); *Alice*, 573 U.S. at 223 (“[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea while adding the words ‘apply it’ is not enough for patent eligibility. Nor is limiting the use of an abstract idea to a particular technological environment.”) (cleaned up). Accordingly, Southwest objects to the FCR’s finding and recommendation that the ’844 and ’282 Patent claims “pass Step 1 of *Alice*” because they “limit application of such an abstract idea to a concrete application.” FCR at 26, 27.

Second, after the parties’ briefing on Southwest’s Motion, the Federal Circuit issued a decision holding that similar claims were directed to an unpatentable abstract idea. *See generally GoTV Streaming*, 166 F.4th 1053. The representative claim recited a server that receives a request from a device for an application program and returns a template that is partly generic and partly tailored to the requesting device’s constraints. *Id.* at 1058, 1065. The court held that the claim was directed to the abstract idea of a template generic in some respects and tailored in others, analogizing it to “a pattern specifying many but not all details for a dress or trousers (with tailoring

for final production to fit a particular body . . .) or a kitchen-cabinet blueprint (tailorable to height and length wall measurements).” *Id.* at 1065. And it further held that the claim’s “calling for collecting and combining information for presentation to the rendering devices does not provide a focus on an advance in non-abstract ideas,” notwithstanding its computer-specific implementation language. *Id.*

Here, the representative claims call for storing a read-only root image (template), merging it with a customized leaf image, and, for the ’844 Patent, caching blocks. The FCR acknowledged that these claims are “ultimately used to organize and store information,” but upheld them because “the detailed elements of the claims limit application of such an abstract idea to a concrete application.” FCR at 26. Southwest’s objection is that confining an admitted abstract idea to a concrete application is precisely the “without more” that cannot confer eligibility. As *GoTV Streaming* recognizes, “[a]bstract ideas routinely encompass concrete examples.” 166 F.4th at 1066. A concrete example of organizing and storing information remains an abstract idea when the claims do not specify how the asserted functions are carried out. The FCR’s contrary statement that these claims “pass Step 1 of *Alice*,” FCR at 27, cannot be reconciled with its own rule that limiting a claim to a particular technological environment is, without more, insufficient to transform an abstract idea into a patent-eligible idea.

The FCR also relied on pleadings and specification statements that the representative claims present a “new way” of performing distributed application environments and produce technical benefits. FCR at 26–27. Those statements are conclusions about novelty, unexpectedness, and efficiency. The claims use functional language rather than claiming a technological mechanism sufficient to achieve those results or change the eligibility analysis. The Court may not convert unclaimed implementation detail or conclusory allegations into a technological improvement at

step one, because it must "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Simio*, 983 F.3d at 1365; *accord Trinity Info Media*, 72 F.4th at 1365–66. Even if there were any "different and unexpected" results, the claims do not claim the mechanism that produces them, and such conclusory statements cannot save the claims. *See GoTV Streaming*, 166 F.4th at 1064.

**4. Objection 5: The '722 Patent**

The FCR erred by limiting its '722 Patent ruling to Claim 14 alone. The FCR correctly looked through Claim 14's computer terminology and identified the claim's two operative steps: informing the system which user wants what kind of live update and sending an update when the information changes. *Id.* at 30. It correctly held that those steps are directed to the abstract idea of providing updated information, that the remaining routing elements merely use standard computing components, and that specification-only implementation details cannot save a claim that does not recite them. *Id.* at 30–32. But the FCR then limited dismissal to Claim 14 because it concluded that Southwest had not sufficiently requested representative-claim treatment. *Id.* at 32–33. The FCR erred in refusing to extend its holding to dependent Claims 16–18.

The FCR's analysis of Claim 14 is the model the other patents should have received. The FCR looked through the claim's computer-specific terminology to its two operative steps—informing the system which user wants what kind of live update, and sending an update when the information changes—and concluded that those steps "are directed toward the abstract concept of providing updated information." FCR at 29–30. It treated the remaining elements as merely "describ[ing] how the information is routed using standard computing systems components," which "do little to take Claim 14 out of the abstract." *Id.* And it declined to credit IV's reliance on "specific implementation details contained in the specification" because "[t]he details are only in the specification of the patent. They are not in the claim itself." FCR at 31. Southwest agrees with

that methodology and this substantive ruling; its objection concerns only the FCR's failure to extend the ruling to the dependent claims.

Southwest's Motion identifies Claim 14 as representative. IV's Opposition to the Motion likewise treated Claim 14 as representative: it argues that "the asserted claims" of the '722 Patent are valid under § 101, and its arguments focus only on representative Claim 14—the only one of the 37 claims in the '722 Patent that IV identified in its Amended Complaint.

Nevertheless, the FCR stated that Southwest "does not sufficiently request the Court to apply its argument pertaining to Claim 14 equally to all claims" and therefore limited the recommendation to Claim 14. FCR at 32. This is the same insufficient-request reasoning the FCR applied to representative claim treatment, as discussed above. But Southwest did request claim-wide relief. Its Motion identified Claim 14 as representative and requested dismissal of all claims asserted under the '722 count. The representative-claim argument seeks application of the ultimate § 101 determination to the asserted dependent claims.

Those added limitations do not change that determination. Claim 16 adds client-device registration with a node of the routing network. Claim 17 adds an actuation module executed by the client device that registers the live object with the routing network. And Claim 18 adds determining the node type that handles registration and registering the client device with the corresponding node. These are conventional routing and registration steps. They state what the client device or module does, not how it performs registration, activation, node-type determination, or routing. They therefore add no inventive concept to Claim 14's abstract method. Dependent claims that share the same abstract character as a representative claim share its fate. *Simio*, 983 F.3d at 1357 n.1. The Court should extend the FCR's Claim 14 recommendation to Claims 16–18.

**5. Objection 6: The ’080 Patent**

The FCR erred in its ruling on Claim 9 of the ’080 Patent. The FCR rejected Southwest’s abstraction as too broad and credited IV’s reliance on the “distributed shared variable” and “intermediate condition” limitations. *Id.* at 35–37. It concluded that those limitations appear to implement a new way to perform distributed computing, that the claim would contain “something more” even if directed to an abstract concept, and that Claim 9 “passes at least Step 1 of *Alice*” because it claims a non-routine improvement to computer functionality. *Id.* at 36–37. But Claim 9 recites an abstract computer software concept and uses functional language and generic hardware to claim it. *See Gen Digital*, 169 F.4th at 1330; *GoTV Streaming*, 166 F.4th at 1063. The FCR erred in finding Claim 9 was not directed to an abstract idea at *Alice* Step one.

The claims of the ’080 Patent are directed to the abstract idea of dividing and conquering computing tasks and lack an inventive concept beyond that idea. The FCR’s contrary reasoning treats the distributed shared variable and intermediate condition as technical improvements rather than asking what the patent asserts to be the focus of the claimed advance over the prior art.

The FCR declined to find the claims abstract, reasoning that the “distributed shared variable and intermediate condition elements appear to . . . implement[] a new way to perform distributed computing that is not an abstract concept,” and that, “even if the claim were directed toward an abstract concept,” it “contains additional elements that . . . make the claim something more than mere implementation of that abstract concept.” FCR at 36. On that basis the FCR concluded that Claim 9 “passes at least Step 1 of *Alice* by claiming an invention that is non-routine and provides an improvement to the way a computer system functions.” FCR at 36–37. As with the other patents, the FCR’s reasoning substitutes novelty and non-routineness for the required identification and classification of the claimed advance.

The FCR disagreed with Southwest's characterization of what the claims were "directed to" ("dividing and conquering computing tasks"), finding it too broad, and faulted Southwest for not explaining how the distributed shared variable or intermediate condition fits within Southwest's proposed abstract concept or analogies. FCR at 36. But those limitations do not alter the claimed advance; they describe how the abstract divide-and-conquer process is sequenced.

First, IV's reliance on the distributed shared variable and intermediate condition does not withstand scrutiny. *See* Dkt. 112 at 24–26. It is beyond reasonable dispute that a "distributed shared variable" is a known concept in the field of distributed computing—the face of the Patent identifies a prior art reference titled "Sharing Variables in Distributed Memory," and the Background of the Invention section describes prior art with data residing across multiple memories. '080 Patent at 1:31–2:2, Figs. 1(a), 1(b). The "intermediate condition" is simply the result of a computation performed on the first portion of the shared variable: "the computation on the next node is scheduled as soon as the dependency condition allows it. That is, since in the DSC the computation on the next node only depends on the intermediate result from part of the computation on the current node, as show[n] in Fig. 3(a), the thread can clone itself as soon as the computation of R is done, and have the clone hop to the next node carrying the intermediate result and continue the computation at the same time when it continues the computation of NR on the current node, as shown in Fig. 3(b)." '080 Patent at 7:54–62.

In other words, the concept of a distributed shared variable is nothing more than a set of information in which part of the set is stored in one memory and another part is stored in a different memory. Regarding the claimed "intermediate condition," Claim 9[2] explains what it is: the

[2] As the FCR correctly notes on page 33–34 and as IV recognized, Southwest's opening brief identifies Claim 1 as representative, while IV's Amended Complaint identifies Claim 9 as representative. Claim 1 is a method claim reciting steps substantially similar to the functions

"intermediate condition comprising one intermediate result that will be required by the at least one spawned child distributed sequential computing program to continue computation," which merely means that performing the computation on the second subset of stored information requires the result of the computation performed on the first subset of stored information.

These concepts therefore describe an abstract idea. The Federal Circuit confirmed that conclusion after the Motion briefing: in a March 11, 2026 decision, it held that "a divide-and-conquer approach where multiple computers collaborate on a single task is an abstract idea." *Gen Digital*, 169 F.4th at 1330. Southwest's chef analogy illustrates the same point: the distributed shared variable could be a dish made of multiple ingredients, and the intermediate condition arises when the first part of the dish is complete so that the second part can be finished; cook the noodles first (the intermediate condition), then add the sauce on top. *See* Dkt. 100 at 18. That is a fundamental human activity, and performing computations on a first subset of data and then working on the second subset is an abstract idea.

The FCR's alternative step-two holding is independently erroneous. FCR at 36–37. The FCR reasoned that, "even if the claim were directed toward an abstract concept," the distributed shared variable and intermediate condition made the claim "something more." But the distributed shared variable is admitted prior art on the face of the '080 Patent, which identifies "Sharing Variables in Distributed Memory" and describes data residing across multiple memories. The "intermediate condition" is merely the dependency requirement inherent in sequencing subtasks. It is the intermediate result needed before the child program can continue computation. Neither limitation supplies a technological mechanism or amounts to significantly more than the abstract

---

recited in system Claim 9. There are no differences between the claims that are relevant to the § 101 analysis.

divide-and-conquer idea, which *Gen Digital* confirms is an abstract idea at *Alice* step one. *See Gen Digital*, 169 F.4th at 1330. And an inventive concept must be "significantly more" than the abstract idea itself, which the abstract idea alone cannot supply. *Alice*, 573 U.S. at 217–18. Because Claim 9 adds only these conventional concepts and generic functions, it fails both steps of *Alice*.

**C. Objection 7: The Marking Requirement**

Finally, the FCR erred in its method-claim carveout from § 287. The FCR correctly held that IV's only marking allegations appear in paragraphs 168 through 171 of the Amended Complaint. *Id.* at 38–39. The FCR also correctly found that IV pleaded that it does not make products, did not mark products, did not require licensees to mark products, and therefore did not and cannot plead marking compliance for non-method claims. *Id.* at 39–41. But the FCR then concluded that, "insofar as Intellectual Ventures asserts method claims," IV is not precluded from seeking pre-suit damages because "patent owners are relieved from marking in the case of method claims." *Id.* at 41. That conclusion fails to apply the rule the FCR recited earlier: when a patent contains both apparatus and method claims, and there is a tangible item to mark, § 287 applies to all claims of that patent. *Id.* at 10–11. Southwest objects only to that patent-by-patent carveout. It does not ask the Court to impose any cross-patent marking rule.

The FCR reached the correct rule under § 287 at page 10, but it stated the method-claim carve-out too broadly at page 41 by recommending that IV may seek pre-suit damages on method claims simply because they are method claims. Southwest objects only to that overbroad formulation and requests clarification that the rule operates within a single patent.

Section 287's method-claim carve-out operates patent by patent. Under *American Medical Systems*, where a single patent contains both apparatus or system claims and method claims, and there is a tangible item to mark, the marking requirement applies to the asserted method claims of

that same patent. Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1538–39 (Fed. Cir. 1993). The rule does not transfer apparatus claims from one patent to method claims in another.

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334–35 (Fed. Cir. 2012), refused to extend the marking requirement to a method-only patent merely because apparatus claims appeared in other asserted patents in the same suit. Southwest does not advance that cross-patent theory. It asks only that the Court apply the rule where the same patent contains both an asserted system claim and an asserted method claim. The FCR recognized this rule at page 10, stating that, where a patent contains both apparatus and method claims, the patentee must mark a tangible item if it intends to rely on constructive notice. FCR at 10. The recommendation at page 41 should be clarified to apply that rule to the same-patent circumstance presented here.

The factual predicate is patent-specific. For the '282 Patent, IV asserts infringement of both system and method claims, including system Claim 1 and method Claim 15. Dkt. 97 ¶¶ 152–167 (Count VIII); Dkt. 97-15 ('282 claim chart); '282 Patent, Claims 1 (system), 15 (method). For the '080 Patent, IV likewise asserts infringement of both method claims and system Claim 9. Dkt. 97 ¶¶ 120–135 (Count VI); Dkt. 97-13 ('080 claim chart); '080 Patent, Claim 9 (system claim). Because each patent asserts both system and method claims, § 287's marking requirement applies to the asserted method claims of that same patent where a tangible article practicing the patent existed and marking was required. IV's failure to plead compliance with the marking requirement therefore precludes pre-suit damages on the method claims of the '080 and '282 Patents to that extent. Southwest therefore requests clarification that IV may not recover pre-suit damages for method claims asserted from any patent for which IV also asserts apparatus or system claims and for which § 287 required marking.

## V. CONCLUSION

Southwest respectfully requests that the Court sustain these objections and grant the following relief. First, the Court should hold Claim 1 of the ’582 Patent, Claim 1 of the ’282 Patent, Claim 7 of the ’844 Patent, and Claim 9 of the ’080 Patent ineligible under § 101; treat each such claim as representative of the other asserted claims of its patent, as set forth in Section IV.A; and, on that basis, dismiss in their entirety the infringement claims asserted in Counts I, V, VI, and VIII of the Amended Complaint. Should the Court decline to apply the representative claims on a claim-wide basis, it should at a minimum hold the four representative claims ineligible and dismiss the infringement claims based on those claims. Second, the Court should extend the recommendation holding Claim 14 of the ’722 Patent ineligible to the asserted claims represented by Claim 14, including dependent Claims 16–18. Third, the Court should clarify that the § 287 marking bar precludes pre-suit damages on the method claims of any patent that also asserts system or apparatus claims and for which § 287 required marking.

Date: September 8, 2026

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
State Bar No. 24040838
wdunwoody@munckwilson.com
Lucas R. Dombroski
Texas Bar No. 24142846
ldombroski@munckwilson.com
**Munck Wilson Mandala, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar No. 09479355
dhenry@munckwilson.com
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas State Bar No. 24102969
ttruong@munckwilson.com
**Munck Wilson Mandala, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 8, 2026, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

8318490