**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,** | § § § | **Civil Action No. 3:25-cv-02885-L-BN** |
| **Plaintiffs,** | § § | **Consolidated with 3:25-cv-03097-L** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **SOUTHWEST AIRLINES CO.,** | § § | |
| **Defendant.** | § | |

---

**SOUTHWEST AIRLINES CO.'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

---

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The FCR Correctly Determined that Claim 14 of the ’722 Patent is Patent Ineligible. ........ 3

1. Claim 14 is directed to an abstract idea at *Alice* step one. ........ 4

2. Claim 14 fails to recite an inventive concept at *Alice* step two. ........ 9

B. The FCR Correctly Determined IV’s Claims for Pre-Suit Damages Should be Dismissed with Prejudice. ........ 11

1. IV’s Amended Complaint does not plead compliance with § 287. ........ 12

2. IV’s pre-suit damages claims should be dismissed with prejudice. ........ 14

III. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014)........................................................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)..........................................................................11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)....................................................................12, 15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
950 F.3d 860 (Fed. Cir. 2020)................................................................12, 13, 14

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)..........................................................................11

*Battle v. U.S. Parole Comm'n*,
834 F.2d 419 (5th Cir. 1987) ...............................................................................2

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018).................................................................4, 10, 11

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ..........................................................................9

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)............................................................................9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)..............................................................................7

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020).........................................................................5, 7

*e-Watch Inc. v. Avigilon Corp.*,
2013 WL 5231521 (S.D. Tex. Sept. 13, 2013) ...................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).........................................................................6, 8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)............................................................................8

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) .......................................................................6, 7

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)....................5, 7

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001)....................12

*Lubby Holdings LLC v. Chung*,
11 F.4th 1355 (Fed. Cir. 2021) ....................13, 15

*Martinez v. Nueces Cnty., Tex.*,
71 F.4th 385 (5th Cir. 2023) ....................14

*Maxwell v. J. Baker, Inc.*,
86 F.3d 1098 (Fed. Cir. 1996)....................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....................3

*MyMail, Ltd. v. ooVoo, LLC*,
2021 WL 3671364 (Fed. Cir. Aug. 19, 2021)....................10, 11

*Nettles v. Wainwright*,
677 F.2d 404 (5th Cir. 1982) ....................2

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025) .................... *passim*

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ....................10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....................3, 10

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....................3

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)....................3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017).................... *passim*

*VDPP, LLC v. Volkswagen Group of America, Inc.*,
2026 WL 2416565 (Fed. Cir. Aug. 19, 2026).................... *passim*

**Statutes**

28 U.S.C. § 636 .......... 2

35 U.S.C. § 101 .......... *passim*

35 U.S.C. § 287 .......... *passim*

**Other Authorities**

FED. R. CIV. P. 12 .......... 3, 10, 12, 14

FED. R. CIV. P. 72 .......... 2

## I. INTRODUCTION

Applying the two-step framework of *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), Magistrate Judge Horan correctly concluded that Claim 14 of the ’722 Patent is invalid under 35 U.S.C. § 101. The claim’s two operative steps—telling the system which updates a user wants and sending an update when the information changes—are directed to the abstract idea of providing updated information, and the generic routing components used to implement that idea supply no inventive concept. Dkt. 159 at 29–32. IV’s objections identify no error in that analysis. The FCR did not disregard the claim’s references to a “live object,” “routing network,” “gateway device,” registration, categorization, or node selection; it considered those limitations and determined that they merely assign the ordinary functions of receiving, classifying, and routing information to generic network components. *Id.* at 30–32. Recasting those limitations as a six-part “architecture” does not change the claim’s focus because Claim 14 states only the desired results—registering a client, categorizing an update, selecting a node type, and routing the update—without claiming any particular protocol, algorithm, data structure, or other technological means for accomplishing them. Nor does IV create a factual dispute at *Alice* step two merely by alleging that this ordered combination was unconventional. The patent itself describes the relevant computers, communications links, protocols, storage structures, and routing techniques as conventional, standard, or known in the art, and a conclusory allegation cannot override those intrinsic admissions. The FCR therefore correctly held Claim 14 patent-ineligible under § 101.

Separately, Magistrate Judge Horan correctly recommended dismissing with prejudice IV’s claim for pre-suit damages on the asserted non-method claims because IV failed to plead compliance with 35 U.S.C. § 287. Dkt. 159 at 37–41. Although IV alleged that it makes no products of its own, it also alleged that it licensed the asserted patents to entities that IV believed were infringing, yet it did not allege that those licensees marked any patented articles or that IV made

any effort to ensure their compliance. Dkt. 97 ¶¶ 168–171. IV cannot avoid that pleading failure by arguing that the FCR lacked proof that particular licensed products practiced the asserted claims. The burden rests with IV to plead § 287 compliance, including compliance by its licensees, and IV's own allegations placed those licensees and their potentially patented products at issue. Nor does IV's request for another opportunity to amend undermine the FCR's futility determination. The Federal Circuit's recent decision in *VDPP, LLC v. Volkswagen Group of America, Inc.*, 2026 WL 2416565, at *2–3 (Fed. Cir. Aug. 19, 2026), confirms that a nonpracticing patentee seeking pre-suit damages must plead facts showing compliance or reasonable efforts to ensure licensee compliance; the settlement character of the licenses, the licensees' denials of infringement, and the absence of an express marking obligation do not excuse that burden. Because IV alleged no marking and no efforts to ensure marking while maintaining that its licensees practiced the asserted patents, the FCR correctly concluded that IV cannot recover pre-suit damages on its non-method claims. The Court should therefore overrule IV's objections and adopt the FCR's challenged recommendations.

## II. ARGUMENT

Under 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b)(3), the district court reviews de novo those portions of a magistrate judge's findings, conclusions, and recommendation to which a party files specific, written objections. The court need not conduct de novo review where objections are "[f]rivolous, conclusory, or general." *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. U.S. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)). Because patent eligibility under § 101 is a question of law, the Court owes no deference to the magistrate judge's legal conclusions on that issue.

**A. The FCR Correctly Determined that Claim 14 of the '722 Patent is Patent Ineligible.**

To separate patent-eligible inventions from ineligible abstract ideas, courts apply the two-step framework of *Alice* and *Mayo*. *Alice*, 573 U.S. at 217–18. At *Alice* step one, the court asks whether the claim is "directed to" a patent-ineligible concept, such as an abstract idea. *Id.* at 218. That inquiry looks to "the focus of the claimed advance over the prior art" and the claim's "character as a whole." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211–12 (Fed. Cir. 2025). In the software context, the question "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). Claims that recite only "result-based functional language" that does "not sufficiently describe how to achieve these results in a non-abstract way" are directed to an abstract idea. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

If the claim is directed to an abstract idea, courts proceed to step two and ask whether the claim's elements, individually and as an ordered combination, supply an "inventive concept"—something "significantly more" than the abstract idea itself. *Alice*, 573 U.S. at 217–18 (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). That requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (cleaned up). The abstract idea itself "cannot supply the inventive concept," *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020), and "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. Patent eligibility is ultimately a question of law that may be resolved on a Rule 12(b)(6) motion, and dismissal is particularly appropriate where the patent itself describes the claimed techniques as well-understood, routine, and conventional. *SAP Am., Inc. v. InvestPic, LLC*, 898

F.3d 1161, 1166 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The FCR applied that framework correctly in finding that Claim 14 of the '722 Patent is invalid under § 101, and its conclusion should be adopted on de novo review. Dkt. 159 at 29–32.

**1. Claim 14 is directed to an abstract idea at *Alice* step one.**

Claim 14 of the '722 Patent recites "*providing* … a data representation to a client device … [that] includes at least one live object"; "*causing* the client device … to register for updates"; and "*sending* … an update message to the routing network." The claim then recites a routing process: "a gateway device" is "configured to *identify* a category of the update message based on the input source," "*determine* a node type" mapped to that category, and "*route* the update message to the node"; and a "node" is "configured to *identify* the client device as a registered device and to *route* the update message to the client device." As the FCR correctly recognizes, Claim 14 has only two operative steps—informing the system which user wants which updates, and sending an update when the information changes—and those steps are directed to the abstract concept of "providing updated information," a "well-known routine activity practiced by humans." Dkt. 159 at 30, 32. The FCR illustrates this point by a simple, non-computerized example: a boss asks an employee to provide updated information about a matter of interest, the employee monitors that information, and when it changes, the employee creates an update and delivers it to the boss. Dkt. 159 at 30. That is precisely what Claim 14 does—a client tells the system which updates it wants, and the system sends an update when the information changes—and it is no less abstract for being carried out by a routing network rather than an employee.

IV contends that a series of additional limitations—a "live object," "routing network," "gateway device," "node," and "registered device"—render Claim 14 non-abstract, Dkt. 173 at 4–6, but these limitations cannot and do not change "the focus of the claimed advance" or the claim's "character as a whole." *Recentive Analytics*, 134 F.4th at 1211–12. Rather, the FCR correctly found

that these limitations "relate to how Claim 14's method would be accomplished using a computing system" and do not alter its abstract character, as they are merely "generic computing components that are used to implement the abstract idea of providing updates as they become available." Dkt. 159 at 31. IV provides no sound basis to revisit this conclusion. Indeed, IV own description of Claim 14's focus confirms the point: IV characterizes Claim 14 as providing "updated information" "efficiently and at scale across client devices." Dkt. 173 at 3. By IV's own framing, then, "the focus of the claimed advance over the prior art," *Recentive Analytics*, 134 F.4th at 1211–12, is an abstract concept—distributing updated information—and performing that longstanding information-distribution practice "efficiently and at scale" with generic computing components does not transform the abstract idea into a patent-eligible one. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

The Federal Circuit's treatment of analogous network-routing claims confirms the FCR's conclusion. In *Two-Way Media*, the court held that claims for routing and monitoring the delivery of real-time information over a network were directed to "the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information" because they recited the desired result of transmitting information rather than any technological means of achieving it. 874 F.3d at 1337–38. The court reached the same conclusion in *Intellectual Ventures I LLC v. Symantec Corp.*, where it held that claims for routing electronic messages based on specified criteria were abstract, analogizing them to a corporate mailroom that receives correspondence, applies business rules to sort it, and then takes the appropriate delivery actions. 838 F.3d 1307, 1314, 1317–18 (Fed. Cir. 2016). And in *Eolas Technologies Inc. v. Amazon.com, Inc.*, the Federal Circuit held that claims

for disseminating and interacting with data objects across a distributed World Wide Web network were directed to an abstract idea, explaining that "interacting with data objects on the World Wide Web is an abstraction" and that the claims "merely describe a desired function or outcome without providing details of the claimed distributed processing." 2024 WL 371959, at *5-6 (Fed. Cir. Feb. 1, 2024), *cert. denied*, 145 S. Ct. 149 (2024). Ultimately, Claim 14 recites the desired outcome of routing updates across a network without disclosing how that result is achieved, and it remains abstract regardless of whether it delivers updates more efficiently than prior approaches. Because Claim 14 is nothing more than information routing akin to the ineligible claims in *Two-Way Media*, *Symantec*, and *Eolas*, the same result should follow here.

IV's contrary arguments do not withstand scrutiny. IV first contends that the FCR "improperly reduce[d]" Claim 14 to two steps while "disregarding express claim limitations." Dkt. 173 at 3-6. The FCR did neither. It examined the very limitations IV identifies and correctly concluded that they are the generic components through which the claim carries out its abstract idea. Dkt. 159 at 30–31. Identifying the abstract idea at the heart of a claim requires looking through the functional and computer-specific claim language to reach "the focus of the claimed advance." *Recentive*, 134 F.4th at 1211-12. IV's six-part recitation of the claimed "architecture" (Dkt. 173 at 5-6) does not identify any such advance—it simply restates the same publish-categorize-route-update sequence in greater detail. But describing an abstract idea in more words does not make it concrete, because "[a]bstract ideas routinely encompass concrete examples," *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1066 (Fed. Cir. 2026), and confining an abstract idea to a "particular technological environment"—here, a routing network—"is, without more, insufficient to transform" it into a patent-eligible one. *Elec. Power Grp., LLC v. Alstom S.A.*,

830 F.3d 1350, 1354 (Fed. Cir. 2016); *accord Recentive*, 134 F.4th at 1213; *Capital One*, 792 F.3d at 1366.

IV separately contends that the FCR misstated the record by finding that IV "does not identify any elements that make Claim 14 not abstract" and instead relied only on specification details. Dkt. 173 at 6–7. IV is correct that its opposition cited claim limitations—but the FCR's conclusion did not rest on the premise that IV failed to cite claim language. Rather, the FCR examined the very limitations IV identified and found that they describe generic computing components performing conventional functions in result-oriented terms. Dkt. 159 at 30–32. That IV pointed to specific words in the claim does not alter the analysis when those words recite only what the system is "configured to" do—identify, determine, route—without disclosing any technological mechanism for accomplishing those functions. The FCR's finding is therefore consistent with the record and correct as a matter of law.

Second, IV argues that the '722 Patent solved the problem of updating dynamic content "efficiently and at scale," and that the claimed routing architecture is a technological solution to that problem. Dkt. 173 at 3–6. That argument fails twice over. It rests on the specification's description of the problem and its purported bandwidth benefits (Dkt. 173 at 4–5), but "only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ... an abstract idea." *GoTV*, 166 F.4th at 1061; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). The FCR correctly declined to credit "specific implementation details contained in the specification" that "are not in the claim itself." Dkt. 159 at 31–32. And the alleged benefit—sending updates only when content changes so that users need not refresh—is the efficiency inherent in the abstract idea itself, not an improvement to how a computer or network operates. *Customedia*, 951 F.3d at 1363-65. In all events, IV's

insistence that Claim 14 solved the problem of updating dynamic content "efficiently and at scale across client devices" (Dkt. 173 at 3) is the same new-functionality theory the Federal Circuit rejected in *Eolas*, which held that even claims that "developed new functionality that was not previously available" remain abstract because "an abstract idea that is new or groundbreaking is not any less abstract." *Eolas*, 2024 WL 371959, at *5.

Third, IV's reliance on *Enfish*, and its invocation of the FCR's separate discussion of the '582 Patent (Dkt. 173 at 6, 9), is misplaced. *Enfish* held certain software claims eligible because they recited a "specific type of data structure"—a self-referential table—that improved the way the computer itself stored and retrieved data. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336-39 (Fed. Cir. 2016). Claim 14 recites no such data structure. Instead, it recites its functions in purely result-oriented terms: the gateway is "configured to identify" a category of update message based on the input source, "to determine" a node type to which the category maps, and "to route" the message; the node is "configured to identify" the client as a registered device and "to route" the update to it. '722 Patent, cl. 14 (Dkt. 97-2 at 28). The claim never discloses how any of these results are achieved—no routing protocol, no data structure, no categorization algorithm, no category-to-node-type mapping table, and no improvement to network throughput or reliability. Claims that recite the required functions "without explaining how to accomplish any of the tasks" are directed to an abstract idea. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022); *see Two-Way Media*, 874 F.3d at 1337–38 (claims reciting "converting," "routing," "controlling," "monitoring," and "accumulating records" were abstract because they did "not sufficiently describe how to achieve these results in a non-abstract way"); *Elec. Power Grp.*, 830 F.3d at 1356 (distinguishing "desired results" from "particular ways of achieving" them). Result-focused functional claims of this kind "are almost always found to be ineligible for

patenting under Section 101." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024).

Because Claim 14 is directed to the abstract idea of providing updated information, the FCR correctly found it fails at *Alice* step one, and the Court should not disturb that finding.

**2. Claim 14 fails to recite an inventive concept at *Alice* step two.**

Because Claim 14 is directed to an abstract idea, it can survive only if it recites an "inventive concept"—an element, or an ordered combination of elements, that is "significantly more" than the abstract idea itself. *Alice*, 573 U.S. at 217–18. The FCR correctly determined that Claim 14 supplies no such concept. Considered individually, the claim's components—a "processing device," "client device," "routing network," "gateway device," and "node"—are all indisputably generic. The '722 Patent's specification describes those components as a "conventional computer system" or "conventional personal computer" communicating over "conventional communications links" using "standard Internet communications protocols," with registrations stored in hash tables and messages delivered using techniques "known in the art." '722 Patent at 4:66–5:2, 6:13–24, 9:53–55, 10:14–17, 11:58–61, 16:14–16, 17:1–9. It further states that "those skilled in the art will recognize that there are many ways" to route update messages. *Id.* at 16:28–46. These admissions confirm the absence of an inventive concept, and the FCR properly relied on them in finding that "generic computing components do not provide an inventive concept" and that Claim 14 "add[s] nothing to the abstract concept other than using generic computing concepts to implement the abstract idea." Dkt. 159 at 31-32; *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

The claim fares no better when its elements are considered as an ordered combination. The sequence Claim 14 recites—providing a representation containing a live object, registering the client, sending an update message, categorizing it by source, routing it to a mapped node, and

forwarding it to the registered client—is simply the conventional order in which any subscription-based distribution system would operate. Using intermediary network components to classify messages by source, consult stored registration data, and forward those messages is routine networking functionality, not an inventive arrangement. *See Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept where "nothing in the claims" required more than "conventional computer and network components operating according to their ordinary functions"); *MyMail, Ltd. v. ooVoo, LLC*, 2021 WL 3671364, at *7 (Fed. Cir. Aug. 19, 2021) ("Even when viewing the claim elements as an ordered combination, we discern no inventive concept in the process of sending information from a user device to a server, determining at the server whether the user device should receive toolbar update data, receiving at the user device the update data, updating the toolbar, and displaying the toolbar.").

IV's principal step-two objection is that whether Claim 14's limitations and their ordered combination are "well-understood, routine, or conventional" is a factual question that cannot be resolved on a Rule 12 motion under *Berkheimer*. Dkt. 173 at 7–8. That argument misreads *Berkheimer*. While conventionality may, in some instances, present a factual question, dismissal remains proper where the patent's own specification establishes that the claimed elements are conventional. *Berkheimer*, 881 F.3d at 1368–69; *SAP*, 898 F.3d at 1166. Such is the case here, where the '722 Patent repeatedly admits that its components and routing techniques are conventional and known in the art. '722 Patent at 4:66–5:2, 16:28–46. A plaintiff cannot conjure a factual dispute by alleging the opposite of what its patent says. IV's allegation that the claimed combination is "not well-understood, routine, or conventional" (Dkt. 97 ¶ 59; Dkt. 173 at 7) is the sort of conclusory assertion courts should disregard because "[n]o amendment to a complaint can alter what a patent itself states." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir.

2023). Cases such as *Berkheimer*, *Aatrix*, and *Cellspin* preclude dismissal only where specific, non-conclusory allegations of non-conventionality find support in the intrinsic record—not where, as here, the specification's own admissions foreclose them.

IV's reliance on *Amdocs* and *BASCOM* is unavailing. *Amdocs* turned on a "specific enhancing limitation" that required generic components to operate in an unconventional, distributed manner close to the source of the data to solve a network-bottleneck problem. *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016). *BASCOM* turned on an unconventional technological arrangement—filtering at a specific, remote ISP-server location. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–52 (Fed. Cir. 2016). Claim 14 recites no comparable enhancement or unconventional arrangement; it distributes a conventional information distribution workflow across generic components performing their ordinary functions. *MyMail*, 2021 WL 3671364, at *7.

Because Claim 14 adds nothing beyond the abstract idea of subscription-based content distribution, it fails *Alice* step two, and the FCR correctly recommended dismissal of IV's claims arising out of Claim 14. The Court should adopt the FCR's recommendation and find that Claim 14 of the '722 Patent is invalid under 35 U.S.C. § 101.

### B. The FCR Correctly Determined IV's Claims for Pre-Suit Damages Should be Dismissed with Prejudice.

To recover damages for alleged infringement occurring before the filing of a complaint, a patentee must comply with the patent marking statute, 35 U.S.C. § 287(a). Section 287(a) extends the marking requirement to "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them," and bars recovery of damages "[i]n the event of failure so to mark" absent proof that the infringer was notified of the infringement. 35 U.S.C. § 287(a). Three consequences follow. First, the burden of pleading and proving compliance

under § 287 is, and "at all times remains," on the patentee, because whether its articles are marked is "a matter peculiarly within [its] own knowledge." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366–67 (Fed. Cir. 2017) ("*Arctic Cat I*"). Second, "[a] patentee's licensees must also comply with § 287," because the statute reaches persons "making or selling any patented article for or under" the patentee. *Id.* at 1366; *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"). Third, where licensees are involved, the patentee is judged by "whether [it] made reasonable efforts to ensure compliance with the marking requirements," and a patentee that "made no effort to ensure" that its licensees marked cannot recover pre-suit damages. *Arctic Cat I*, 876 F.3d at 1366 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996)); *Arctic Cat II*, 950 F.3d at 863-66. When a patentee does not sufficiently plead compliance, courts may dismiss claims for pre-suit damages under Rule 12(b)(6). *See, e.g.*, *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328–29 (Fed. Cir. 2001); *e-Watch Inc. v. Avigilon Corp.*, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 13, 2013). The Federal Circuit's intervening decision in *VDPP, LLC v. Volkswagen Group of America, Inc.*, 2026 WL 2416565 (Fed. Cir. Aug. 19, 2026) (precedential), confirms that a patentee who cannot plausibly allege such compliance may be denied pre-suit damages at the pleading stage.

**1. IV's Amended Complaint does not plead compliance with § 287.**

The FCR correctly dismissed IV's claims for pre-suit damages because IV failed to plead compliance with § 287. The Federal Circuit's recent decision in *VDPP* is directly on point. There, as here, the patentee was a non-practicing entity that had licensed the asserted patent to settling defendants and pleaded only that it was "a non-practicing entity, with no products to mark" and had "pled all statutory requirements to obtain pre-suit damages." *VDPP*, 2026 WL 2416565, at *2. The Federal Circuit held that "[b]ecause VDPP sought pre-suit damages, VDPP had a burden to plead compliance with the notice provision of 35 U.S.C. § 287(a), including compliance by [its]

licensees," and that a complaint that "does not allege facts showing compliance with 35 U.S.C. § 287 by any of [the patentee's] licensees" fails that burden. *Id.* The court rejected each excuse VDPP offered—that its licenses were settlement licenses ("there is no difference between a license entered into under a settlement agreement and any other patent license agreement"); that its licensees never admitted infringement ("[n]or does the subjective view of the accused infringer matter"); and that its licenses contained no marking clause ("there is nothing special about its licenses that excuses [the patentee] from alleging it made 'reasonable efforts to ensure [its licensees'] compliance'"). *Id.* (quoting *Arctic Cat II*, 950 F.3d at 864).

IV's Amended Complaint is *VDPP*'s proposed pleading in longer form. Paragraphs 168 through 171—which the FCR correctly identified as "the only allegations regarding [IV's] compliance with the marking statute's requirements," Dkt. 159 at 39—allege that IV has no products to mark; that it entered into "settlement licenses with other entities" (which IV characterizes as agreements that were not entered into "to produce a patented article for Plaintiffs or under the Patents-in-Suit"); that "discovery will show that Plaintiffs have substantially complied with 35 U.S.C. § 287(a)"; that each licensee "denied infringing"; and that the licenses were negotiated "while Plaintiffs believe[d] there was infringement." Dkt. 97 ¶¶ 168-171. Every one of these allegations is either a legal conclusion *VDPP* holds insufficient or a factual admission *VDPP* holds is fatal to pre-suit damages. IV's assertions that the licenses were not "to produce a patented article" and that IV "substantially complied" are indistinguishable from the "bare legal conclusions" the Federal Circuit refused to credit in *VDPP*. 2026 WL 2416565, at *2. That the licenses arose in settlement is immaterial, and that the licensees denied infringement is immaterial, because the § 287 inquiry "must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Id.* (quoting *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360

(Fed. Cir. 2021)). And IV's invocation of "[d]uties of confidentiality," Dkt. 97 ¶ 170, is not relevant: nothing prevented IV from alleging, without disclosing license terms, that it required its licensees to mark or took any step to ensure compliance. What IV did allege is that it licensed the Patents-in-Suit to parties it "believe[d]" were infringing, Dkt. 97 ¶ 171—the functional equivalent of the continued-infringement position the Federal Circuit found preclusive of amendment in *VDPP*, 2026 WL 2416565, at *3.

IV concedes that *VDPP* requires a patentee seeking pre-suit damages to plead facts supporting § 287 compliance, including as to licensees where the statute applies, that factual allegations showing compliance or reasonable efforts are required where licensees are implicated, and that "a bare assertion that the statutory requirements have been satisfied is insufficient." Dkt. 173 at 15. IV's Amended Complaint contains nothing but such bare assertions. And IV nowhere alleges that it required its licensees to mark, monitored their marking, or took any other step to ensure compliance. *Arctic Cat II*, 950 F.3d at 863–66. IV's operative pleading is therefore insufficient to satisfy its burden under § 287, and its concessions should end the inquiry.

**2. IV's pre-suit damages claims should be dismissed with prejudice.**

IV does not seriously defend the four corners of its Amended Complaint; it argues instead that it should be permitted to replead. But an amendment is futile if the complaint as amended "would be subject to dismissal" under Rule 12(b)(6), *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023), and the issues IV identifies as relevant to a pleading amendment cannot save IV's claims for pre-suit damages from futility. IV faults the FCR for supposedly "assum[ing], without a factual basis," that its licensees make or sell "patented articles," and posits three "distinct factual questions" it says remain open: which licensee product is the patented article, whether that product "actually practice[s]" a non-method claim, and whether the licensee's activity "f[e]ll within the scope of the applicable license." Dkt. 173 at 13. IV's three questions identify nothing it

could plead to satisfy § 287. The FCR did not need to "assume" that IV's licensees sell patented articles, because it was IV's burden to plead facts showing compliance—either that its licensees sell no patented articles or that IV made reasonable efforts to ensure they marked—IV's own filings foreclose both. *VDPP*, 2026 WL 2416565, at *2-3; *Arctic Cat I*, 876 F.3d at 1366-67. Amendment would therefore be futile.

IV's three "open" questions are closed by the record. IV has licensed the Patents-in-Suit to cloud technology providers that sell products and services incorporating the same open-source software IV accuses here. Dkt. 100 at 28-30. IV's own opposition told the Court that IV had "expressly excluded licensed products from the products or systems it is accusing," Dkt. 112 at 31 (quoted at Dkt. 159 at 40)—a carve-out that would have been unnecessary unless the licensed products otherwise fell squarely within the accused category. Whether those products "actually practice" the asserted claims is likewise answered by IV: its infringement contentions do not turn on any configuration or implementation particular to Southwest, but instead map each asserted claim, element by element, to the generic, publicly documented features of the open-source software itself. Dkt. 97-7 (Docker); Dkt. 97-8 (Kafka); Dkt. 97-11 (Hadoop); Dkt. 97-12 (Spark). On IV's theory, infringement is a property of the software, not of any deployer's particular use of it—so if Docker, Kafka, Spark, and Hadoop practice the asserted claims when Southwest runs them, they practice the asserted claims when IV's licensees sell products incorporating them. IV's operative pleading supplies this point in IV's own words: it licensed these parties "while Plaintiffs believe[d] there was infringement." Dkt. 97 ¶ 171. And a licensee's refusal to concede infringement is, as *VDPP* squarely held, beside the point, because the notice inquiry "must focus on the action of the patentee, not the knowledge or understanding of the infringer." *VDPP*, 2026 WL 2416565, at *2 (quoting *Lubby*, 11 F.4th at 1360).

No amendment consistent with IV's infringement theory could cure these defects. To recover pre-suit damages on its non-method claims, IV would need to plead facts plausibly showing either that its licensees sell no products practicing the asserted claims or that IV made reasonable efforts to ensure they marked. IV cannot plead the former without abandoning the contention, central to its case against Southwest, that the generic features of the licensed software practice the claims—and without contradicting its own allegation that it believed the licensees infringed. Dkt. 97 ¶ 171. And IV cannot plead the latter, because it has not represented—and cannot represent—that it made reasonable efforts to ensure the cloud-service providers licensed to practice the Patents-in-Suit marked their products. That is the posture in which the Federal Circuit "s[aw] no way for VDPP to amend its complaint to plausibly allege it made reasonable efforts to ensure its licensees complied with 35 U.S.C. § 287." *VDPP*, 2026 WL 2416565, at *3. Indeed, § 287's notice purposes apply here with unusual force: the accused technology is open-source software that IV's own licensees distribute, unmarked, in commercial cloud products, so downstream enterprises like Southwest that deploy Docker, Kafka, Spark, and Hadoop receive no notice that IV regards those tools as practicing its patents. On IV's theory, IV could license the technology to the providers that sell it, decline to require any marking, and then recover years of pre-suit damages from every downstream user of that same technology—precisely the "hidden litigation risk" *VDPP* condemned. *VDPP*, 2026 WL 2416565, at *3. The FCR correctly recommended dismissal with prejudice, and its recommendation should be adopted. Dkt. 159 at 41–42.

To be sure, *VDPP* expressly declined to adopt a categorical rule, stating that it did "not foreclose the possibility that a licensor can ever establish it made reasonable efforts to ensure licensee compliance with 35 U.S.C. § 287 in the absence of a marking obligation." *VDPP*, 2026 WL 2416565, at *3. That reservation does not help IV. *VDPP*'s futility determination rested on a

record materially indistinguishable from IV's: the patentee maintained that licensed products infringed, imposed no marking obligations on its licensees, and could not represent that it made any effort to ensure compliance. The same is true here—IV asserts that its licensees were infringing, imposed no contractual marking requirement, and its infringement theory maps the asserted claims to generic, publicly documented features of open-source software that IV's licensees incorporate into their commercial cloud products. IV has identified no "reasonable effort" it undertook or could plead, and the record forecloses any such allegation.

## III. CONCLUSION

For the foregoing reasons, the Court should overrule IV's objections and adopt the FCR to the extent it concludes that Claim 14 of the '722 Patent is invalid under 35 U.S.C. § 101 and that IV's claims for pre-suit damages should be dismissed with prejudice.

Date: September 22, 2026

Respectfully submitted,

_/s/ S. Wallace Dunwoody_
Michael C. Wilson
State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
State Bar No. 24040838
wdunwoody@munckwilson.com
Lucas R. Dombroski
Texas Bar No. 24142846
ldombroski@munckwilson.com
**Munck Wilson Mandala, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar. No. 09479355
dhenry@munckwilson.com
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas State Bar No. 24102969
ttruong@munckwilson.com
**Munck Wilson Mandala, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 22, 2026, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody