**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,

*Plaintiffs,*

v.

SOUTHWEST AIRLINES CO.,

*Defendant.*

**Civil Action No. 3:25-cv-02885-L-BN**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

# TABLE OF CONTENTS

**Page**


I. SOUTHWEST HAS NOT ESTABLISHED THAT THE BRIEFED CLAIMS ARE REPRESENTATIVE OF EVERY ASSERTED CLAIM ........ 2

II. SOUTHWEST'S OBJECTION TO THE R&R'S BURDEN LANGUAGE DOES NOT REQUIRE REJECTION OF THE R&R'S SUBSTANTIVE ANALYSIS ........ 4

III. THE R&R CORRECTLY REJECTED SOUTHWEST'S "SCHEDULING" ABSTRACTION OF THE '582 PATENT ........ 8

IV. THE R&R CORRECTLY REJECTED SOUTHWEST'S "ORGANIZING AND STORING INFORMATION" ABSTRACTION OF THE '282 AND '844 PATENTS ........ 11

A. Alice Step One ........ 11

V. SOUTHWEST HAS NOT ESTABLISHED THAT THE R&R'S CLAIM 14 RULING AUTOMATICALLY EXTENDS TO '722 CLAIMS 16-18 ........ 15

VI. THE R&R CORRECTLY REJECTED SOUTHWEST'S ABSTRACTION OF THE '080 PATENT ........ 16

A. Alice Step One ........ 16

B. Alice Step Two ........ 18

VII. SOUTHWEST'S OBJECTION 7 DOES NOT ESTABLISH THAT IV IS BARRED FROM RECOVERING PRE-SUIT DAMAGES ON THE '080 AND '282 METHOD CLAIMS ........ 19

VIII. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)....20, 21

*Astellas Pharma, Inc. v. Sandoz Inc.*,
117 F.4th 1371 (Fed. Cir. 2024)....5

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....5, 8, 11

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024)....10

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024)....7, 9, 10

*Cooperative Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022)....5, 11

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
559 F.3d 1308 (Fed. Cir. 2009)....19

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....10

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....7, 14

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026)....4, 13

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2004)....2, 3, 4, 5

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023)....7

*Simio, LLC v. FlexSim Software Products, Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....7

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023)....7

*Trs. of Columbia Univ. v. Gen Digital Inc.*,
169 F.4th 1320 (Fed. Cir. 2026) ....................................................................7, 8, 10, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................10

*VDPP, LLC v. Volkswagen Group of America, Inc.*,
No. 2024-2226 (Fed. Cir. Aug. 19, 2026) ..............................................................2, 20, 21, 22

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017)......................................................................................7, 14

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................................................5, 6, 7, 8

Southwest's objections do not establish error in the Findings, Conclusions, and Recommendations of the United States Magistrate Judge (Dkt. 159; the "R&R"). On § 101, Southwest largely repeats the same abstractions the Magistrate rejected, while recasting the R&R's consideration of the actual claim limitations and asserted technological improvements as legal error. Southwest also seeks to extend its § 101 arguments to claims it did not substantively analyze in its Motion. The R&R correctly limited its analysis to the claims Southwest actually briefed. *See* R&R at 15-16 ("Southwest does not clearly assert that the Court should apply its analysis of the briefed claims to any or all of the other claims of the patents-in-suit.").

The R&R's claim-focused analysis is consistent with the arguments IV made in opposing the Motion. IV argued that Southwest's abstractions omitted express claim limitations and ordered combinations and that, at minimum, Southwest's assertions of conventionality presented factual disputes inappropriate for resolution on the pleadings. *See* IV Opp MTD at 2-25. The Magistrate largely agreed as to the '582, '282, '844, and '080 Patents. *See* R&R at 20-27, 35-37. IV separately objected to the recommended dismissal of Claim 14 of the '722 Patent because the R&R likewise abstracted away express claim limitations and, at minimum, improperly resolved Step Two on the pleadings. *See* IV's Obj. R&R at 3-9. Southwest's intervening authorities do not require a different result.

Southwest's damages objections likewise do not support a categorical bar on pre-suit damages for the method claims of the '080 and '282 Patents. Southwest's theory depends on the existence of an unmarked patented article made or sold by IV or under its authority through which notice of the asserted method claims could have been given. Although Southwest identified general technologies and providers in its Motion, that does not establish that a particular licensed product or implementation practices a relevant '080 or '282 Patent claim and was made or sold under IV's

authority. Whether particular backend implementations practice the claims may depend on nonpublic configurations and interactions among software, infrastructure, and system components. *See* IV Opp. MTD at 26-27; IV's Obj. R&R at 13-15. *VDPP* does not eliminate those antecedent questions and expressly leaves open whether reasonable efforts may be established even without a contractual marking obligation. And because *VDPP* issued only after the pleadings, briefing, and R&R, it provides no basis for dismissal with prejudice without at least permitting IV to amend.

## I. SOUTHWEST HAS NOT ESTABLISHED THAT THE BRIEFED CLAIMS ARE REPRESENTATIVE OF EVERY ASSERTED CLAIM

Southwest argues that the Magistrate should have treated the single claim it briefed for each patent as representative of all other asserted claims. SW's Obj. R&R at 4-7. But Southwest's decision to analyze only one claim per patent labeled as "representative," without explaining why the other asserted claims were materially indistinguishable for purposes of § 101 was not sufficient. Thus, the Magistrate correctly declined to extend Southwest's analysis beyond the claims Southwest actually briefed. As the R&R explained, Southwest "did not provide any other specific briefing regarding the other claims of the patents-in-suit, other than to assert that the sole briefed claim was 'charted as representative.'" R&R at 15. Southwest did not compare the additional asserted claims to the selected claims, identify their differing limitations, or explain why those differences were immaterial to the § 101 analysis. *See* SW MTD at 4-21.

That omission matters. Under *Mobile Acuity*, representative treatment depends on a showing that the grouped claims are substantially similar and linked to the same allegedly ineligible concept. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292-94 (Fed. Cir. 2004) ("Blippar explained how the other claims in the Asserted Patents are substantially similar to the representative claims"). Southwest made no such showing in its Motion. *See id.* ("the patent challenger bears the burden to prove either that (i) the representative claim is, in fact,

representative, in that any differences among the claims are not material to the eligibility analysis or (ii) each separate claim (*i.e.,* those not fairly represented by the purported representative claim) is ineligible for patenting.").

Southwest instead simply declared the selected claims "representative." *See* SW's Obj R&R at 4 ("Indeed, Southwest's Motion notes that the claims presented in its 101 analysis are representative and treats them as such."); *see also* SW MTD at 4 ('582 Patent - "Claim 1, charted as representative, recites in relevant part:"); 9 ("The '282 Patent claims a system for organizing and storing information, with claim 1 charted as representative for Count VIII") ("The '844 Patent claims methods for organizing and storing information, with claim 7 charted as representative for Count I"), 14 ('722 – ("Claim 14 is charted as representative."), 18 ('080 – "Claim 1 is charted as representative"). That label was not a substitute for analyzing the other asserted claims and explaining why the additional claims and limitations do not matter. That is also what distinguishes *Mobile Acuity*. There, the challenger explained in its opening brief why the additional limitations of the grouped claims did not change the eligibility analysis. 110 F.4th at 1293-94 ("Blippar explained how the other claims in the Asserted Patents are substantially similar to the representative claims.") Here, Southwest merely labeled the claims as conclusory, nothing else. IV did not agree to representative treatment merely by responding to the claims Southwest briefed.

Southwest's objections now attempt to supply the missing analysis. Southwest argues that the unbriefed claims rise or fall with the claims it selected and, for the '722 Patent, now identifies the additional limitations of Claims 16-18 and argues why they supposedly do not change the § 101 result. SW's Obj. R&R at 4-7, 18. But that is precisely the analysis Southwest chose not to provide in its Motion. Moreover, it asks the Court to apply "that determination" to the other asserted claims of each patent, when Southwest failed to make any showing regarding representativeness. SW's

Obj. R&R at 6. *GoTV* does not resolve the issue presented here. There, the Federal Circuit explained that the patent owner itself treated claim 1 as representative for eligibility purposes and made no separate argument that any other asserted claim would remain eligible if claim 1 were ineligible. *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1058, 1060 (Fed. Cir. 2026). The court therefore had no occasion to decide whether a movant may establish representative treatment merely by labeling one claim "representative" without explaining why the other asserted claims are materially the same for § 101 purposes. Here, Southwest's Motion made no such showing. It analyzed only selected claims and did not establish that those claims were representative of the other asserted claims or that the additional limitations in those claims were immaterial to eligibility. That distinguishes *Mobile Acuity*, where the claims at issue were treated as representative for purposes of the § 101 analysis. IV did not agree here that Southwest's selected claims were representative of the remaining asserted claims, and Southwest did not make the claim-by-claim showing necessary to establish that proposition. Its attempt to supply that analysis for the first time in its objections comes too late. That distinction matters under *Mobile Acuity*, which places the initial burden on the challenger to identify the proposed grouping and show that the claims are substantially similar and linked to the same allegedly ineligible concept before the burden shifts to the patentee to identify a material eligibility distinction.

## II. SOUTHWEST'S OBJECTION TO THE R&R'S BURDEN LANGUAGE DOES NOT REQUIRE REJECTION OF THE R&R'S SUBSTANTIVE ANALYSIS

Southwest next argues that the Magistrate applied the wrong standard at Alice Step One by referring to Southwest's clear-and-convincing burden and by crediting IV's allegations concerning technological improvements. SW's Obj. R&R at 7-8. According to Southwest, Step One is a legal question and the R&R improperly converted that inquiry into what Southwest calls a "benefits-

and-plausibility" analysis by crediting computer-specific claim language, allegations that the claimed arrangements were new or more efficient, and benefits described in the specifications.

Southwest mischaracterizes the R&R's discussion of the burden of proof. IV does not dispute that the ultimate Step One determination, what the claims are directed to, is a question of law. Nor does the R&R suggest such. But that does not mean the § 101 inquiry is devoid of underlying factual issues. As *Berkheimer* explains, "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). That distinction matters at the pleading stage, where the Court must apply the Rule 12 standard to well-pleaded factual allegations relevant to the eligibility inquiry. *See Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) ("Patent eligibility is ultimately a question of law . . . [that] may depend on underlying issues of fact."). IV raised these same principles in opposing Southwest's Motion. IV Opp. MTD at 2-3.

Nor does the legal nature of the ultimate eligibility determination eliminate Southwest's burden. Southwest remains the party asserting invalidity, and the burden of establishing patent ineligibility remains with Southwest throughout the § 101 inquiry. *See Mobile Acuity*, 110 F.4th at 1292 ("The burden to prove the ineligibility of any patent claim stays with the patent challenger at all times."). The Federal Circuit has likewise confirmed the presumption of validity under § 282 applies to patent eligibility. *See Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th 1371, 1378 (Fed. Cir. 2024) ("That statutory prescription mandates that the party asserting an invalidity defense must prove that defense by clear and convincing evidence. "). And any factual predicate pertinent to the invalidity determination must be proven by clear and convincing evidence. *See Berkheimer*, 881 F.3d at 1368 ("Any fact . . . pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

The R&R's reference to Southwest's ultimate burden therefore did not convert Step One into a factual inquiry or require Southwest to prove its legal position at Step One by clear and convincing evidence. Rather, the R&R recognized Southwest's burden on its invalidity challenge while applying the Rule 12 standard to the record before it.

Nor did the Magistrate resolve Step One merely by crediting allegations of novelty or efficiency. He examined the claims themselves and determined whether Southwest's proposed abstractions accounted for the limitations actually recited. For the '582 Patent, Southwest characterized Claim 1 as nothing more than the organizational principle of "break[ing] a job into smaller tasks, assign[ing] them to workers, and hav[ing] workers request new tasks when finished." R&R at 18. The Magistrate rejected that characterization, finding that "[t]he language of Claim 1 itself supports" IV's position and that Southwest's abstraction was "too broad and disconnected from the claim elements." *Id*. at 21. The R&R likewise found that Southwest "has taken the abstraction of the claims too far" as to the '282 and '844 Patents and that Southwest's "organizing and storing information" abstraction "ignores the detailed elements of both claims." *Id*. at 26. As to the '080 Patent, the Magistrate found that Southwest's "divide-and-conquer" abstraction failed because Southwest was "unable to explain how the distributed shared variable or the requirements of the intermediate condition fit into Southwest's proposed abstract concept or analogies." *Id.* at 36.

Nor was it improper for the Magistrate to consider the specification's description of what the claimed arrangements improve. IV made the same point below, explaining that Step One asks whether the claims are directed to a specific means or method that improves the relevant technology rather than merely a result or effect. IV Opp MTD at 2. The Federal Circuit likewise looks to the specification at Step One to determine whether claimed limitations reflect a specific

improvement in computer functionality. *See Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1335-36 (Fed. Cir. 2016); *Visual Memory LLC v. NVIDIA Corp*., 867 F.3d 1253, 1259-60 (Fed. Cir. 2017); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379-81 (Fed. Cir. 2024).

*Gen Digital* does not alter that framework. There, the Federal Circuit rejected asserted technological improvements because they were "not required by the language of the asserted claims at all." *Trs. of Columbia Univ. v. Gen Digital Inc*., 169 F.4th 1320, 1330-31 (Fed. Cir. 2026). The problem was not consideration of the specification; it was reliance on improvements not captured by the claims. Here, the R&R expressly relied on limitations recited in the claims themselves. Nor do *Simio*, *Trinity*, or *Sanderling*[1] require a different result. Those cases permit a court to disregard conclusory allegations; they do not permit the Court to disregard express claim limitations or the intrinsic record bearing on what those limitations do. The R&R did not rely merely on labels that the inventions were new, efficient, or nonconventional; it examined the claim language itself and determined that Southwest's proposed abstractions failed to account for limitations actually recited in the claims.

Southwest also overstates the significance of the R&R's references to non-routineness. To the extent those references bear on conventionality rather than the Step One focus inquiry, they belong at Step Two. But that does not favor dismissal. IV expressly raised this issue below. Its opposition argued that eligibility may be resolved at Rule 12 only where there are no plausible factual disputes and that whether the claimed limitations or combinations were well-understood, routine, and conventional presents a factual issue. IV Opp MTD at 2-3.

[1] *See* SW's Obj. R&R at 10 (citing *Simio, LLC v. FlexSim Software Products, Inc.,* 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Trinity Info Media, LLC v. Covalent, Inc.,* 72 F.4th 1355, 1365–66 (Fed. Cir. 2023) and *Sanderling Mgmt. Ltd. v. Snap Inc.,* 65 F.4th 698, 706 (Fed. Cir. 2023)).

Whether a claim limitation or ordered combination was well-understood, routine, and conventional can present a question of fact that cannot be resolved against the patentee on the pleadings. *Berkheimer*, 881 F.3d at 1368-69. *Gen Digital* likewise held that a dispute concerning whether a claimed feature was conventional presented "a question of fact that precludes judgment on the pleadings." 169 F.4th at 1332-33.

Accordingly, even if the Court disagrees with the R&R's Step One analysis as to any patent, dismissal still is not warranted where the Rule 12 record plausibly places conventionality of the claimed limitation or ordered combination in dispute.

## III. THE R&R CORRECTLY REJECTED SOUTHWEST'S "SCHEDULING" ABSTRACTION OF THE '582 PATENT

Southwest argues that Claim 1 of the '582 Patent is directed merely to an abstract "scheduling rule." SW Obj. R&R at 9. It goes on to characterize the claim as partitioning an input file, distributing descriptions of partitions, executing subtasks in parallel, assigning additional work on a first-come/first-served basis, and combining the outputs, and contends that the claim recites no new processor, data structure, scheduling mechanism, or other technological means. *Id*.

The R&R correctly rejected that characterization for the same reason IV identified in opposing Southwest's motion: it abstracts away the particular limitations and ordered combination recited in Claim 1. R&R at 21 ("While Southwest is able to articulate a broad abstract concept toward which Claim 1 is directed, Southwest's abstract concept is too broad and disconnected from the claim elements."); *See also* IV Opp MTD at 6 ("it does not negate the fact that the steps recited in claim 1, considered as a whole, are novel and inventive, and there is nothing in the record to dispute this."). IV explained that Claim 1 requires, among other things, the distribution of partition descriptions, simultaneous execution of subtasks, and subsequent first-come/first-served processing of additional partitions, and argued that Southwest's abstraction failed to account for

those limitations when taken together. *Id*. at 5. The Magistrate agreed, concluding that "Southwest fails to consider the ordered combination of the elements as a whole and the improvements that the claimed method provides in the field of parallel processing." R&R at 21. The R&R further concluded that Claim 1 is directed to "a particular method for performing steps to accomplish load balancing in a computerized application that provides concrete improvements in the field." *Id*. at 21-22.

Southwest's objection largely repackages the same abstraction. It argues that Claim 1 recites functional, result-oriented steps without claiming the technological means that produces the asserted improvement. SW's Obj. R&R at 9-12. But that is the same dispute presented below: whether Claim 1 merely states the desired result of allocating work, or instead recites a specific method for accomplishing that result through the claimed distribution of partition descriptions, simultaneous processing, and subsequent first-come/first-served processing of additional partitions. *See* IV Opp. MTD at 3-6. Step One asks whether the claim is directed to a "specific means or method that improves the relevant technology rather than simply being directed to a result or effect that itself is the abstract idea." *Contour IP*, 113 F.4th at 1379.

The intrinsic record also undercuts Southwest's characterization of the invention as merely "first-come/first-served scheduling." IV expressly relied below on prosecution-history statements distinguishing prior-art systems that used a special control process and load information and identifying both first-come/first-served processing and the distribution of work descriptions as relevant to the asserted improvement. IV Opp. MTD at 5.

The prosecution history states that prior systems "rely on a special control process that uses load information to distribute the load between processors," whereas "[w]ith the instant invention as defined in the claims there is no such special process." *Id*. (*quoting* Appx. 13-14). It describes

elimination of the need to collect and maintain load information as a "major improvement" and states that the amended claims "refer to a distribution of a description of the work to be done," which the sharing process can use to distribute load "without a special load process." *Id*. Southwest's Motion and objections to the R&R reference to the four-way-stop analogy therefore attempts to isolate the first-come/first-served processing while omitting the accompanying prosecution-history explanation of the asserted improvement.

Southwest's reliance on *Gen Digital* likewise does not establish ineligibility. In *Gen Digital*, Columbia expressly conceded that a divide-and-conquer approach in which multiple computers collaborate on a task was abstract. 169 F.4th at 1330. The Federal Circuit then rejected additional asserted improvements because those features were not required by the claims. *Id*. at 1330-31. Here, IV made no comparable concession, and the features on which IV and the R&R relied, distribution of partition descriptions, simultaneous execution, and first-come/first-served processing of additional partitions—are express limitations of Claim 1. The intervening decision therefore does not cure the defect IV identified in Southwest's original abstraction and that the Magistrate recognized.

Southwest also invokes *Two-Way Media, Beteiro*, and *Electric Power Group*[2] for the proposition that result-focused functional claiming is insufficient. But those cases do not establish that any claim using functional verbs is abstract. Claim 1 does not merely claim the desired result of improved load balancing. It recites the particular sequence and relationship of operations by which the processing occurs. The R&R therefore had a basis to conclude that Southwest's

[2] *See* SW's Obj. R&R at 11 (citing *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337-38 (Fed. Cir. 2017); *Beteiro, LLC v. DraftKings Inc.,* 104 F.4th 1350, 1356 (Fed. Cir. 2024); *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1356 (Fed. Cir. 2016)).

abstraction discarded limitations bearing on the claimed means rather than merely stripping away generic computer terminology.

In any event, even if the Court concludes that Claim 1 is directed to an abstract concept and needs to reach Alice Step Two, dismissal still is not warranted. IV specifically disputed Southwest's assertion that the claimed combination was conventional. In particular, IV pointed to Claim 1's requirements for distributing descriptions of all partitions to the subtask processors, simultaneously executing subtasks on respective partitions, and thereafter processing additional unprocessed partitions on a first-come/first-served basis. IV Opp. MTD at 3-5. IV explained that the specification identifies an improvement in parallel data processing and that these improvements are "captured in claim 1." *Id*. at 4. IV further explained that the prosecution history distinguished prior-art systems that relied on a special control process and load information and identified the claimed distribution of work descriptions and first-come/first-served processing as aspects of the asserted improvement. *Id.* at 5. IV therefore argued that Southwest had not shown that Claim 1's limitations, considered in their claimed combination, were well-understood, routine, and conventional and, at a minimum, presented a factual dispute that could not be resolved on the pleadings. *Id*. at 7; *see also Cooperative Ent*., 50 F.4th at 133; *Berkheimer*, 881 F.3d at 1368-69.

## IV. THE R&R CORRECTLY REJECTED SOUTHWEST'S "ORGANIZING AND STORING INFORMATION" ABSTRACTION OF THE '282 AND '844 PATENTS

### A. Alice Step One

Southwest argues that Claim 1 of the '282 Patent and Claim 7 of the '844 Patent are directed to the abstract idea of "organizing and storing information." SW's Obj. R&R at 13-17. According to Southwest, the R&R erred by relying on the claims' detailed implementation in a distributed-computing environment because those limitations remain functional and do not recite a technological mechanism that changes how computers operate.

That mischaracterizes both the claims and the R&R. It also repeats the abstraction IV addressed in its opposition. IV argued that the claims are not directed merely to a "root-leaf" organizational concept, but instead recite particular arrangements for distributed application environments. IV explained that Claim 7 of the '844 Patent requires storing blocks of a root image for multiple compute nodes, storing respective leaf images that include only additional or changed blocks and exclude unchanged root-image blocks, and caching accessed root-image blocks. IV further explained that Claim 1 of the '282 Patent requires separate root- and leaf-image storage and a union block device that interfaces between the compute node and the storage units and creates the application environment by merging root- and leaf-image blocks. IV Opp. MTD at 8-11.

IV tied those claimed limitations directly to the asserted technological improvement. The opposition explained that the specifications identify prior-art problems including copying entire master images, increased bring-up time, wasted disk space, cumbersome updating of multiple boot-image copies, and redundant operations consuming CPU resources, disk space, and bandwidth. *See* IV Opp. MTD at 9-10. IV then argued that the claimed inventions address those problems through the particular root-image/leaf-image arrangements recited in the claims, including caching portions of the root image in the '844 Patent and using the union block device to merge root- and leaf-image blocks in the '282 Patent. *Id*. at 10.

The Magistrate accepted that distinction. He found that Southwest's proposed "organizing and storing information" abstraction "ignores the detailed elements of both claims" and that the claimed elements limit the generalized concept to "a concrete application, as described and limited by the claims themselves." R&R at 25-27.

Claim 1 of the ’282 Patent requires a first storage unit storing blocks of a root image, a second storage unit storing a leaf image containing new data blocks and changes to the root-image blocks, and a union block device that creates the application environment by merging root- and leaf-image blocks. It further requires a low-level driver interfacing between the storage units and the file system and persistent mapping in response to a sector write request. R&R at 23-24.

Claim 7 of the ’844 Patent likewise requires storing root-image blocks for multiple compute nodes, storing node-specific leaf images that include only additional or changed blocks and exclude unchanged root-image blocks, and caching root-image blocks accessed by at least one compute node. *Id.* at 24.

The Magistrate therefore did not find eligibility merely because an abstract idea had been confined to a technological environment. Rather, he found that Southwest’s proposed abstraction failed to account for the particular limitations recited in the claims and their claimed combination, including, for the ’844 Patent, the claimed relationship between the root image, leaf images, and cached root-image blocks and, for the ’282 Patent, the union block device and its merging of root- and leaf-image blocks to create the application environment. R&R at 26-27.

Southwest’s intervening reliance on *GoTV Streaming* does not alter that analysis. Southwest analogizes the common root image to a generic template and the leaf image to a customized version. SW’s Obj. R&R at 15-16. But the analogy again, abstracts away the limitations IV relied on below. In *GoTV*, the claims used ordinary computing functions to generate and transmit generic and device-tailored information without claiming a concrete improvement in how those computing functions were performed. 166 F.4th 1053, 1063-66 (Fed. Cir. 2026) (finding look-and-feel information was what software developers were amassing and combining to arrive at the final image display). Here, IV’s position is that the asserted improvement is captured in the

claims themselves: the ’282 Patent requires separate block storage, merging by a union block device, a low-level driver, and persistent mappings; and the ’844 Patent requires a specific relationship among root-image blocks, changed or additional leaf-image blocks, and cached root-image blocks. That is the same distinction IV drew in its opposition when it argued that the claimed inventions provide a “specific improvement to the way computers operate” and tied that improvement to these claimed arrangements. IV Opp. MTD at 10-11.

Those claims are therefore more analogous to cases involving particular structures for storing or accessing data than to claims involving generic information organization. *Visual Memory*, 867 F.3d at 1259-60. IV made that same analogy below, relying on *Enfish* and *Visual Memory* and explaining that *Visual Memory* claimed an improved memory system that obviated the need to design a separate memory system for each type of processor and at the same time avoided the performance problems of prior art memory systems was patent eligible. IV Opp. MTD at 10-11; *see also Enfish*, 822 F.3d at 1336-37; *Visual Memory*, 867 F.3d at 1259-60.

In any event, if the Court concludes that either claim is directed to an abstract concept and reaches Alice Step Two, dismissal still is not warranted. IV expressly argued below that even conventional components may supply an inventive concept when, considered individually and as an ordered combination, they recite an inventive concept through a distributed architecture. IV Opp. MTD at 12 (citing *Amdocs*, 841 F.3d at 1302). IV identified the relevant claimed arrangements, including, for the ’844 Patent, the root image, leaf images containing only additional or changed blocks while excluding unchanged root-image blocks, and caching of accessed root-image blocks; and, for the ’282 Patent, the root- and leaf-image storage and union block device that merges those blocks to create the application environment. *Id*. at 8-12. IV further argued that Southwest’s conventionality contentions presented, at most, a factual dispute that could not be

resolved on the pleadings and cited the Amended Complaint's allegations concerning nonconventional limitations. *Id*. at 12-13.

## V. SOUTHWEST HAS NOT ESTABLISHED THAT THE R&R'S CLAIM 14 RULING AUTOMATICALLY EXTENDS TO '722 CLAIMS 16-18

Southwest agrees with the R&R's conclusion as to Claim 14 of the '722 Patent but objects to the Magistrate's refusal to extend that ruling to dependent Claims 16-18. SW's Obj. R&R at 17-18. IV has separately objected to the R&R's treatment of Claim 14 and respectfully maintains that the R&R improperly reduced the claim to the generalized idea of providing updated information while disregarding limitations concerning registration, categorization, node selection, and routing. *See* IV's Obj. R&R at 3-5. Even if the Court adopts the R&R as to Claim 14, however, Southwest's Motion did not separately analyze Claims 16-18 or explain why Claim 14 could be treated as representative of those claims.

For the reasons discussed above concerning representative claims, Southwest did not establish in its Motion that Claim 14 could be treated as representative of the additional asserted claims. The R&R therefore properly limited its recommendation to Claim 14. R&R at 32-33 (Southwest does not sufficiently request the Court to apply its argument pertaining to Claim 14 equally to all claims of the '722 Patent."). Southwest now attempts to supply the claim-specific analysis that was absent from its Motion, identifying the additional limitations of Claims 16-18 and for each now asserting that those limitations are conventional and immaterial including for claim 16, client-device registration with a node of the routing network, for claim 17 adds an activation module executed by the client device that registers the live object with the routing network, and claim 18 that adds determining the node type that handles registration and registering the client deice with the corresponding node. SW's Obj. R&R at 18. Those additional limitations were not argued in Southwest's Motion and cannot be now included as a basis to extend the ruling

to cover claims that were not argued. Southwest itself identifies these additional limitations only in its objections before characterizing them as conventional. SW's Obj. R&R at 18. That claim-specific analysis was not presented in Southwest's Motion, and Southwest cannot cure that omission through its objections.

Nor has Southwest established on the pleadings that those additional limitations are conventional as a matter of law. IV argued below that the '722 Patent's claimed ordered combination could supply an inventive concept even if individual components were generic or conventional, relying on *Amdocs* and *Bascom*. IV Opp. MTD at 17-18. IV further argued that the ordered combination recites an inventive concept and that Southwest's conventionality contentions presented, at minimum, a factual dispute that could not be resolved on the pleadings. *Id.* at 18; *see also* Dkt. 97 ¶ 59.

Southwest's objections supply no evidence resolving that factual issue; they simply characterize the additional registration and node-selection limitations as "conventional." SW's Obj. R&R at 18. Thus, even if Claim 14 ultimately is found ineligible, Southwest has not established that the additional limitations of Claims 16-18 do not alter the Step One analysis or are conventional as a matter of law at Step Two.

## VI. THE R&R CORRECTLY REJECTED SOUTHWEST'S ABSTRACTION OF THE '080 PATENT

### A. Alice Step One

Southwest argues that Claim 9 of the '080 Patent is directed to the abstract idea of "dividing and conquering computing tasks" (Motion at 18) and that the distributed shared variable and intermediate-condition limitations merely describe how that abstract process is sequenced. SW's Obj. R&R at 21 ("That is a fundamental human activity, and performing computations on a first subset of data and then working on the second subset is an abstract idea.").

The R&R correctly rejected that characterization for the same reason IV identified in its opposition: IV argued that Southwest's "divide-and-conquer" characterization ignored the actual limitations of Claim 9 and described the claim at an impermissibly high level of abstraction. IV Opp. MTD at 20-21. The R&R agreed, finding Southwest's abstraction "too broad" and concluding that, considered together, the distributed shared variable and intermediate-condition limitations "appear to . . . implement[] a new way to perform distributed computing that is not an abstract concept." R&R at 36-37.

IV specifically argued that Southwest's characterization ignored the distributed shared variable, transformation of a distributed sequential computing program into a distributed parallel program by spawning a child distributed sequential computing program when an intermediate condition occurs, concurrent use of the original and spawned child programs, and the intermediate result required by the child to continue computation. IV Opp MTD at 20-22 ("To make its argument work, Southwest must necessarily ignore the actual limitations of claim 9").

The Magistrate agreed. The R&R found that Southwest's movers, chefs, and general-contractor analogies did not account for those requirements and specifically found that Southwest had not explained how the distributed shared variable or intermediate-condition limitations fit its proposed abstraction. R&R at 36 ("Southwest is unable to explain how the distributed shared variable or the requirements of the intermediate condition fit into Southwest's proposed abstract concept or analogies.").

Southwest's objection does not cure that omission. It now argues that the distributed shared variable was known and that the intermediate condition merely reflects a sequencing dependency. But whether individual concepts were known does not answer what the claim as a whole is directed to. Claim 9 does not merely recite using several computers to divide a task. It specifies a distributed

sequential program accessing a distributed shared variable and transforming into a distributed parallel computing program by spawning a child when an intermediate condition occurs, with both programs used concurrently to perform parallel processing and/or operations and the spawned child requiring an intermediate result to continue computation.

IV likewise explained below how the claimed mechanism differed from the prior message-passing and distributed-shared-memory approaches identified in the specification. Message passing required substantial programming and communication management, while distributed shared memory could require large transfers of data across processors. IV Opp MTD at 19-20. IV then tied the asserted improvement to the limitations recited in Claim 9, including the distributed shared variable and the transformation of the distributed sequential computing program into a distributed parallel computing program in the manner required by the claim. *Id*. at 20-22.

Southwest again relies on *Gen Digital*. But that intervening decision does not identify a flaw in the argument IV presented below or in the Magistrate's response to it. In *Gen Digital*, Columbia conceded the abstract character of the broad divide-and-conquer concept, and the Federal Circuit rejected additional improvements that were not actually required by the claims. 169 F.4th at 1330-31 ("The problem is these supposed improvements are not what the claims are directed to…"). Here, IV made no such concession, and the technological features on which IV and the R&R rely, the distributed shared variable, transformation by spawning when an intermediate condition occurs, concurrent use of the original and spawned child programs, and the required intermediate result, are express limitations of Claim 9.

**B. Alice Step Two**

Claim 9 also independently survives at Step Two.

This Step Two theory was squarely presented below. IV argued that the specification described deficiencies in prior message-passing and distributed-shared-memory approaches and

that Claim 9 captured the claimed solution. IV Opp MTD at 23. IV then relied on the prosecution history showing that then-pending Claim 15, which issued as Claim 9, was amended to require concurrent use of the original and spawned child programs; that the examiner and applicant specifically discussed "distributed shared variable" and "intermediate condition"; and that a further amendment was agreed upon to overcome cited prior art. *Id*. at 23-24. IV expressly argued that "[t]he '080 Patent specification and file history thus confirm that the limitations in claim 9 were neither routine nor conventional." *Id*. at 24.

IV further argued that Southwest had provided no evidence that Claim 9's limitations were routine and conventional and that, at minimum, the issue presented a factual dispute that could not be resolved on the pleadings. *Id*. at 24-25; Dkt. 97 ¶ 123.

Southwest's objections again focus on individual elements, the existence of distributed shared variables and the asserted inherency of dependency conditions, rather than the ordered combination actually recited. At minimum, the record presents a factual dispute concerning whether Claim 9's ordered combination, not merely a DSV or dependency condition viewed in isolation, was well-understood, routine, and conventional. That factual dispute is sufficient to defeat dismissal at Step Two.

## VII. SOUTHWEST'S OBJECTION 7 DOES NOT ESTABLISH THAT IV IS BARRED FROM RECOVERING PRE-SUIT DAMAGES ON THE '080 AND '282 METHOD CLAIMS

Southwest's Objection 7 does not warrant a categorical bar to pre-suit damages for method claims of the '080 and '282 Patents. The R&R already recognized the governing rule: when a patent contains both apparatus or system claims and method claims, Section 287 applies to an asserted method claim "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given." R&R at 11 (*citing* C*rown Packaging Tech., Inc. v. Rexam Beverage Can Co*., 559 F.3d 1308, 1317 (Fed. Cir. 2009)). Southwest itself frames its requested

rule conditionally, stating that § 287 applies to the method claims "where a tangible article practicing the patent existed and marking was required." SW's Obj. R&R at 23.

That qualification matters. The fact that IV entered into a portfolio license does not itself establish that a licensee made or sold a patented article practicing the '080 or '282 Patent claims. As IV explained in its own objections, a portfolio license may authorize broad categories of products and activities without establishing that a particular licensed product or implementation practices every (or any) patent within the portfolio. *See* IV's Obj. R&R at 12-15. *Arctic Cat* likewise treated whether a licensee's product was actually covered by the patent claims as a distinct factual question. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367-68 (Fed. Cir. 2017) (explaining that, although Honda was an authorized licensee and sold unmarked products, "[t]he only dispute between the parties [was] whether any of the Honda PWCs was covered by the patent claims at issue"). The Federal Circuit further held that the alleged infringer bears an initial burden of production to identify specific unmarked products sold by the patentee or its authorized licensees that it believes practice the patent. *Id.* at 1368. Thus, the existence of system claims in the '080 and '282 Patents does not, standing alone, establish that a tangible patented article existed through which notice of the asserted method claims could have been given. Where Southwest relies on licensee activity, it must identify a specific product or implementation that it contends both practices the relevant patent and was made or sold under IV's authority.

The Federal Circuit's intervening decision in *VDPP, LLC v. Volkswagen Group of America, Inc.*, No. 2024-2226 (Fed. Cir. Aug. 19, 2026) (Dkt. 173-2), does not eliminate that antecedent question. IV recognizes, as it did in its own objections, that a patentee seeking pre-suit damages must plead facts supporting Section 287 compliance, including compliance or reasonable efforts concerning licensees where the statute applies under *VDPP*. *See* IV's Obj. R&R at 14-16.

And the settlement character of a license or a licensee's denial of infringement does not itself establish compliance. *Id.* But *VDPP* does not convert every product or implementation of a portfolio licensee into a patented article. Section 287 still requires an unmarked patented article made or sold by the patentee or under its authority. Thus, where Southwest relies on licensee activity, the identified product or implementation must both practice the relevant patent claim and have been made or sold within the scope of an applicable IV license. A particular licensee product or implementation therefore must satisfy both predicates before its lack of marking can limit IV's damages under Section 287. And *Arctic Cat* requires the alleged infringer challenging compliance to bear an initial burden of production by identifying the specific unmarked products it contends should have been marked. 876 F.3d at 1368.

That distinction also separates this case from *VDPP*. There, the record established eleven agreements authorizing the licensees to make, use, and sell licensed products, and VDPP itself continued to maintain that the licensed products infringed. Dkt. 173-2, *VDPP* slip op. at 6. Here, the mere existence of portfolio licenses does not establish either that a particular licensee implementation practices the '080 or '282 Patent or that the particular implementation was made or sold pursuant to rights granted by IV.

That distinction is especially important here because the technologies at issue under the '080 and '282 Patents involve backend and distributed-computing systems for which claim practice may depend on nonpublic configuration and interactions among software, infrastructure, and system components. Southwest merely identified general technologies and providers in its Motion, but that does not, standing alone, on a motion to dismiss, establish that any particular licensed product or implementation practices the relevant '080 or '282 claim, was made or sold

under IV's authority, and therefore constituted an article that was required to be marked. *See* SW MTD at 22-23; IV's Obj. R&R at 13-15.

Southwest's objection therefore asks the Court to recognize a conditional rule that the R&R already recognized and then apply that rule as though its triggering factual predicates had already been established. They have not. Accordingly, to the extent Southwest seeks more than a conditional statement of the rule already recognized by the R&R, Objection 7 should be overruled. At minimum, Southwest's objection provides no basis for a categorical ruling at the pleading stage barring pre-suit damages on the method claims of the '080 and '282 Patents. If the Court concludes that IV's existing allegations require greater specificity under the intervening *VDPP* decision, IV's own objections separately explain why that would present a pleading issue rather than establish futility and request leave to amend.

## VIII. CONCLUSION

For the foregoing reasons, Southwest's objections should be overruled. Southwest has not shown that the Magistrate erred in declining to treat the claims Southwest selected as representative of every asserted claim, in applying the governing standards at the pleading stage, or in rejecting Southwest's § 101 challenges to the '582, '282, '844, and '080 Patents. Nor has Southwest established a basis to extend the R&R's ruling on Claim 14 of the '722 Patent to Claims 16-18, which Southwest did not separately analyze in its Motion.

Southwest's marking objection likewise provides no basis for a categorical ruling barring pre-suit damages on the method claims of the '080 and '282 Patents. The rule Southwest invokes applies only where the predicate marking requirements are satisfied, and Southwest has not established those predicates on the pleadings. To the extent the Court concludes that the intervening *VDPP* decision requires additional allegations concerning § 287, IV respectfully maintains its request for leave to amend.

Accordingly, the Court should overrule Southwest's objections and adopt the R&R with respect to the rulings challenged by Southwest. IV separately maintains its own objections to the R&R, including its objections concerning Claim 14 of the '722 Patent and the dismissal of pre-suit damages for non-method claims.

Dated: September 22, 2026

RESPECTFULLY SUBMITTED,

By: *<u>/s/ Jonathan K. Waldrop</u>*

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted in this District)
tnguyen@kasowitz.com
**KASOWITZ LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 358-4408

Jeceaca An (NY Bar No. 5849898)
(Admitted in this District)
jan@kasowitz.com
**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Paul G. Williams (GA Bar No. 764925)
(Admitted in this District)
pwilliams@kasowitz.com
**KASOWITZ LLP**
1230 Peachtree Street, N.E., Suite 3750
Atlanta, Georgia 30309
Telephone: (404) 260-6102
Facsimile: (404) 393-9752

Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@cjsjlaw.com
**Cherry Johnson Siegmund James PLLC**
7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: 254-732-2242
Facsimile: 866-627-3509

***Attorneys for Plaintiffs***
***INTELLECTUAL VENTURES I LLC***
***INTELLECTUAL VENTURES II LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 22nd day of September, 2026, via the Court's CM/ECF system.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop